Jack Jmaev (SBN: 216,416)
jack@puritanlaw.com
PURITAN LAW GROUP
500 N. STATE COLLEGE BLVD.
ORANGE, CA 92868
Phone: 909-437-8390

**Attorneys for Defendants**

Edward L. Bishop (admitted *pro hac vice*)
ebishop@bdl-iplaw.com
Nicholas S. Lee  (admitted *pro hac vice*)
nlee@bdl-iplaw.com
BISHOP, DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
Phone: (847) 969-9123
Facsimile: (847) 969-9124

# IN THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br><br>ULTRAPROOF, INC., a California corporation; ULTRAPROOF, INC., a Nevada corporation; ENDLISS TECHNOLOGY, INC., a California corporation; DOES 1 through 10, inclusive,<br><br>    Defendants. | Case Nos.  2:16-CV-09185 DOC (DFM); 2:17-CV-01161 DOC (DFM) (Consolidated)<br><br><br>**DEFENDANTS' MOTION TO DISQUALIFY MR. HEEDONG CHAE AND HIS LAW FIRM, LUCEM PC, AS COUNSEL FOR PLAINTIFF** |

//

//

//

## **Table of Contents**

I.      STANDARD FOR DISQUALIFICATION ....................................................1

II.    ARGUMENT ...........................................................................................5

     A.    The Mistrial Declared by This Court in *Spigen Korea Co., Ltd. v. iSpeak*, Case No. 15-cv-1050 ...............................................................8

     B.    The Same Prejudice Identified By This Court In The *iSpeak* Case Exists To a Greater Degree In This Case ...........................................9

     C.    The Prejudice to Defendants During Discovery Additionally Warrants Disqualifying Mr. Chae and His Firm .................................................12

     D.    Mr. Chae's Improper Influence Over the Translation of the KUM '435 Reference Also Warrants Immediate Disqualification ......................21

     E.    The Direct Conflict Between Mr. Chae's Testimony and Plaintiff's CEO's Testimony Requires Disqualifying the Entire Lucem PC Law Firm .......................................................................................22

III.   CONCLUSION.........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Caluori v. One World Techs., Inc.*, No. 7-2035 CAS (VBKx), 2012 U.S. Dist. LEXIS 77924 (C.D. Cal. June 4, 2012)....................................................4, 12

*People v. Donaldson*, 93 Cal. App. 4th 916 (Cal. Ct. App. 2001) ........................11

*Smith, Smith & Kring v. Super. Ct.*, 60 Cal. App. 4th 573 (1997) ...........................4

*Tobin v. B.C. Bancorp*, No. 09cv0256 DMS (CAB), 2009 U.S. Dist. LEXIS 137098 (S.D. Cal. Nov. 10, 2009)................................................................4

**<u>California Rules Of Professional Conduct</u>**

Rule 3-310................................................................... 2-3, 22, 24

Rule 5-210.........................................................2, 3, 4, 10, 12

**<u>ABA Model Rules of Professional Conduct</u>**

Rule 1.7 ...............................................................2, 3, 22, 24

Rule 1.10 ...................................................................25

Rule 3.7 .....................................................................2, 4

**<u>Federal Rules of Civil Procedure</u>**

Fed. R. Civ. P. 34.............................................................12

Fed. R. Civ. P. 36.............................................................. 6

**<u>Federal Regulations</u>**

37 C.F.R. § 1.56.............................................................24

Defendants bring this motion to disqualify Heedong Chae and the law firm of Lucem PC as counsel for Plaintiff in this case.   While a drastic remedy, disqualifying Mr. Chae and the firm of Lucem PC is necessary to avoid prejudice to Defendants, confusion to the jury, and the appearance of impropriety that casts a shadow of distrust over the entire judicial process.   These harms extend far beyond the type of prejudice or confusion that can be remedied by excluding Mr. Chae only from trial.   For example, as outlined in greater detail below, Mr. Chae's attempt to serve two roles as witness and litigation counsel, coupled with related discovery abuses, has caused actual prejudice to Defendants.   Accordingly, Mr. Chae and Lucem PC should be disqualified to prevent any continued harm.

## I.        STANDARD FOR DISQUALIFICATION

While rare, and often discouraged lest it be used as a tactic of harassment, the power to disqualify an attorney is "incidental to all courts, and is necessary for the preservation of decorum, and the respectability of the profession."   *Ex Parte Burr*, 22 U.S. (9 Wheat.) 529 (1824) (Marshall, C.J.).

The governing disciplinary rules of this Court are the California Rules of Professional Conduct ("California RPC") as adopted by L.R. 83-3.1.2. Additionally, as noted in L.R. 83-3.1.2, the Model Rules of Professional Conduct of the American Bar Association ("ABA Model Rule[s]") may be considered as guidance.   The specific rules at issue in the present motion are Rules 3-310 (B),

(C), and (E) and 5-210 of the California Rules of Professional Conduct as well as

Rules 1.7 and 3.7 of the ABA Model Rules, which state as follows:

(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:
    (1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or
    (2) The member knows or reasonably should know that:
        (a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and
        (b) the previous relationship would substantially affect the member's representation; or
    (3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or
    (4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.
(C) A member shall not, without the informed written consent of each client:
    (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
    (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
    (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

* * *

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

DEFENDANTS' MOTION TO DISQUALIFY

2

California RPC 3-310 (B), (C), and (E).

> A member shall not act as an advocate before a jury which will hear testimony from the member unless:
> (A) The testimony relates to an uncontested matter; or
> (B) The testimony relates to the nature and value of legal services rendered in the case; or
> (C) The member has the informed, written consent of the client. If the member represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee of the head of the office by which the member is employed and shall be consistent with principles of recusal.

California RPC 5-210 "Member as Witness"

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> > (2) the representation is not prohibited by law;
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> > (4) each affected client gives informed consent, confirmed in writing.

ABA Model Rule 1.7 "Conflict On Interest: Current Clients"

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

ABA Model Rule 3.7 "Lawyer As Witness"

Further, as it relates to California RPC 5-210, even with the informed written consent permitted by the Rule, "courts have discretion to disqualify counsel on a 'convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.'" *Tobin v. B.C. Bancorp*, No. 09cv0256 DMS (CAB), 2009 U.S. Dist. LEXIS 137098, at *7 (S.D. Cal. Nov. 10, 2009) quoting *Smith, Smith & Kring v. Super. Ct.*, 60 Cal. App. 4th 573, 570 (1997). Accordingly, courts in this District have rejected the contention that an attorney is unequivocally entitled to represent a consenting client. *See e.g., Caluori v. One World Techs., Inc.*, No. 7-2035 CAS (VBKx), 2012 U.S. Dist. LEXIS 77924, at *13-14 (C.D. Cal. June 4, 2012) ("Thus, plaintiff's consent to Mr. Dingman serving as his attorney and testifying [as] a witness does not mandate the denial of defendant's motion"). Rather than a bright line rule, the Court must look to prejudice to Defendants and potential conflict with public policy resulting from the dual role. *Id.*

//

## II.   ARGUMENT

The facts of this case warrant disqualifying Mr. Chae and Lucem PC from further representing Plaintiff in this matter.   For example, it appears no accident that Mr. Chae has fought so hard to quash his deposition in this case.   Even though Defendants served a notice of deposition of Mr. Chae on September 22, 2017, Plaintiff and Mr. Chae delayed his availability until December 1, 2017.   Exhibit A, Email chain between counsel for the parties.   When the deposition date came near, Plaintiff and Mr. Chae ran out of excuses to delay the inevitable.   Instead, Plaintiff and Mr. Chae sought to oppose the deposition by moving to quash the deposition on November 29, 2017.   A hearing before the Special Master was held on March 5, 2018; and on March 6, 2018, the Special Master ordered Mr. Chae's deposition. *See* Dkt. No. 84.   Mr. Chae finally made himself available for the deposition on March 28, 2018—over seven months after the notice of his deposition had issued—further delaying and frustrating Defendants' discovery efforts.

Until Mr. Chae was deposed, Defendants were unaware that Mr. Chae and Lucem PC were using their status as litigation counsel to shield prosecution documents from discovery in this case.   As outlined below, those documents were never identified or listed on a privilege log and Defendants had no reason to believe that anything related to the prosecution of the patents asserted in this case was intentionally and unreasonably being withheld until Mr. Chae admitted as

much during his deposition.

Further, given the nature of the request Defendants are seeking, Defendants have been understandably cautious in bringing this motion. Defendants wanted to ensure that the facts of this case truly merited disqualification before bringing this motion. Likewise, Defendants' counsel wanted to afford Plaintiff's counsel an opportunity to remedy the situation and mitigate the harm. Unfortunately, Plaintiff's counsel has not shown any desire to address this situation despite Defendants' counsel raising the issue multiple times and the Special Master raising his own concerns when ordering that Mr. Chae appear for his deposition. *See* Dkt. No. 84, p.5.

Around the same time as Mr. Chae's deposition, Defendants also received documents responsive to a subpoena served on third party Ko & Martin, a translation company previously retained by Mr. Chae on behalf of Plaintiff in the *iSpeak* case discussed *infra*. It is troubling that Defendants even had to take the step of subpoenaing Ko & Martin. Defendants only took this step after Plaintiff refused to admit a Rule 36 Request for Admission stating simply that the translation Plaintiff had submitted in the *iSpeak* case was a "true and correct translation of KUM '435," the very same fact that Mr. Chae declared to this Court when submitting that translation in the *iSpeak* case. *See* Exhibit B, Dkt. No. 25 in Case No. 15-cv-1050, declaration attached thereto at ¶19. Since Plaintiff would

not admit that the translation was accurate, Defendants had no choice but to investigate the source of the translation.  It quickly became clear why Mr. Chae and his firm resisted the admission.  The documents received from Ko & Martin showed that Mr. Chae actually instructed Ko & Martin how he wanted the KUM '435 reference translated so that the translation would comport with his theory of defense against inequitable conduct.

For example, in opposing a Rule 11 Motion in the *iSpeak* case, Mr. Chae argued that the KUM '435 reference only disclosed a case that included 1st and 2nd bodies that were *fixedly attached*.  *See* Exhibit B at p. 9.  That language was specifically provided to Ko & Martin to use in their translation in the "corrections.docx" document sent by Mr. Chae.  Because it was Mr. Chae's own inequitable conduct, and thus in part his reputation as a patent attorney, that was at stake in the *iSpeak* case, the manipulation of the Ko & Martin translation goes beyond a mere concern over the veracity of the evidence.  Rather, Mr. Chae's conduct appears to be a clear attempt to abuse his role as litigation counsel to manipulate evidence regarding his inequitable conduct as prosecution counsel.

In hindsight, these discovery and evidentiary abuses should not have surprised Defendants as Plaintiff and its counsel have consistently sought to roadblock discovery and hide facts that do not support its case.  *See e.g.*, Defendants' Motion to Dismiss for Lack of Standing (being filed concurrently) at §

II(C) (outlining various discovery abuses).  Accordingly, the merits of this motion were not fully known to Defendants until recently.

### A. The Mistrial Declared By This Court in *Spigen Korea Co., Ltd. v. iSpeak*, Case No. 15-cv-01050

Some of these facts warranting disqualification in this case are familiar to the Court because they are the same or similar to the facts presented in *Spigen Korea Co., Ltd. v. iSpeak*, Case No. 15-cv-01050.  In that case, during trial, it became evident that Mr. Chae would likely be a necessary witness because the inventor of U.S. Patent No. 9,049,283 (one of the same patents at issue here) testified that he was unaware of his duty to submit prior art to the USPTO during prosecution of the patent application that resulted in the '283 Patent and that he relied upon Mr. Chae to make those determinations for him.  Noting that the defendant in that case had raised an inequitable conduct defense (as have Defendants in this case), the Court expressed concern over Mr. Chae's dual role as advocate and witness and ultimately declared a mistrial:

> If you have any solutions, I'm happy to listen to them on the record before I act. But I've indicated very strongly in chambers that I thought that this was a mistrial, unfortunately, because I don't seem to be able to -- at least in my mind -- resolve either how you shouldn't be called to the stand; and, if you are called to the stand, whether there's a waiver of the privilege.
>
> […]
>
> And so the end result is, counsel has a difficult time pursuing his line of questioning with prior art.  When you're brought into the case, it

makes it extraordinarily difficult, if not impossible.

Exhibit C, Transcript of November 8, 2016 trial in Case No. 15-cv-01050 at p. 99-101

> THE COURT: . . . But, right now, he sits at table as co-counsel.  And it seems to me to be devastating that he would now take the stand, and you'd have to explain -- in other words, the prejudice that's initially with the defendant would now flow to the plaintiff. And you'd have to explain that, "You know, he's really not part of our team. He's been sitting here at the table the whole time visually, and now he's co-counsel."  And I think that that's equally prejudicial now to the plaintiff.
>
> MR. HEWITT: I don't think we can proceed in that manner today, Your Honor.
>
> THE COURT: I don't either.  I'm going to declare a mistrial in this matter. . . .

*Id.* at pg. 102

### B.   The Same Prejudice Identified By This Court In The *iSpeak* Case Exists To a Greater Degree In This Case

At a minimum, Mr. Chae must be excluded from trial.  As outlined above, the very same factual scenario arose the last time Plaintiff tried to assert the '283 Patent utilizing its prosecuting attorney as litigation counsel.  However, the facts of the present case are even more prejudicial and potentially confusing to a jury. Whereas Mr. Chae and his firm were co-counsel in the *iSpeak* case, and were assisting lead counsel Michael C. Hewitt, Mr. Chae is a lead counsel in the present case and all of the appearing attorneys are associates of his firm Lucem PC,

previously East West Law Group PC.   Additionally, Mr. Chae is the sole shareholder of Lucem PC.  *See* Exhibit D, excerpts of Mr. Chae's March 27, 2018 deposition at p. 14 ███████████████████████████████████████ As such, Mr. Chae has sole control over the operation and management of Lucem PC and each of the counsel appearing for Plaintiff in this case, not to mention the financial interest as the sole shareholder.

Consequently, Mr. Chae is not merely co-counsel and the same concerns the Court expressed in the *iSpeak* case regarding prejudice to defendant apply with equal or greater force here.  Further, there is no indication that Plaintiff has even provided the written informed consent required by California RPC 5-210.   Even assuming Plaintiff does provide such consent, it would not affect the prejudice to Defendants, the confusion of the jury or the tainting of the judicial process, each of which provide separate grounds warranting disqualifying Mr. Chae and Lucem PC.

Ultimately, the prejudice to Defendants is clear.  Mr. Chae will undeniably be required to testify regarding his preparation and/or prosecution of the patent applications that matured into the patents-in-suit, including his decisions to withhold various prior art references.  To have Mr. Chae acting as both a fact witness and an advocate is severely prejudicial to Defendants, has already prejudiced Defendants, and casts a shadow of illegitimacy over the entire judicial process because there is concern that the jury will afford undue weight to Mr.

Chae's testimony or will view his testimony as tainted by his desire to advocate for his client. The California Court of Appeals has recognized both of these concerns as the basis for prohibiting testifying attorneys from appearing as advocates:

> The prohibition against a lawyer's serving as an advocate and testifying as a witness in the same matter is essentially aimed at eliminating confusion over the lawyer's role. This confusion could prejudice one or more of the parties or call into question the impartiality of the judicial process itself. As an advocate, the lawyer's task is to present the client's case and to test the evidence and arguments put forth by the opposing side. A witness, however, provides sworn testimony concerning facts about which he or she has personal knowledge or expertise. The very fact of a lawyer taking on both roles will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's advocacy, and the proceedings themselves.

*People v. Donaldson*, 93 Cal. App. 4th 916, 928 (Cal. Ct. App. 2001).

There can be no dispute that Mr. Chae will be a necessary testifying witness in this case. In fact, he is the only witness who can testify regarding any of the prior art decisions made during prosecution of the patents-in-suit. *See* Dkt. 84 at pg. 5 ("based on all of the information and argument presented to the SM, the conclusion must be reach that under the first <u>Sheldon</u> factor, Mr. Chae is the only source for the information about prior art decisions and disclosures or non disclosures."). He appears to be the only one who understood the duty to disclose requirement during the prosecution of the '283 patent. Consequently, there is no way to avoid the prejudice and confusion outlined above short of removing Mr. Chae and Lucem PC as counsel in this case.

When faced with similar facts, other courts in this District have ordered that trial counsel withdraw.  For example, in *Caluori*, Judge Snyder noted a general disfavor for motions to disqualify but nevertheless ordered that plaintiff's counsel, who was also the underlying prosecuting attorney, should be precluded from serving as trial counsel because he was a necessary witness on a contested issue and none of the exclusions set forth in California RPC 5-210 applied.  *Caluori*, 2012 U.S. Dist LEXIS 77924, at *12-16.

## C. The Prejudice to Defendants During Discovery Additionally Warrants Disqualifying Mr. Chae and His Firm

Mr. Chae's attempt to serve two masters has also directly prejudiced Defendants' search for the truth in this case as Mr. Chae has used his role as litigation counsel to shield discoverable information regarding his role as prosecution counsel under a purported work product exclusion.  In particular, during Mr. Chae's recent deposition it became apparent that he had not produced all relevant documents basic to a patent infringement lawsuit requested during discovery.  For example, in September 2017, Defendant Ultraproof issued requests for production under Fed. R. Civ. P. 34 requesting:

> **REQUEST NO. 42.** A complete copy of the file or files (whether in hard copy or digital form) related to the prosecution of [U.S. Patent No. 9,049,283]

*See* Exhibit E, First Set of Requests for Production Re: Case No. 16-cv-9185

> **REQUEST NO. 44.** A complete copy of the file or files (whether in

hard copy or digital form) related to the prosecution of the Asserted
Design Patents.

*See* Exhibit F, First Set of Requests for Production Re: Case No. 17-cv-1161

Generally, a prosecution file contains communications to and from the U.S.
Patent and Trademark Office., communications to and from the client (which may
range from mere transmittals to in-depth attorney advice), drafts of responses to
office actions, prior art reviewed, results of prior art searches, and communications
with third parties that may have assisted with the prosecution (such as technical
experts, draftsmen, or prior art searchers). Such files are often maintained by the
prosecuting attorney for a patent application, but are in the client's "possession,
custody, or control" because the client could request them from its prosecuting
attorney. Accordingly, in addition to his client searching for responsive
documents, Mr. Chae, as the prosecuting attorney, had a duty to search his own
prosecution file for production of documents responsive to Defendants' requests.

Contrary to this discovery obligation, Mr. Chae admitted that he or his firm
did not produce responsive documents as any prosecuting attorney would be
obligated to do, did not list such documents on Spigen's privilege log as litigation
counsel – hence waiving any such objection – and now Mr. Chae seeks to abuse
his role as litigation counsel during the pretrial stage to assert a work product
exclusion regarding any request for information regarding his actions in failing to
produce the prosecution file as the prosecuting attorney. The following exchanges

from Mr. Chae's March 27, 2018 deposition are illustrative of the abuse and resulting prejudice to Defendants:



Exhibit D, Transcript of March 27, 2018 Deposition of Heedong Chae at 40:3-20.



*Id.* at 41:19-42:2.

Because Mr. Chae could not recall whether any communications exist in his prosecution files, a short break was taken to allow Mr. Chae to review the server containing the prosecution files. After the break, Mr. Chae then confirmed that his

prosecution files included communications which were not part of the USPTO files, and thus not produced by him, the prosecuting attorney, in response to discovery requests:



*Id.* at 46:23-47:14





*Id.* at 57:14-58:21

Ordinarily, a prosecuting attorney's failure to fully search for and produce discoverable material would unquestionably be a relevant topic for the prosecuting attorney's deposition and would not invoke any work product objection. Indeed, the Special Master also determined "that invocation of privilege issues would be unlikely." *See* Dkt. No. 84, p. 5. It is only by virtue of his attempted dual role that Mr. Chae can even attempt to raise such an objection. Moreover, withholding or failing to produce responsive documents is not a "litigation strategy" that could be privileged under the work product exclusion, it is tantamount to a discovery abuse.

Plaintiff and Mr. Chae are also attempting to abuse the attorney client privilege and work product exclusion in classic "sword and shield" fashion. In particular, Plaintiff and Mr. Chae are utilizing Mr. Chae's position as litigation counsel to shield from discovery any discussion regarding the incomplete document production from the prosecuting attorney on the basis that the

determination of what documents to produce and whether to list them on a log is the work product of Mr. Chae as litigation counsel, despite the documents coming from and being produced by Mr. Chae as the prosecuting attorney:



Exhibit D at 63:5-23



1



14  *Id.* at 64:11-66:6.

15

16

17

18  *Id.* at 95:4-10

19

20    During the break, the undersigned counsel reiterated and asked both Mr.

Chae and his counsel and counsel for Spigen, Ms. Kim, when Defendants can

expect to receive Spigen's supplemental privilege logs. Both Mr. Chae and Ms. Kim refused to give any date for supplementing the privilege log. Instead, Mr. Chae and Ms. Kim suggested that the parties should first have a meet and confer to address the privilege log issue—despite Mr. Chae having already admitted that documents being withheld under privilege grounds were not listed on the privilege log. There is simply nothing to "meet and confer" about when opposing counsel admits that its discovery is deficient.

Likewise, Plaintiff and Mr. Chae are utilizing Mr. Chae's position as litigation counsel to shield against standard discovery into the prosecuting attorney's intent and interpretation regarding wording used in the application that Mr. Chae himself drafted. This information is highly relevant to claim construction, yet Mr. Chae forced a narrowing of any questions regarding claim language based on an improper assertion of the work product exclusion:



**DEFENDANTS' MOTION TO DISQUALIFY**

1

2

3

4

5

6



7

*Id.* at 160:11-161:20

8

9

If the prosecuting attorney has information that changes the meaning of a

10

term or terms in his application as understood by a person of ordinary skill in the

field of art relevant to that application, such information would be highly relevant

11

in determining a proper construction of the term(s).  However, because Mr. Chae

12

and his firm represent Plaintiff as litigation counsel, he has improperly forced a

13

limitation on questions related to claim interpretation to the time when he drafted

14

the application.

15

The above-outlined discovery interference goes beyond any prejudice or

16

confusion attached to Mr. Chae appearing as both witness and advocate at trial and

17

is causing actual prejudice to Defendants as they search for relevant and admissible

18

evidence.   Accordingly, merely excluding Mr. Chae from trial would be

19

insufficient to remedy the prejudice and discovery interference.  Rather, Mr. Chae

20

and his law firm, Lucem PC, must be excluded from this case entirely.

### D.     Mr. Chae's Improper Influence Over the Translation of the KUM '435 Reference Also Warrants Immediate Disqualification

A critical issue of dispute in this case is the decision by Mr. Chae to withhold known references from the U.S. Patent and Trademark Office during prosecution and whether that act constitutes inequitable conduct.  Mr. Chae alone made the determination to disclose or not disclose known prior art because he failed to inform others connected with the application (most notable the inventor, Mr. Kim) of their duty to disclose information to the U.S. Patent and Trademark Office.  One such reference that Mr. Chae withheld was Korean Utility Model 20-0472435 ("KUM '435").

Mr. Chae has provided two justifications for his decision not to produce KUM '435 to the U.S.P.T.O. during prosecution of the '283 Patent; 1) because it "discloses an invention significantly different from the '283 Patent"; and 2) because it "is cumulative to other cited references of the '283 Patent."  *See* Exhibit B, Declaration attached thereto at ¶6-7.  Mr. Chae further asserted that any assertion that he had committed inequitable conduct was based on a "mistranslation" of the KUM '435 Patent.  *Id.* at ¶16, 18.  Mr. Chae then purported to provide a "true and correct translation of KUM '435" prepared by Ko & Martin.  *Id.* at ¶19, *see also* Exhibit B attached to the declaration.

That translation, however, was not prepared by a truly independent translator retained by Mr. Chae or Plaintiff.  Rather, the translation was provided to the

translator by Mr. Chae himself through explicit directions as to how the document should be translated.  In particular, when Mr. Chae decided that the translation presented by the *iSpeak* defendants did not comport with his decision to withhold the KUM '435 reference from the U.S.P.T.O., he contacted Ko & Martin and provided a document (corrections.docx) that contained the instructed translation. *See* Exhibit G, email thread (in Korean) and "corrections.docx" attached thereto. Accordingly, in addition to being a critical witness with regard to his failure to abide by the duty of candor owed to the U.S.P.T.O. (by withholding known prior art as well as by failing to inform others of their duty of candor) and the resulting inequitable conduct, Mr. Chae will also be a critical witness with regard to his efforts to conceal his inequitable conduct by directing a translation that comports with his defense against that charge and presenting it as corroborating evidence.

### E.   The Direct Conflict Between Mr. Chae's Testimony and Plaintiff's CEO's Testimony Requires Disqualifying the Entire Lucem PC Law Firm

Finally, in addition to prejudicing Defendants, confusing the jury, and tainting the judicial process, there is a serious concern that Mr. Chae's testimony demonstrates a direct conflict between Mr. Chae and Plaintiff in violation of California RPC 3-310 and ABA Model Rule 1.7, and 1.9.  In particular, the facts demonstrate that: a) Mr. Chae did not inform Plaintiff or Mr. Kim regarding the duty to disclose prior art to the U.S.P.T.O. (in fact, Mr. Chae never spoke with the

inventor, Mr. Kim, directly); b) that Mr. Chae unilaterally decided not to disclose known prior art to the U.S.P.T.O.; and c) the decision not to disclose known prior art may result in inequitable conduct on the part of Mr. Chae.  There is a serious potential for Mr. Chae's testimony to directly conflict Plaintiff, his client.  In the prior *iSpeak* lawsuit, Mr. Kim already testified that Mr. Chae never told him about his duty of candor to the U.S.P.T.O. and that he must submit known prior art for the examiner's consideration:

> Q. Mr. Kim, did anyone ever tell you that you had to submit prior art -- strike that.
> At the time you applied for the '283 patent, did anyone ever tell you that you had to submit prior art to the PTO?
> A. No, no one.

Exhibit C, at 72:22-73:1

Based on Mr. Kim's prior testimony, there can be only two fact scenarios: either Mr. Chae breached a fiduciary duty to his client by failing to advise Mr. Kim about his duty of candor to the U.S.P.T.O., or Mr. Chae's testimony will directly contradict Mr. Kim's admission on that fact.  In either event, Mr. Chae has an interest that is contrary to his client's and has a direct personal stake in the Court's ruling on whether he committed inequitable conduct.  That direct conflict is imputable upon the other members of Lucem PC, who Mr. Chae supervises and controls, and additionally warrants disqualification of the entire firm.

In fact, Mr. Chae's testimony already appears to contradict Mr. Kim's

testimony and Mr. Chae himself implied that Mr. Kim is an unreliable witness.  In

particular, when the topic of whether or not Mr. Chae had informed Mr. Kim about

his duty to disclose under 37 C.F.R. § 1.56 was discussed, Mr. Chae responded

███████████████████████████████████████████████████████████████

████████████████  Exhibit D, at 116:8-9 (Emphasis added).  When pressed further to

explain why Mr. Kim testified that Mr. Chae had never told him about his duty to

disclose, Mr. Chae could not give a straight answer, ██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████  *Id.* at 117:19-118:1.  The Court should

see Mr. Chae's veracity for what it is—which is nothing more than a

gamesmanship to deter and obfuscate Defendants' efforts to defend claims asserted

against them.

Clearly, Mr. Chae's interests are not aligned with his client's.  California

RPC 3-310 prohibits representing a client whose interests are adverse to the

attorney.  *See also* ABA Model Rule 1.7.  The Rule also prohibits representing two

clients in the same case when those clients' interests are not aligned.  Here, Mr.

Chae's interests are not aligned with Plaintiff; in fact, his testimony is directly

contrary to Plaintiff's and he has implied that Plaintiff's inventor/CEO is an unreliable witness.   In taking that contradictory position, Mr. Chae has been represented by each of Plaintiff's other counsel, who are also associates of Mr. Chae's law firm, Lucem PC.   *See also* ABA Model Rule 1.10.   Accordingly, neither Mr. Chae nor any other attorney at Lucem PC should be permitted to continue to represent Plaintiff in this matter.

## III.   CONCLUSION

For at least the reasons outlined above, Defendants respectfully request that the Court disqualify Heedong Chae and Lucem PC from continuing to represent Plaintiff in this matter.   As outlined above, such disqualification is justified to prevent prejudice to Defendants, confusion of the jury, and tainting of the judicial process.

Date: April 27, 2018                   PURITAN LAW GROUP

/s/ Jack I. Jmaev
JACK IVAN JMAEV, SBN 216,416
Attorney for Defendants

ULTRAPROOF,   INC.,   a   California corporation and

ULTRAPROOF,   INC.,   a   Nevada Corporation

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this April 27, 2018. Any other counsel of record will be served by electronic mail and/or first class mail.

<u>/s/ Jack I. Jmaev</u>
Jack Ivan Jmaev

**DEFENDANTS' MOTION TO DISQUALIFY**