Heedong Chae (SBN 263237)
Email: hdchae@ewpat.com
Chong Roh (SBN 242437)
Email: croh@ewpat.com
**East West Law Group PC**
3600 Wilshire Blvd., Suite 702
Telephone: (213) 387-3630
Facsimile: (213) 788-3365

*Attorneys for Plaintiff,*
*Spigen Korea Co., LTD.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIGEN KOREA CO., LTD., a Republic of Korea corporation,<br><br>Plaintiff,<br><br>v.<br><br>ISPEAK CO., LTD., a Republic of Korea corporation; VERUS U.S.A., LLC, a California limited liability company; DOES 1 though 10, inclusive,<br><br>Defendants. | Case No.: 8:15-cv-01050 DOC (DFMx)<br>Assigned to Hon. David O. Carter<br><br>**PLAINTIFF SPIGEN KOREA CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing:**<br>Date:        December 7, 2015<br>Time:        9:30 a.m.<br>Dept:        9D<br>Location:   411 West Fourth Street,<br>                   Santa Ana, CA 92701 |
| VERUS U.S.A., LLC, a California limited liability company,<br><br>Counter-Plaintiff,<br><br>v.<br><br>SPIGEN KOREA CO., LTD., a Republic of Korea corporation, | *[The following documents filed concurrently: Declaration of Counsel, Heedong Chae; and Declaration of Dae-Young Kim]* |

Counter-Defendant.

## **OPPOSITION BRIEF**

Plaintiff and Counter-Defendant Spigen Korea Co., LTD (hereinafter, "Plaintiff" or "Spigen") respectfully submits the following opposition to Defendant and Counter-Plaintiff Verus USA, LLC's (hereinafter, "Defendant" or "Verus") Motion for Sanctions under Federal Rules of Civil Procure ("FRCP") 11.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................6

III.   STATEMENT OF FACTS ON PATENTS ...........................................8

    A    '283 Patent.......................................................................................8

    B.   KUM '435 ......................................................................................10

    C.   Differences Between the '283 Patent and KUM '435 ......................10

    D.   Defendant's Infringing Product......................................................10

III.   ARGUMENT......................................................................................10

    A.   Federal Rules of Civil Procedure 11 ..............................................10

    B.   Inequitable Conduct .......................................................................11

        1.    Defendant's Allegations of Inequitable Conduct
             and Materiality are Based Upon an Incorrect
             Translation of KUM '435 ......................................................14

        2.    KUM '435 is Not Material to the Patentatbility of
             Any Claim of the '283 Patent because KUM '435
             Discloses Significantly Different Invention and
             Does not Teach or Disclose Elements Common to
             All Claims of the '283 Patent....................................................14

        3.    The USPTO Would Have Allowed All Claims of
             the '283 Patent Had It Been Aware of KUM '435 ..................14

        4.    Plaintiff or Plaintiff's counsel did not Deceive nor
             Intend to Deceive the USPTO................................................15

        5.    Defendant Fails to Demonstrate by Clear and
             Convincing Evidence that Plaintiff or Plaintiff's
             Counsel Withheld Material Information from the
             USPTO ...................................................................................16

        6.    Defendant's Fails to Demonstrate Plaintiff or
             Plaintiff's Counsel's Intent to Decieve the USPTO .................18

Case 2:16-cv-09185-DOC-DFM   Document 110-4   Filed 04/30/18   Page 4 of 52   Page ID
#:1733
Case 8:15-cv-01050-DOC-DFM   Document 25   Filed 11/16/15   Page 4 of 22   Page ID #:779

1

2

      7.    Defendant's Fails to Allege with the Requisite

            Specificity Required for Inequitable Conduct

            Claims ...................................................................18

      8.    At This Point in the Proceedings, The Court

            Cannot Determine if there was Inequitable

            Conduct ...............................................................19

  C.    Validity ..........................................................................19

  D.    No Rule 11 Violation by Plaintiff's Counsel ......................20

  E.    The Court Should Award Plaintiff its Fees in Opposing

      this Motion .....................................................................21

IV.  CONCLUSION.............................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antonius v. Spalding & Evenflo Companies, Inc.,* 275 F.3d 1066 (Fed. Cir. 2002.21

*Christian v. Mattel*, 286 F.3d 1118 (9th Cir. 2002) ...................................................11

*Cooter &Gell v. Hartmarx Corp*., 496 U.S. 384 (1990)..........................................11

*Estate of Blue v. County of Los Angeles,* 120 F.3d 982 (9th Cir. 1997).................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) . 12, 19, 20

*Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC,*350 F.3d 1327 (Fed.Cir.2003)........................................................................19

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944))...................18

Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997))............................................21

*King Auto., Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008 (CCPA 1981) .........19

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238 (2011). ...........................20

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004).....21

*Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407 ( N.Y.D.S. 2003)............22

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008 ..................................................................................................................... 12, 18

*Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324, (Fed. Cir. 2010). 12, 20

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).... 12, 17, 18

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000) . 11, 21

**Statutes**

35 United States Code §102.........................................................................7, 8, 21

35 United States Code §282..................................................................................20

35 United States Code §103.........................................................................7, 8, 21

Federal Rules of Civil Procedure, Rule 11 ...........................................7, 9, 11, 22

Federal Rules of Civil Procedure, Rule 9. ...........................................................19

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Plaintiff and Counter-Defendant Spigen Korea Co., LTD's (hereinafter, "Plaintiff" or "Spigen") filed a complaint for infringement of U.S. Patent No. 9,049,283 (the "'283 Patent") against Defendant and Counter-Plaintiff Verus USA, LLC (hereinafter, "Defendant" or "Verus") and another defendant Ispeak Co., Ltd. (Dkt. 1.)

Defendant filed a motion for sanctions pursuant to FRCP 11 (hereinafter, "Rule 11 Motion") against Plaintiff and Plaintiff's counsel alleging inequitable conduct with the U.S. Patent and Trademark Office (the "USPTO") and invalidity of the '283 Patent. Defendant's Rule 11 Motion lacks merit and is being filed for the improper purpose to chill litigation and to prevent Plaintiff from enforcing its patent.

Defendant's Rule 11 Motion is based on Defendant's assertion that Plaintiff or Plaintiff's counsel committed inequitable conduct.  Specifically, Defendant asserts that Korean Utility Model No. 20-0472435 ("KUM '435") was known to Plaintiff or Plaintiff's counsel, that KUM '435 is material to the patentability of the '283 Patent, that KUM '435 invalidates claims of the '283 Patent, and that Plaintiff or Plaintiff's counsel did not disclose KUM '435 with the USPTO.

However, KUM '435 discloses an invention significantly different from that of the '283 Patent and does not invalidate any claim of the '283 Patent under 35 U.S.C. § 102 or 103.  *Declaration of Counsel*, ¶6-¶7.  Moreover, KUM '435 is cumulative to other cited references already considered by the Examiner who examined the application for the '283 Patent and does not disclose anything new to consider.  *Declaration of Counsel*, ¶7.

Further, Defendant's assertion is based on a mistranslation of KUM '435. The correct translation of the KUM '435 demonstrates that the KUM '435 does not

---

anticipate any claim of the '283 Patent under 35 U.S. C. §102; *Declaration of Counsel*, ¶19, Ex. B.  Moreover, KUM '435 does not teach or disclose elements or limitations common to all claims of the '283 Patent.  *Declaration of Counsel*, ¶18, ¶19 Ex. B.

In addition, Defendant has not provided any analysis or explanation on how KUM '435 makes the claims of the '283 Patent obvious under 35 U.S.C. § 103. Plaintiff's counsel's analysis, however, has found that KUM '435 does not make any claim of the '283 Patent obvious in view of other known prior art.  *Declaration of Counsel*, ¶15 Ex. A, ¶16.

Spigen and Spigen's counsel did not intend to deceive the USPTO. Moreover, Defendant fails to demonstrate that an inference for intent to deceive exists.  The KUM '435 Complaint was filed on March 24, 2015 by the patentee of KUM '435.  After receiving the KUM '435 Complaint, Spigen reviewed and analyzed KUM '435 and compared it to its product.  *Kim Declaration*, ¶3.  Spigen correctly concluded that the case of KUM '435 is significantly different from Spigen's accused product and Spigen did not infringe any claim of KUM '435.  *Id.* Spigen further concluded that the complaint filed in Korea is frivolous, baseless and without any merit.  *Id.*  However, the patentee of KUM '435 did not dismiss the complaint, and in late May, 2015, Spigen provided KUM '435 to Spigen's counsel for further review.  *Kim Declaration*, ¶4; *Declaration of Counsel*, ¶4. Spigen's counsel reviewed and analyzed KUM '435 in connection with this case. *Declaration of Counsel*, ¶5.  Then, Spigen's counsel concluded that KUM '435 discloses an invention significantly different from that of the '283 Patent and that KUM '435 is not material to the patentability of the '283 Patent.  *Declaration of Counsel*, ¶7, ¶13.  Thus, this further demonstrates that KUM '435 is cumulative to cited references which were considered by the examiner who examined and allowed the '283 Patent.

Defendant fails to demonstrate Plaintiff or Plaintiff's counsel's alleged inequitable conduct. Furthermore, Defendant fails to demonstrate that Plaintiff or Plaintiff's counsel intentionally withheld material information from the USPTO.

Additionally, since Plaintiff's counsel thoroughly analyzed the claims, potential defenses, and legal reasonability of Plaintiff's infringement claims prior to filing this lawsuit, Plaintiff's Rule 11 Motion fails.  Specifically, Plaintiff's Counsel independently reviewed and analyzed the claims in the '283 Patent and analyzed specifications, file history, and all prior art references, including KUM '435.  *Declaration of Counsel,* ¶7, ¶8.  He obtained samples of Defendants' product, and compared it to claims of the '283 Patent to determine that Defendant's accused product did in fact infringe a number of claims of the '283 Patent.  *Declaration of Counsel*, ¶8.  Based upon the analysis and information, the Court should reasonably conclude that Defendants' products infringe the '283 Patent and at the very least reasonably conclude that Plaintiff's patent infringement claims are legally reasonable and have factual foundation.

Therefore, Defendant's Rule 11 Motion should be denied in its entirety.

## II.     STATEMENT OF FACTS ON PATENTS

### A.     '283 Patent

Plaintiff is the owner of all right, title, and interest in the '283 Patent entitled "Case Having a Storage Compartment for Electronic Devices," duly and properly issued by the U.S. Patent and Trademark Office on June 2, 2015.  The '283 Patent is for a mobile smartphone case that has a storage compartment to hold personal items such as credit cards, identification cards, and other personal items.  The '283 Patent has a unique structure and claims that make the case much less bulky and thinner than prior mobile smartphone cases with a similar storage compartment. The '283 Patent discloses a case comprising a soft protective case for covering a mobile device.  A *raised wall* is formed on the back of the soft protective case to form a credit card storage compartment where the credit cards, identification cards,

and other personal items would be stored.  A *removable* hard protective frame is constructed to snuggly fit right over the raised wall.  The case of the '283 Patent further comprises a cover that slides forward and backward over the storage compartment.  In addition, the case of the '283 Patent comprises a number of elements or claim limitations to provide secure and compact coupling between the soft protective case and the *removable* hard protective frame.

### B.   KUM '435

KUM '435 discloses a case having a card storage to store a credit card. The case of KUM '435 comprises the 1st body and the 2nd body. The 1st body receives a mobile device therein and the 2nd body is *fixedly attached* to the 1st body.  The card storage is formed on the 2nd body, not on the 1st body.

### C.   Differences between the '283 Patent and KUM '435

KUM '435 discloses an invention significantly different from that of the '283 Patent.  KUM '435 does not teach or disclose the *raised wall* formed on the soft protective case of the '283 Patent or the hard protective frame which is constructed to *removably* mount over the soft protective case.  In KUM '435, the 2nd body is *fixedly attached* to the 1st body, and thus, it does not teach or disclose the elements or claim limitations on how the *removable* hard protective frame is securely and compactly coupled to the soft protective case.

### D.   Defendant's Infringing Product

Defendant's product is a smartphone case with a storage compartment. Defendant's case has a soft protective case covering the mobile device with a raised wall formed on the back of the soft protective case to form a storage compartment.  Additionally, a *removable* hard protective frame with a cover that slides forward and backward is constructed to snuggly fit right over the raised wall on the back of the soft protective case.  Defendant's product also has a number of elements to securely combine the *removable* hard protective frame to the soft protective case.  Thus, Defendant's accused product infringes a number of

1  claims of the '283 Patent.  During the initial correspondences between Plaintiff's

2  counsel and Defense counsel, Defense counsel never argued that there is no

3  infringement.  In addition, Defense counsel never provided any analysis to show

4  non-infringement of the '283 Patent by Defendant.

5  ## III.   ARGUMENT

6  ### A.   Federal Rules of Civil Procedure 11

7  FRCP 11 permits sanctions for filings, such as pleadings, motions or other

8  "paper[s]," where 1) such papers are legally or factually baseless from an objective

9  perspective; and 2) the asserting party cannot show that it conducted a reasonable

10  and competent inquiry before signing and filing the document.  *FRCP* 11;

11  *Christian v. Mattel*, 286 F.3d 1118, 1127 (9th Cir. 2002); *View Eng'g, Inc. v.*

12  *Robotic Vision Sys., Inc.*, 208 F.3d 981, 985-996 (Fed. Cir. 2000).  A claim is

13  legally baseless if it is legally unreasonable; while a claim is factually baseless if it

14  lacks factual foundation.  *Estate of Blue v. County of Los Angeles,* 120 F.3d 982,

15  985 (9th Cir. 1997).  However, the Supreme Court has cautioned that Rule 11

16  "must be read in light of concerns that it will . . . chill vigorous advocacy."  *Cooter*

17  *&Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990).

18  As a basis of its motion, Defendant alleges inequitable conduct by Plaintiff

19  and its counsel before the USPTO and invalidity of the '283 Patent in view of

20  KUM '435 alone or in combination with other prior art.  Defendant alleges that

21  Plaintiff's inequitable conduct is a violation of Rule 11.

22  However, KUM '435 discloses an invention significantly different from that

23  of the '283 Patent and KUM '435 does not invalidate any claim of the '283 Patent

24  under 35 U.S.C. § 102 or § 103.  Defendant's assertion of materiality of KUM '435

25  is based on incorrect analysis, mistranslation, misinterpretation and a misleading

26  interpretation of KUM '435.

27  Thus, there was no inequitable conduct before the USPTO and the KUM

28  '435 alone or in combination with other prior art does not invalidate the valid '283

Patent.  In addition, there was no Rule 11 violation by Plaintiff's counsel because Plaintiff's counsel conducted thorough analysis of the '283 Patent, Defendant's infringing product, relevant facts, claims, potential defenses or counterclaims, including analysis of KUM '435, etc.

### B.   Inequitable Conduct

The substantive elements of inequitable conduct are: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).

"[T]he materiality required to establish inequitable conduct is but-for-materiality. When an applicant fails to disclose prior art to the PTO, that prior art has but-for-materiality if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense* at 1291.

In addition, in order to establish inequitable conduct, Defendant must prove by clear and convincing *evidence* that Plaintiff or Plaintiff's counsel withheld material information with intent to deceive the USPTO." *Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324, 1328 (Fed. Cir. 2010).

### 1.   Defendant's Allegations of Inequitable Conduct and Materiality are Based Upon an Incorrect Translation of KUM '435

Defendant conveniently relies on an incorrect translation that misstates the claims in KUM '435 to support its claims.  *Declaration of Counsel,* ¶ 18. Defendant alleges that KUM '435 discloses the *removable* hard protective frame by pointing to the description of "a 1st body has a device receiver…; a 2nd body that *joins* the opposite side of the aforementioned receiver body's device

1  receiver. . .”  Dkt. 21-8 at 5; See also [0013] of KUM ‘435.  However, a correct

2  translation of the KUM ‘435 demonstrates that it is not material to the ‘283 Patent

3  and that Plaintiff did not engage in inequitable conduct.  *Declaration of Counsel*,

4  ¶19, Ex. B.  Thus, Defendant’s claims of materiality and inequitable conduct fail.

5  *Declaration of Counsel*, ¶18.

6         In its translation of KUM ‘435, Defendant translated the Korean phrase

7  “고정결합” into “*joins*” in English.  However, the correct translation is “*is fixedly*

8  *attached to*.”  *Declaration of Counsel, ¶*19, Ex. B.  Specifically, “결합” in Korean

9  may be translated into “*joins*” or “attached to.”  As such, Defendant translated the

10  phrase “결합” into “joins.”  However, Defendant conveniently omitted the phrase

11  “고정” from its translation.  *Id.*  The phrase Defendant omitted “고정” means

12  “*fixedly*” or “*inseparably*.”  This phrase clearly would have demonstrated one of

13  the differences between the KUM ‘435 and the ‘283 Patent.  Thus, inclusion of this

14  omitted phrase significantly changes the claims in the KUM ‘435.

15         Additionally, Defendant’s translation of [0026] of KUM ‘435 is also

16  incorrect.  Dkt. 21-7 at 6; *Declaration of Counsel*, ¶19, Ex. B.  The correct

17  translation is as follows:

18         Diagram 2 is a disassembled perspective view of the slide cover in the
        application example of Diagram 1 in a disassembled state.  In this
19        diagram, the inner structure of the aforementioned slide case (130) of
        the aforementioned case body (100) can be seen. A camera hole (116)
20        is provided to accommodate the aforementioned camera hole (136) in
        the aforementioned case body (100). The aforementioned case body
21        (100) can be comprised of two parts made of different materials. In
        other words, it can be comprised of the 1st body (101) that has a device
22        receiver that receives the mobile device in the rear of this diagram and
        the 2nd body (102) that faces the aforementioned slide cover (130).
23        These can be molded separately and fixedly attached to each other, or
        they may be formed as one unit through a method such as an insert
24        injection, etc.”

25

26

27

28  Thus, based on the correct translation, Defendant’s contention that Plaintiff

engaged in inequitable conduct fails.

## 2. __KUM '435 is Not Material to the Patentability of Any Claim of the '283 Patent because KUM '435 Discloses Significantly Different Invention and Does Not Teach or Disclose Elements Common to All Claims of the '283 Patent.__

The '283 Patent includes claims 1-22, including independent claims of claims 1 and 16. Claims 2-15 depend on claim 1 and claims 16-22 depend on claim 16. The '283 patent discloses a case for a mobile electronic device comprising a soft protective case having a *raised wall* for a credit card storage compartment, a hard protective frame configured to *removably* mount over the soft protective case, and a cover to cover the credit card storage compartment. Claim 1 states the limitations of the *raised wall* and *removable* hard protective frame. Claim 16 states the limitation of the *removable* hard protective frame and Claim 18 states the limitation of the *raised wall*. The claims also include a number of elements or claim limitations to provide secure and compact coupling between the soft protective case and the *removable* hard protective frame.

Based upon the proper translations, KUM '435 discloses an invention significantly different from that of the '283 Patent. *Declaration of Counsel,* ¶6. Specifically, KUM '435 discloses a case for a mobile electronic device comprising a 1st body, a 2nd body having a recess to receive a credit card therein, and a slide cover to cover the recess. Only for comparing purpose, the 1st body and 2nd body of KUM '435 respectively correspond to the soft protective case and hard protective frame of the '283 Patent. While the card storage compartment is formed on the hard outer 2nd body in KUM '435, it is formed on the interior soft protective case in the '283 Patent. In addition, unlike the '283 Patent, the 1st body is *fixedly* attached to the 2nd body in KUM '435. KUM '435 does not teach or disclose the limitations of the *raised wall* formed on the soft protective case. Furthermore, KUM '435 does not teach or disclose the elements or claim limitations to provide secure and compact coupling between the soft protective case and the *removable* hard protective frame because the 1st body is *fixedly*

---

1   attached to the 2nd body in KUM '435 and such elements are not required.

2   Moreover, there are significant differences in the case structures of KUM

3   '435 and the '283 Patent. First, in [0026] of KUM '435, the patent only discloses

4   that the 2nd body is *fixedly attached* to the 1st body and does not disclose they can

5   be separable. Next, contrary to Defendant's contentions (see Dkt. 21-8), KUM

6   '435 does not teach or disclose the *raised wall* formed on the soft protective case.

7   Instead, in the KUM '435, the wall is on the 2nd body and never describes that the

8   wall can be formed on the 1st body. On the contrary, [0022]~[0026] on page 5 of

9   the KUM '435 describe the case of Diagram 1 or FIG. 1 where the card storage is

10  formed on the 2nd and the 2nd body has side walls. Although, [0027] of KUM '435

11  states that the 2nd body may be pierced to expose back of the 1st body so that the

12  exposed portion can be a floor of the card storage, this embodiment of KUM '435

13  does not teach or disclose the *raised wall* formed on the soft protective case or the

14  *removable* hard protective frame of the '283 Patent. Finally, KUM '435 does not

15  teach or disclose the elements or claim limitations on how the r*emovable* hard

16  protective frame is securely and compactly coupled to the soft protective case.

17  Therefore, KUM '435 does not invalidate any claim of the '283 Patent under

18  35 U.S.C. § 102 or § 103. KUM '435 alone or in combination with other cited

19  references do not teach or disclose the limitations of the *raised wall*, *removable*

20  hard protective frame, and other coupling elements.

21      **3.      The USPTO Would Have Allowed All Claims of the '283**
22              **Patent Had It Been Aware of KUM '435**

23      Defendant fails to demonstrate that the USPTO would not have issued any

24  of the claims of the patent had they known of KUM '435. Defendant argued that

25  KUM '435 discloses all elements of claims 1, 2, 6, 8, 10, 11, 13, 16, 17 and 18 of

26  the '283 Patent. However, as explained above, KUM '435 does not disclose the

27  limitation of the *removable* hard protective frame, common to all claims of the

28  '283 Patent, and the *raised wall* and other coupling elements. Thus, KUM '435

PLAINTIFF SPIGEN KOREA CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S
MOTION FOR SANCTIONS

14

does not anticipate any claim of the '283 Patent under 35 U.S.C. § 102.

In addition, Defendant only makes a conclusory argument that had the USPTO known of the KUM 435, it would not have allowed the claims in the '283 Patent due to the obviousness of a combination of KUM '435 and one or more references in the cited prior art or other prior art under 35 U.S.C. § 103. However, Defendant has not provided any specific reference or detailed explanation on how the references can make claims of the '283 Patent obvious. As explained above, there is no reference disclosing or teaching the limitation of removable hard protective frame, which is common to all claims of the '283 Patent, and the coupling elements.

Therefore, no claim of the '283 Patent can be invalidated by KUM '435 under 35 U.S.C. § 102 or 103.

### 4.   Plaintiff or Plaintiff's counsel did not Deceive nor Intend to Deceive the USPTO

The evidence Defendant has presented to show intent to deceive was speculative and circumstantial evidence that KUM '435 was known to Plaintiff or Plaintiff's counsel during the prosecution of the application which is issued to the '283 Patent. However, Defendant failed to present a clear and convincing evidence to prove Plaintiff or Plaintiff's counsel's intent to deceive the USPTO. In fact, Plaintiff and Plaintiff's counsel did not intent to deceive the USPTO. Plaintiff reviewed KUM '435 and determined that KUM '435 is significantly different from the invention disclosed by the '283 Patent. *Declaration of Counsel*, ¶7, ¶12-¶13. Plaintiff did not see the need to disclose KUM '435 with the USPTO because it believed KUM '435 is irrelevant to the '283 Patent. *Declaration of Kim*, ¶3. Plaintiff's counsel was later notified of KUM '435 and reached the same conclusion that KUM '435 is not material to the patentability of the '283 Patent and cumulative to other cited references. *Id.*

Defendant further argues that the evidence of intent to deceive the USPTO is

thus very strong because Plaintiff was sued in Korea by the patentee of KUM '435 for the infringement of KUM '435 by Plaintiff's case embodying the '283 Patent. However, Plaintiff correctly concluded the lawsuit was frivolous and without any reasonable basis because KUM '435 discloses an invention completely different from a case embodying the '283 Patent and Plaintiff's accused case does not infringe any claim of KUM '435. *Declaration of Counsel*, ¶15, Ex. A. Thus, Plaintiff's Counsel concluded that  KUM '435 is cumulative to cited references which were already considered by the examiner who examined and allowed the '283 Patent.

Plaintiff and Plaintiff's counsel did not intent to deceive the USPTO and Plaintiff's decision that KUM '435 is not material to the patentability of the '283 Patent is correct or at least reasonable.

Therefore, Defendant fails to present a clear and convincing evidence to prove Plaintiff or Plaintiff's counsel's intent to deceive the USPTO.

### 5. Defendant Fails to Demonstrate by Clear and Convincing Evidence that Plaintiff or Plaintiff's Counsel Withheld Material Information from the USPTO

There are heightened standards for the party challenging the patent based upon inequitable conduct. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir 2011).  Moreover, Defendant must demonstrate (1) that had the USPTO been aware of the "withheld or misrepresented information, it would not have issued the patent;" and (2) must demonstrate by "clear and convincing evidence that the applicant knew of the [material evidence], knew that it was material, and made a deliberate decision to withhold it." *Id.* at 1290-1291.

Defendant fails to demonstrate that there was clear and convincing evidence that Plaintiff or Plaintiff's counsel made a deliberate decision to withhold material information.  Defendant claims that the "intent to deceive the USPTO is . . . very strong" due to the infringement of KUM '435 by Plaintiff.  However, the infringement decision was erroneous and reversed, and the claim by KUM '435

---

patentee against Plaintiff was frivolous and groundless.  Other than conclusory statements, Defendant does not provide any evidence that Plaintiff or Plaintiff's counsel knew KUM '435 was material to the '283 Patent.  Moreover, Defendant does not provide any evidence that Plaintiff or Plaintiff's counsel made a deliberate decision to withhold material information.  Finally, as demonstrated above, KUM '435 is not material to the patentability of the '283 Patent.

### 6.    Defendant Fails to Demonstrate Plaintiff or Plaintiff's Counsel's Intent to Deceive the USPTO

Defendant erroneously claims that *Therasense* standard to determine intent to deceive would be for the Court to "infer intent to deceive from indirect and circumstantial evidence." *Therasense, Inc.* 649 F.3d at 1291.  Defendant misstates the *Therasense* standard to create an easier standard to prove intent to deceive.  Contrary to Defendant's characterization of *Therasense*, the Court stated that "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* at 1290 (quoting *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).  Thus, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.  However, where there is proof of "affirmative egregious misconduct" such as a "'deliberately planned and carefully executed scheme[ ]' to defraud the [USPTO]," it is not necessary to prove that the information at issue was "but-for" material. *Id.* at 1292 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)).

Here, based upon the facts and evidence provided by Defendant, there is no inference of an intent to deceive.  The only facts that Defendant presents is that "a third party in Korea sued Plaintiff for infringement of KUM '435, that Plaintiff failed to disclose KUM '435 to the USPTO, and that Plaintiff threatened Defendant with a lawsuit for infringement and sent Amazon.com a cease and desist letter.  Based upon the facts presented by Defendant, the Court cannot infer that there was an intent to deceive.  Moreover, that Plaintiff or Plaintiff's counsel intended to

1  deceive the USPTO is ***not*** the single most reasonable inference made from the

2  facts provided.  Instead, there are numerous other inferences that the Court can

3  make from the facts alleged by Defendant.  Thus, Defendant in its Rule 11 Motion

4  fails to demonstrate an intent by Plaintiff or Plaintiff's counsel to deceive the

5  USPTO.

6  **7.   Defendant's Fails to Allege with the Requisite Specificity**
7  **Required for Inequitable Conduct Claims**

8  "[I]nequitable conduct, while a broader concept than fraud, must be pled

9  with particularity" under [FRCP] 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*,

10  575 F.3d 1312, 1326, citing *Ferguson Beauregard/Logic Controls, Div. of Dover*

11  *Resources, Inc. v. Mega Sys., LLC,*350 F.3d 1327, 1344 (Fed.Cir.2003).  A

12  pleading that simply avers the substantive elements of inequitable conduct, without

13  setting forth the particularized factual bases for the allegation, does not satisfy Rule

14  9(b).  *Exergen Corp.*, 575 F.3d at 1326 (*See King Auto., Inc. v. Speedy Muffler*

15  *King, Inc.,* 667 F.2d 1008, 1010 (CCPA 1981) ["FRCP 9(b) requires that the

16  pleadings contain explicit rather than implied expression of the circumstances

17  constituting fraud."]).

18  Here, Defendant fails to allege with particularity the circumstances

19  constituting the inequitable conduct under FRCP 9(b).  Specifically, Defendant

20  fails to allege with particularity, that the omitted KUM '435 was material to the

21  claims in the '283 Patent.  Defendant's argument is based on mistranslation of

22  KUM '435.  Further, Defendant fails to state with particularity how KUM '435

23  anticipates the claims in the '283 Patent or how KUM '435 makes the claims of the

24  '283 Patent obvious in view of other reference.

25  Additionally, Defendant fails to plead with the requisite particularity the

26  circumstances of Plaintiff or Plaintiff's counsel's alleged intent to deceive.

27  Defendant attempts to infer such alleged intent to deceive based upon indirect and

28  circumstantial evidence.  Defendant must state with particularity the reasons

behind the intent to deceive and state with particularity the "deliberate decision to

1   withhold a known material reference' or to make a knowingly false

2   misrepresentation." *Exergen Corp. v. Walmart Stores,* 575 F.3d at 1326.  Thus,

3   since Defendant's Rule 11 Motion is based upon inequitable conduct, Defendants'

4   claim fails.

5

6   ## 8.   At This Point in the Proceedings, The Court Cannot Determine if there was Inequitable Conduct

7

8   Because there are so many factual and evidentiary issues to consider in

9   inequitable conduct claims, inequitable conduct is a question for the jury to

10   determine.  In order "[t]o establish inequitable conduct, the accused infringer must

11   prove by clear and convincing *evidence* that the patentee withheld material

12   information with intent to deceive the USPTO." *Taltech Limited v. Esquel*

13   *Enterprises Limited*, 604 F.3d 1324, 1328 (Fed. Cir. 2010).  Thus, any Inequitable

14   Conduct allegations should be pled by Defendant (and was pled by Defendant) in

15   the Counterclaims.

16   The Parties have not formally begun discovery and Defendant failed to

17   demonstrate Plaintiff engaged in inequitable conduct. Therefore, Defendant's

18   motion for sanctions, which is mainly based on inequitable conduct, should be

19   denied.

20   ## C.   Validity

21   A patent shall be presumed valid.  35 U.S.C § 282.  Each claim of a patent

22   (whether in independent, dependent, or multiple dependent form) shall be

23   presumed valid independently of the validity of other claims and the burden of

24   establishing invalidity of a patent or any claim thereof shall rest on the party

25   asserting such invalidity.  *Id*.  In addition, the presumption of patent validity under

26   35 U.S.C. § 282 must be overcome by clear and convincing evidence. *Microsoft*

27   *Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238 (2011).

28   As explained above, KUM '435 does not anticipate any claim of the '283

---

Patent under 35 U.S.C. § 102, not make any claim of the '283 Patent obvious under 35 U.S.C. § 103. In addition, Defendant failed to prove its invalidity claim by clear and convincing evidence.

### D.  No Rule 11 Violation by Plaintiff's Counsel

When looking into the validity of the patent infringement claims, an attorney must not rely solely on the client's claim interpretation and must perform an independent analysis to assert a nonfrivolous claim construction. *Antonius v. Spalding & Evenflo Companies, Inc.,* 275 F.3d 1066, 1072 (Fed. Cir. 2002) (citing *View Eng'g,* 208 F.3d at 986).  Courts have found investigations unreasonable when there were: (l) no attempt to obtain a sample of the infringing device and compare it to claims; *(Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997)) (2) no independent infringement analysis by counsel; (*View Eng'g, Inc.* 208 F.3d at 985 (Fed. Cir. 2000)) and (3) no reverse engineering or attempt to acquire technical specifications from the alleged infringer.  (*Judin*. 110 F.3d at 785.)  Conversely, Courts have ruled that the claims in the Complaint were valid based upon an attorney's declaration that he interpreted and analyzed the patent claims, specification, and file history to reach a reasonable, non-frivolous infringement analysis.  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004.

Here, prior to filing the lawsuit, Plaintiff's Counsel, who already had extensive knowledge of the '283 Patent, extensively analyzed the '283 patents, its claims and its prosecution history along with cited references.  *Declaration of Counsel*, ¶2, ¶8.  He reviewed the patents and all of its claims, purchased numerous samples of Defendant's product and compared the products to the claims of the '283 Patent.  *Declaration of Counsel*, ¶5-¶6.  Plaintiff's Counsel analyzed Defendant's product and determined that it infringes a number of claims in the '283 Patent.  *Declaration of Counsel*, ¶8-¶12.  Based upon his investigation and analysis, Plaintiff's Counsel could reasonably conclude that Defendant's product

infringes the '283 Patent.

Additionally, before filing the complaint of this case, Plaintiff's counsel was notified of KUM '435 and reviewed and analyzed it along with other known prior art references. *Declaration of Counsel*, ¶4-¶7.  Based on the analysis, Plaintiff's counsel concluded that KUM '435 is significantly different from the '283 Patent and is not material to the patentability of the '283 Patent. *Declaration of Counsel*, ¶6.  In addition, Plaintiff's counsel concluded that Plaintiff's accused product embodying the '283 Patent does not infringe KUM '435. *Id.*  Therefore, during the prosecution of the '283 Patent, Plaintiff's counsel found no need to cancel registration of the '283 Patent and submit KUM '435 for further examination.

Plaintiff's counsel further investigated, reviewed and analyzed other facts of the case, claims, potential counterclaims or defenses, etc.  Based on his reasonable inquiry, investigation, and analysis, Plaintiff's counsel determined that (1) Defendant's product was infringing the '283 Patent and (2) Spigen's 283 Patent is valid and enforceable.  Thus, since Plaintiff's counsel conducted reasonable and competent inquiry before filing the lawsuit and because the lawsuit has merit from an objective perspective, Defendant's Rule 11 Motion against Plaintiff's counsel fails.

### E.  <u>The Court Should Award Plaintiff its Fees in Opposing this Motion</u>

Rule 11 allows a court, "[i]f warranted, . . . [to] award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." *FRCP* Rule 11(c)(1)(A). [T]he filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." *FRCP* Rule 11 (Advisory Committee's Notes (1993 amendments).  "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407,421 (2003).

Sanctions are warranted in this case.  First, Defendant's allegations are based upon materiality and inequitable conduct.  Defendant's allegations are based upon an improperly translated KUM '435.   Moreover, Defendant fails to allege that (1) it did not infringe on the '283 Patent, or that (2) Plaintiff's counsel failed to investigate all facts, law, and legal conclusions before filing the lawsuit.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff Spigen Korea Co. LTD requests that Defendant's Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 11 be denied in its entirety.  And Plaintiff Spigen Korea Co. LTD should be awarded its attorney's fees in opposing the Motion.


Dated: November 16, 2015             EAST WEST LAW GROUP



                                     By: ___/s/ heedong chae_____
                                         Heedong Chae, Esq.
                                         Chong Roh, Esq.
                                         Attorneys for Plaintiff,
                                         SPIGEN KOREA CO., LTD.

---

PLAINTIFF SPIGEN KOREA CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S
MOTION FOR SANCTIONS

EXHIBIT B

1 | Heedong Chae (SBN 263237)
2 | Email: hdchae@ewpat.com
  | **East West Law Group PC**
3 | 3600 Wilshire Blvd., Suite 702
4 | Telephone: (213) 387-3630
  | Facsimile: (213) 788-3365
5 |
6 | *Attorneys for Plaintiff,*
7 | *Spigen Korea Co., LTD.*

8 | UNITED STATES DISTRICT COURT
9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SPIGEN KOREA CO., LTD., a | Case No.: 8:15-cv-01050 DOC (DFMx)
11 | Republic of Korea corporation, | Assigned to Hon. David O. Carter
12 | Plaintiff, | **DECLARATION OF COUNSEL IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS**
13 |
14 | v. |
15 | ISPEAK CO., LTD., a Republic of | **Hearing:**
16 | Korea corporation; VERUS U.S.A., | Date:      December 7, 2015
17 | LLC, a California limited liability | Time:      9:30 a.m.
   | company; DOES 1 though 10, inclusive, | Dept:      9D
18 | | Location:  411 West Fourth Street,
   | Defendants. |              Santa Ana, CA 92701
19 | VERUS U.S.A., LLC, a California |
20 | limited liability company, |
21 | Counter-Plaintiff, | *[The following documents filed*
22 | | *concurrently: Plaintiff Spigen's*
   | v. | *Opposition to Motion for Sanctions;*
23 | | *Spigen's CEO's Declaration]*
24 | SPIGEN KOREA CO., LTD., a |
25 | Republic of Korea corporation, |
26 | Counter-Defendant. |
27 |
28 |

DECLARATION OF COUNSEL HEEDONG CHAE IN SUPPORT OF PLAINTIFF SPIGEN KOREA
CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS

1

1

2      I, Heedong Chae declare as follows:

3          1.      I am the attorney for Plaintiff and Counter-Defendant Spigen

4    Korea Co., LTD (hereinafter, "Plaintiff" or "Spigen") in this action and I

5    have personal knowledge of the facts set forth herein, and if called upon, I

6    could and would testify competently to those facts.

7          2.      I have extensive knowledge of Spigen's U.S. Patent No.

8    9,049,283 entitled "Case Having a Storage Compartment for Electronic

9    Devices," duly and properly issued by the U.S. Patent and Trademark Office

10   on June 2, 2015 (hereinafter, " '283 Patent") and its prosecution history.

11         3.      After becoming aware of Defendant Verus U.S.A., LLC's

12   (hereinafter, "Defendant") infringing product, Spigen asked me about

13   enforcing its patent against Defendant.

14         4.      In about late May of 2015, Plaintiff asked me to review and

15   analyze Korean Utility Model No. 20-0472435 ("KUM '435") in connection

16   with the matter of enforcing the '283 Patent against Defendant.

17         5.      I then conducted my own analysis and investigation of the

18   KUM 435 and compared it to the '283 Patent.

19         6.      Based upon my analysis, knowledge, and experience, I

20   concluded that KUM '435 discloses an invention significantly different from

21   the '283 Patent or Spigen's product practicing the '283 Patent and that KUM

22   '435 is not material to the patentability of the '283 Patent.

23         7.      Based on my analysis, I further concluded that KUM '435 is

24   cumulative to other cited references of the '283 Patent and that KUM '435

25   does not anticipate any claim of the '283 Patent, nor make any claim of the

26   '283 Patent obvious in view of other prior art known to me.

27         8.      Prior to filing the complaint against Defendant and sending out

28   a cease and desist letter to Defendant, I purchased numerous samples of

---

DECLARATION OF COUNSEL HEEDONG CHAE IN SUPPORT OF PLAINTIFF SPIGEN KOREA
CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS

2

1  Defendant's infringing product.  I analyzed the samples of Defendant's
2  product and compared them to the claims of the '283 Patent and concluded
3  Defendant's product infringes a number of claims of the '283 Patent.

4      9.    Prior to filing the complaint against Defendant, I further
5  investigated, reviewed, and analyzed other facts of the case, claims, potential
6  counterclaims or defenses, etc.

7      10.    On July 1, 2015, I sent a cease and desist letter to Defendant
8  informing them of their infringement of the '283 Patent.

9      11.    In response, on July 14, 2015, Defendant's Counsel sent a letter
10  stating that because of the existence of "KUM 435", the '283 Patent is
11  invalid. Further, Defendant's Counsel implied that Spigen's conduct with the
12  United States Patent and Trademark Office (hereinafter, "USPTO") was
13  inequitable.

14      12.    Upon receiving this letter, I conducted my own analysis and
15  investigation of KUM '435 again and compared it to the '283 Patent.

16      13.    Again, I concluded that KUM '435 does not anticipate any
17  claim of the '283 Patent, nor make any claim of the '283 Patent obvious in
18  view of other prior art known to me.

19      14.    On August 28, 2015, Defendant's counsel sent me a draft of
20  motion for sanction under FRCP 11 (the "Rule 11 Motion").

21      15.    On October 5, 2015, I replied to Defendant's counsel regarding
22  the draft of the Rule 11 Motion.  A true and correct copy of the reply is
23  attached hereto as Exhibit "A".

24      16.    In my reply, I pointed that KUM '435 does not anticipate any
25  claim of the '283 Patent, nor make any claim of the '283 Patent obvious in
26  view of other prior art. I also pointed that the analysis of Defendant's
27  counsel was based on mistranslation of KUM '435.

28      17.    However, Defendant's counsel proceeded to file the Rule 11

DECLARATION OF COUNSEL HEEDONG CHAE IN SUPPORT OF PLAINTIFF SPIGEN KOREA
CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS
3

1   Motion.

2        18.    The translation of KUM '435 provided by Defendant's counsel

3   contains a number of mistranslations and misleading translations. I believe

4   such mistranslations and misleading translations were intentionally

5   committed by Defendant's counsel's guidance.

6        19.    A true and correct translation of KUM '435 is attached hereto

7   as Exhibit "B".

8        I declare under penalty of perjury according to the laws of the State of

9   California and the United States of America, that the foregoing is true and

10  correct.

11       Executed this Monday, November 16, 2015 at Los Angeles, California

12

13

14  By: _____

15                  Heedong Chae, Declarant

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF COUNSEL HEEDONG CHAE IN SUPPORT OF PLAINTIFF SPIGEN KOREA
CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS

4

# EXHIBIT "A"



**EASTWEST** LAW GROUP

Intellectual Property, Business & Immigration
3600 Wilshire Blvd. Suite 702, Los Angeles, CA 90010
http://www.ewpat.com; Telephone 213.387.3630; Facsimile 213.788.3365

October 5, 2015

*VIA US Mail & Email*

Attention: Mark L. Sutton
3255 Wilshire Blvd. 11th Fl.
Los Angeles, CA 90010

> **RE:** **Response to the Letters dated August 28 and September 17, 2015 re Infringement of U.S. Patent No. 9,049,283 for "Case Having a Storage Compartment for Electronic Devices"**
> ***Our Matter No.: 7108LIT001***

Dear Mr. Sutton:

This letter is in response to your letter of August 28 and your proposed Rule 11 motion and letter of September 17 and the amended Rule 11 motion (collectively "your letter" and "proposed motion"). We disagree with the unfounded allegations of your letter and proposed motion.

As you are aware, the Federal Circuit is clear in defining inequitable conduct. Inequitable conduct encompasses both the intentional submission of materially false information and the failure to disclose material information. More precisely, the substantive elements of inequitable conduct are: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)). The Federal Circuit reaffirmed this definition of inequitable conduct in *Therasense. See Therasense, Inc. v. Becton, Dickinson & Co.*, Nos. 2008-1511, -1512,-1513, -1514, -1595, 2011 WL 2028255, at *6 (Fed. Cir. May 25, 2011) (en banc).

As stated in my letter dated, July 20, 2015, Korean Utility Model 20-0472435 (the "'435 KUD") discloses an invention materially different from that of the U.S. Patent 9,049,283 (the "'283 Patent"). The '283 patent discloses a case for a mobile electronic device comprising a soft protective case having a *raised wall* for a credit card storage compartment, a hard protective frame configured to *removably* mount over the soft protective case, and a cover to cover the credit card storage compartment. The '432 KUD

1

discloses a case for a mobile electronic device comprising a first body, a second body having a recess to receive a credit card therein, and a slide cover to cover the recess. The first body is *fixedly attached* to the second body.

While the hard protective frame (corresponding to the second body) *removably* mounts over the soft protective case (corresponding to the first body) in the '283 patent, the second body is *fixedly attached* to the second body in the '432 KUD. Because of this fundamental difference, the '432 KUD does not teach or disclose a number of limitations and elements in claims of the '283 patent.

In addition, the '432 KUD does not disclose the *raised wall* of the '283 patent. Thus, it is very clear that the '435 KUD is materially different from the '283 patent and the '435 KUD does not anticipate or make obvious any claim of the '283 patent.

Verus U.S.A. argues the '435 KUD discloses the *raised wall* and the feature that the second body *removably* mounts over the first body. However, this is based on mistranslation and misinterpretation of the '435 KUD. The '435 KUD does not disclose the raised wall and the second body does not *removably* mounts over the first body.

As for the intent element, the Federal Circuit held en banc that a defendant asserting inequitable conduct must prove intent to deceive and not merely gross negligence on the part of the patent applicant. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988) (en banc).

Further, under *Therasense*, inequitable conduct requires proof that the alleged wrongdoing was deliberately and knowingly wrong and that the result of the wrongdoing during patent prosecution impacted the issuance of the eventual patent and that each element be proven with clear and convincing evidence. In the failure-to-disclose situation, the defendant must prove "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." In a failure-to-disclose situation, the defendant must prove that individuals with a Rule 56 duty "made a deliberate decision to withhold" the references. Further, that deliberate decision element must be proven with clear and convincing evidence and that proof cannot be inferred from the fact that the individuals had knowledge of the references and their materiality. *1st Media v. Electronic Arts*, 694 F.3d 1367 (Fed. Cir. 2012).

At this stage in the litigation, it is implausible that your client could meet this high standard. In fact, your threat of bringing a motion for sanctions under Rule 11 without specific facts raises issues of misconduct on defendant' part. We also remind you that unsupported charges of inequitable conduct are disfavored by the Federal Circuit. *See Burlington Indust. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988); *Optical Coating Lab., Inc. v. Applied Vision, Ltd.*, 1995 U.S. Dist. LEXIS 4565 (N.D. Cal. 1995) (holding that pursuing an inequitable conduct claim without a specific factual basis raised the specter of Rule 11 sanctions for having pled the claim).

2

Finally, your proposed motion also does not comply with Fed.R.Civ.P. 9(b). The defendant must plead the defense with particularity pursuant to Federal Rule of Civil Procedure 9(b), "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)". *Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312* (Fed. Cir. 2009). First, the pleading must name the specific individuals who are alleged to have committed inequitable conduct. Second, the pleading must identify the specific limitations in the specific claims that are affected by the alleged inequitable conduct – and must also identify the specific passages in the withheld reference that are material. Third, to establish non-cumulativeness, the pleading must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." The pleading must establish that the allegedly material pincite is not to be found in the prior art of record. Finally, the pleading must include factual allegations that a specific person knew of the specific information in a withheld reference. The pleading must also allege facts to plausibly suggest a "'deliberate decision to withhold a known material reference' or to make a knowingly false misrepresentation." Defendant' proposed motion makes no more than general allegations that since Plaintiff was sent a letter regarding '435 KUD, it must have committed inequitable conduct. This is simply not enough to meet the standards set forth in Rule 9(b).

Rest assure that Spigen takes these allegations seriously and will defend itself vigorously against such. At the very least, Defendant' proposed motion is premature, and as such, this motion should not be brought at this time. Spigen will seek sanctions under Rule 9 and Rule 11 should Defendant chooses to proceed with this unfounded motion. Further, Defendant has provided no explanation for its continued infringement of the '283 Patent. Defendant has never provided non-infringement defenses. Spigen repeats its demand that Defendants immediately <u>cease and desist</u> from any and all sale, offering for sale, distribution, importation, manufacture, advertisement, promotion and display of any infringing cases.

Sincerely,

/s/  heedong chae

Heedong Chae, Esq. (hdchae@ewpat.com)

3

# EXHIBIT "B"

Registered Utility Model 20-0472435

| | |
|---|---|
| (19) Korean Intellectual Property Office (KR)<br>(12) Registered Utility Model Gazette (Y1) | (45) Publication Date April 28, 2014<br>(11) Registration No. 20-0472435<br>(24) Registration Date April 22, 2014 |
| (51) International Patent Classification (Int. Cl.)<br>   *H04B 1/38* (2006. 01)<br>(21) Application Number **20-2013-0009630**<br>(22) Application Date **November 22, 2013**<br>   Examination Request Date **November 22, 2013**<br>(56) Preceding Technology Research Literature<br>   KR101246791 B1*<br>   KR1020090104946 A*<br>   *Documents cited by an examiner | (73) Holder of Utility Model Rights<br>   **Irum Designskin Inc.**<br>   3rd floor, 10 Yanghwa-ro 18an-<br>   gil, Mapo-gu, Seoul, (Donggyo-dong)<br>(72) Inventor<br>   **Chan-Hong Park**<br>   101-703, 125 Donggyo-ro 3-gil, Mapo-gu, Seoul,<br>   (Mangweon-dong, Hyunjin Everville)<br>(74) Agent<br>   **Chang-Hwan Kim** |

Total Claims: Total of 4 Claims                            Examiner: Jeong-Geun Park

(54) Title of the Device: Card Storage Type Mobile Device Case with a Slide Cover

*(57) Abstract*

       Presented here is a card storage type mobile device case. The mobile device case, according to one aspect of this design, is comprised of a case body with a device receiving part that receives the mobile device on one side; a slide cover that joins to allow opening and closing on the opposite side of the aforementioned case body's aforementioned device receiver; a recessed card storage on at least one side of the two surfaces of the aforementioned case body and aforementioned slide cover that face each other. The mobile device case, according to another aspect of this design, is comprised of the 1st body that has a device receiver that receives a mobile device on one side; the 2nd body that is fixedly attached to the opposite side of the aforementioned receiver body's device receiver and has a recessed card storage; and a slide cover that joins via a slide method to allow the opening and closing of the aforementioned card storage on the aforementioned 1st body.

*Abstract Figure – Diagram 1*



Registered Utility Model 20-0472435

*The Scope of Utility Model Registration Claims*

**Claim   1**

Deleted

**Claim   2**

Deleted

**Claim   3**

Deleted

**Claim   4**

Deleted

**Claim   5**

Deleted

**Claim 6**

A mobile case that is characterized by being comprised of

a 1st body that has a device receiver that receives the mobile device on one side;

a 2nd body that is fixedly attached to the opposite side of the aforementioned 1st body's aforementioned device receiver and has a recessed card storage;

and includes a slide cover that joins the aforementioned 2nd body to allow the opening and closing of the aforementioned card storage via a slide method,

and a 2nd body that formed in a synthetic resin that is relatively harder than the aforementioned 1st body.

**Claim 7**

With regard to Claim 6, a

mobile case

that is characterized by being equipped with a slide rail with an under cut form on the two outer walls of the aforementioned card storage in the aforementioned 2nd body.

**Claim 8**

With regard to Claim 6, a

mobile case

that is characterized by the aforementioned 2nd body and the aforementioned slide cover being formed with the same synthetic resin.

**Claim 9**

With regard to Claim 6,

a mobile case that is characterized by the fact that

the aforementioned 1st body is made with polyurethane or silicone rubber,

and the aforementioned 2nd body is made with polycarbonate or ABS resin.

Registered Utility Model 20-0472435

### Claim 10

Deleted

*Specifications*

*Technical Field*

[0001]   This design, pertains to a mobile case, and more specifically pertains to a mobile case that protects a mobile device such as a smartphone from external shock, and provides user convenience.

*Technological Background*

[0002]   Since the universalization of portable phones, various other types of portable devices such as portable multimedia players (PMP, portable multimedia player), PDA (personal digital assistants), portable DMB TVs, portable game devices, and electronic dictionaries have been utilized. With the recent emergence of smartphones, there has been a trend where various existing portable devices are being integrated into one smartphone.

[0003]   While portability has improved with the integration of various functions into one device such as a smartphone, the price of devices has increased. Therefore, there is an increased need to protect mobile devices from unexpected situations such as shock from dropping them, and the usage of smartphone cases, such as bumpers, has become widespread.

[0004]   Meanwhile, many individuals have started carrying mobile devices such as smartphones at all times as dependency on smartphones has increased in daily life. In a situation where the use of credit cards or debit cards is universal, there are increased demands from people who want to go out carrying just one or two cards and a smartphone instead of a wallet.

[0005]   Although smartphone cases, such as flip-type covers made of leather, etc., have been released to meet such demands, these demands that pursue a more simple and elegant appearance with the safety and durability of card storage have not been satisfied. Also, a portable device case with a slide cover has been released as shown in the preceding patent literature, but a configuration that can simultaneously provide the convenience and durability that users need, with an elegant appearance has not been presented to this date.

[0006]

*Preceding Technology Literature*

*Patent Literature*

[0007]   (Patent Literature 0001) Republic of Korea Registration Patent Gazette 10-1297532

*Details of the Design*

*The Problem that this Design Attempts to Solve*

[0008]   In response to the aforementioned demand, the purpose of this design is to provide a card storage mobile device case with a slide cover that can protect mobile devices such as smartphones, can store cards such as credit cards securely, and has a configuration that can simultaneously provide convenience and an elegant appearance.

*Method for Solving the Problem*

[0009]   In order to solve the aforementioned problem, the mobile device case, according to one aspect of this design, is comprised of a case body that has a device receiving part that receives the mobile device on one side; a slide cover that joins to allow opening and closing on the opposite side of the aforementioned case body's aforementioned device receiver; and a recessed card storage on at least one side of the two surfaces of the aforementioned case body and aforementioned slide cover that face each other.

[0010]   The aforementioned card storage may be formed in a recessed groove on the aforementioned case body.

Registered Utility Model 20-0472435

[0011]   A slide rail with an undercut (under cut) form on the two outer walls of the aforementioned card storage may be equipped.

[0012]   A bevel that connects to the aforementioned recessed groove on the aforementioned card storage's lower side wall may be created.

[0013]   The mobile device case, according to another aspect of this design, is comprised of a 1st body that has a device receiver that receives the mobile device; a 2nd body that is fixedly attached to the opposite side of the aforementioned receiver body's device receiver and has a recessed card storage; a slide cover that joins to allow the opening and closing of the aforementioned card storage on the aforementioned 1st body via a slide method.

[0014]   The aforementioned 2nd body may be created in a synthetic resin of relatively higher hardness than the aforementioned 1st body.

[0015]   A slide rail built in an undercut (under cut) form on two outer walls of the aforementioned card storage may be equipped in the aforementioned 2nd body.

[0016]   The aforementioned 2nd body and the aforementioned card storage may be made with the same synthetic resin.

[0017]   Meanwhile, the aforementioned 1st body can be made of polyurethane or silicon rubber, and the aforementioned 2nd body may be made with polycarbonate or ABS resin.

[0018]   A bevel that connects to the aforementioned recessed groove on the aforementioned card storage's lower side wall may be formed on the aforementioned 2nd body.


*Effect of the Design*

[0019]   According to this design, it has effects that protect mobile devices such as smartphones, securely store cards such as credit cards, and provide a card storage type mobile device case that has a slide cover with a configuration that can provide convenience and an elegant appearance.


*Brief Description of the Diagrams*

[0020]   Diagram 1 is a perspective view that shows the mobile case's slide cover in an opened state, according to this design's application example.

Diagram 2 is a disassembled perspective view that shows the slide cover from the aforementioned application example in Diagram 1 in a disassembled state.

Diagram 3 is a sectional view that shows the cross section of the aforementioned Diagram 2's III-III'.

Diagram 4 is a perspective view of a mobile device case viewed from the device receiver, according to the aforementioned application example in Diagram 1.

Diagram 5 is a side view of the aforementioned application example in Diagram 1, viewed from the right side of the slide cover.

Registered Utility Model 20-0472435

*Specific Details of the Application of this Design*

[0021]   This design's application example will be described below using the attached diagrams. The application example that will be described below can be modified into various forms, and this design's scope is not limited to the application examples below or the mentioned modification example. This invention's application example is provided in order to clearly convey the invention's technical ideologies to persons with general knowledge in the relevant field.

[0022]   Diagram 1 is a perspective view that shows the mobile case's slide cover in an opened state according to this design's one application example. A mobile device case according to this design has a case body (100) that receives the mobile device, a slide cover (130) that joins the aforementioned case body (100) to allow opening and closing via a slide method, and a card storage (110) that is created to be able to store at least one card in between the aforementioned case body (100) and the aforementioned slide cover(130).

[0023]   In this application example, the aforementioned card storage (110) may be created on one side of the aforementioned case body (100), more specifically in a recessed groove that fits the form of a card that is to be stored on the opposite side of the device receiver that receives a mobile device. In contrast, in a case where the aforementioned slide cover (130) has sufficient thickness, it can also be formed inside of the aforementioned slide cover (130) in the form of a recessed groove.

[0024]   As it pertains to this application example of the mobile device case, side walls that protrude towards the aforementioned slide cover (130) further than the bottom surface of the aforementioned card storage (110) are formed on both sides and on the lower part of the aforementioned card storage (110). Although not shown in detail in this Diagram, a slide rail that guides the movement of sliding motion of the aforementioned slide cover (130) can be built on both side walls (112). On the bottom side wall in the lower part of the aforementioned card storage (110), a bevel (113) may be formed to allow a user's finger (mainly the fingernail part) to easily reach the side of a card when taking out a stored card. Moreover, a bottom groove (114) may be formed on the bottom surface of the aforementioned card storage (110) that is close to the aforementioned bevel (113). The aforementioned bottom groove (114) provides a space that allows the entry of the user's fingernail etc., to the lower part of a stored card, which helps the user take out a card with ease by lifting the card.

[0025]   Meanwhile, a hole or a button is provided in places of the aforementioned slide cover (130) and the aforementioned case body (100) to avoid interference while using the received mobile device. For example, on the upper part of the aforementioned slide cover (130) is a camera hole (136) that exposes the mobile device's camera and flash to the outside, and on the side of the aforementioned case body (100) are buttons (118) that move flexibly in correspondence with the mobile device's buttons and an interface hole (117) for power or connecting external devices. For such holes, the location or form of buttons will differ according to the type of mobile device to be received.

[0026]   Diagram 2 is a disassembled perspective view of the slide cover in the application example of Diagram 1 in a disassembled state. In this diagram, the inner structure of the aforementioned slide case (130) of the aforementioned case body (100) can be seen. A camera hole (116) is provided to accommodate the aforementioned camera hole (136) in the aforementioned case body (100). The aforementioned case body (100) can be comprised of two parts made of different materials. In other words, it can be comprised of the 1st body (101) that has a device receiver that receives the mobile device in the rear of this diagram and the 2nd body (102) that faces the aforementioned slide cover (130). These can be molded separately and fixedly attached to each other, or they may be formed as one unit through a method such as an insert injection, etc.

[0027]   The above described recessed groove card storage (110) and both side walls (112), etc. may be arranged in the 2nd body (102). Unlike the application example, in order to deepen the depth of the aforementioned card storage (110), the part that corresponds to the aforementioned card storage (110) in the aforementioned 2nd body (102) may be pierced in order to expose one side of the 1st body (101) so that the exposed side of the 1st body (101) would form the floor of the aforementioned card storage(110).

Registered Utility Model 20-0472435

[0028]   In terms of material, the aforementioned 1st body (101) may be created using materials such as synthetic resins that provide a buffer effect that can protect the received mobile device from external shock from falling, for example, polyurethane or silicone rubber. The aforementioned 2nd body (102) can be made with materials that are relatively higher in hardness than the aforementioned 1st body (101) and can be made with the same material as the aforementioned slide cover (130). Examples of appropriate materials may be synthetic resins such as polycarbonate resin and ABS (acrylonitrile-butadiene-styrene) resins. When using the mobile device case according to this design, high friction and weight is applied on the aforementioned 2nd body (102) and the aforementioned slide cover (130) as a result of the opening and closing motion of the aforementioned slide cover (130). Therefore, material with sufficient level of hardness that can withstand this pressure is required. However, other materials can be used to fulfill these necessities.

[0029]   Meanwhile, there may be a bump (115) that protrudes on the aforementioned slide cover (130) side outside of the card storage (110) unit on the side that faces the aforementioned slide cover (130) of the aforementioned 2nd body (102). Though not pictured, the aforementioned guide bump (115) can guide the movement of the aforementioned slide cover (130) alongside the guide groove (not pictured), which is arranged to correspond with the aforementioned guide bump (115) at least for the length of the sliding section within the aforementioned slide cover (130). This type of structure can prevent damage to both side walls (112) of the aforementioned card storage (110) by diffusing the lateral load of the vertical substance that is applied in the sliding direction in the aforementioned slide cover (130).

[0030]   Diagram 3 is a sectional diagram that shows the III-III' cross section of the aforementioned Diagram 2. The diagram shows that the aforementioned case body (100) is comprised of a 1st body (101) with the device receiver (103) and the 2nd body (102). The aforementioned 2nd body (102) is comprised of a card storage and has walls on both sides (112) that are formed into slide rails (1121) in an under cut form on the outside. In the slide cover (130) is a slide bump (131) that interlocks with the aforementioned slide rails (1121) and moves in a sliding direction.

[0031]   Diagram 4 is a perspective view of the mobile case in the application example of the aforementioned diagram 1 from the perspective of the device receiver. When a mobile device such as a smartphone is placed inside the aforementioned device receiver (103) of the 1st body (101), the elasticity of the aforementioned 1st body's (101) material can support the mobile device so that it does not break away.

[0032]   Diagram 5 is a side view of the slide cover in the application example of the aforementioned diagram 1 from the right side. When the slide cover (130) is closed, the aforementioned side cover (130), the side of the 2nd body (102), and the side of the 1st body (101) can be seen to have 3 layers. However, unlike this application example, the side of the aforementioned slide cover (130) may cover the side of the aforementioned 2nd body (102), or when the aforementioned 1st body (101) and the aforementioned 2nd body (102) form one body made of the same material, in either case, two layers comprised of a slide cover (130) and the case body (100) made into one body may be seen.

*Explanation of Diagram Codes*

100: Case body

101: 1st  body          102: 2nd  body

110: Card storage                    112: Side wall

1121: Slide rail          113: Bevel

114: Bottom groove               130: Slide cover

*Diagrams*

*Diagram 1*

Case 2:16-cv-09185-DOC-DFM   Document 110-4   Filed 04/30/18   Page 38 of 52   Page ID
#:1767
Case 8:15-cv-01050-DOC-DFM   Document 25-3   Filed 11/16/15   Page 8 of 19   Page ID #:813

Registered Utility Model 20-0472435



*Diagram 2*



Registered Utility Model 20-0472435

*Diagram 3*



*Diagram 4*



Registered Utility Model 20-0472498

*Diagram 5*



# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California          )
                             )     S. S.
County Los Angeles           )

    I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated and reviewed the foregoing **10** pages of **Patent Application No. 20-2013-0009630, Card Storage Type Mobile Device Case with a Slide Cover** from Korean to English in accordance with Fed. R. Evid. 901 and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 13, 2015

Soomi Ko
California State Certified Court Interpreter
#300732
Direct: (213) 999-7848
soomi@komartin.com
www.komartin.com

## Ko & Martin Certified Interpreters and Translators
### Specializing in Korean and Chinese Languages

등록실용신안 20-0472435



| | |
|---|---|
| (19) 대한민국특허청(KR)<br>(12) 등록실용신안공보(Y1) | (45) 공고일자    2014년04월28일<br>(11) 등록번호    20-0472435<br>(24) 등록일자    2014년04월22일 |

(51) 국제특허분류(Int. Cl.)
 *H04B 1/38* (2006.01)
(21) 출원번호    20-2013-0009630
(22) 출원일자    2013년11월22일
 심사청구일자    2013년11월22일
(56) 선행기술조사문헌
 KR101246791 B1*
 KR1020090104946 A*
 *는 심사관에 의하여 인용된 문헌

(73) 실용신안권자
 이룸디자인스킨 주식회사
 서울특별시 마포구  양화로18안길  10 ,3층(동교동)
(72) 고안자
 박찬홍
 서울특별시 마포구 동교로3길 125. 101동 703호
 (망원동, 현진에버빌)
(74) 대리인
 김창환

전체 청구항 수 : 총  4  항                                             심사관 :    박정근

(54) 고안의 명칭 **슬라이드 커버를 갖는 카드 수납형 모바일기기 케이스**

*(57) 요 약*

슬라이드 커버를 갖는 카드 수납형 모바일기기 케이스가 개시된다. 본 고안의 한 측면에 따른 모바일기기 케이스는, 일측에 모바일기기를 수용하는 기기 수용부를 가지는 케이스 몸체; 상기 케이스 몸체의 상기 기기 수용부의 반대편에 슬라이드 방식으로 개폐 가능하게 결합되는 슬라이드 커버; 및 상기 케이스 몸체 및 상기 슬라이드 커버의 서로 마주보는 두 면중 적어도 하나에 오목하게 형성된 카드 수납부를 포함한다. 본 고안의 다른 한 측면에 따른 모바일기기 케이스는, 일측에 모바일기기를 수용하는 기기 수용부를 가지는 제1몸체부; 상기 수용부 몸체의 기기 수용부 반대편에 고정 결합되고, 오목하게 형성된 카드 수납부를 갖는 제2몸체부; 및 상기 제1몸체부에 상기 카드 수납부를 개폐할 수 있도록 슬라이드 방식으로 결합되는 슬라이드 커버를 포함한다.

*대 표 도 - 도1*



- 1 -

*실용신안 등록청구의 범위*

**청구항 1**

삭제

**청구항 2**

삭제

**청구항 3**

삭제

**청구항 4**

삭제

**청구항 5**

삭제

**청구항 6**

일측에 모바일기기를 수용하는 기기 수용부를 가지는 제1몸체부;

상기 제1몸체부의 상기 기기 수용부 반대편에 고정 결합되고, 오목하게 형성된 카드 수납부를 갖는 제2몸체부; 및

슬라이드 방식으로 상기 카드 수납부를 개폐할 수 있도록 상기 제2몸체부에  결합되는 슬라이드 커버를 포함하고,

상기 제2몸체부는 상기 제1몸체부보다 상대적으로 경도가 높은 합성수지로 형성된 것을 특징으로 하는,

모바일기기 케이스.

**청구항 7**

청구항 6에 있어서,

상기 제2몸체부에서 상기 카드 수납부의 양 측벽 외측에는 언더 컷(under cut) 형태로 형성된 슬라이드 레일이 구비된 것을 특징으로 하는.

모바일기기 케이스.

**청구항 8**

청구항 6에 있어서,

상기 제2몸체부와 상기 슬라이드 커버는 동일한 합성수지로 형성된 것을 특징으로 하는.

모바일기기 케이스

**청구항 9**

청구항 6에 있어서,

상기 제1몸체부는 폴리우레탄 또는 실리콘러버로 형성되고,

상기 제2몸체부는 폴리카보네이트 또는 ABS수지로 형성된 것을 특징으로 하는,

모바일기기 케이스.

EXHIBIT B

청구항 10

삭제

명 세 서

기 술 분 야

[0001]   본 고안은 모바일기기 케이스에 관한 것으로, 좀 더 상세하게는 스마트폰 등의 모바일기기를 외부 충격으로부터 보호함과 동시에 사용자 편의성을 제공하는 모바일기기 케이스에 관한 것이다.

배 경 기 술

[0002]   휴대 전화가 보편화 된 이래로 휴대용 멀티미디어 플레이어(PMP, portable multimedia player), PDA(personal digital assistants), 휴대용 DMB TV, 휴대용 게임기, 전자사전 등 많은 종류의 휴대용 기기들이 이용되어 왔다. 최근에는 스마트폰의 출현으로 기존의 다양한 휴대용 기기들은 스마트폰 하나에 통합되는 추세이다.

[0003]   다양한 기능들이 스마트폰과 같은 하나의 모바일기기에 통합되면서 휴대성이 좋아진 반면, 기기의 가격이 높아 졌다. 이로 인해 낙하에 의한 충격 등 돌발적인 상황으로부터 모바일기기를 보호해야할 필요성이 커졌고, 범퍼 등의 스마트폰 케이스를 사용하는 것이 보편화되고 있다.

[0004]   한편, 일상생활에서 스마트폰에 대한 의존도가 높아지면서 많은 사람들이 스마트폰과 같은 모바일기기를 항상 휴대하게 되었다. 신용카드 또는 체크카드 사용이 보편화 된 상황에서 지갑 대신 한두 장의 카드와 스마트폰만 을 간단히 휴대하고 단출하게 외출하려는 사람들의 요구도 많아지고 있다.

[0005]   이러한 요구를 반영하여 가죽 케이스 등 폴립형의 커버에 카드를 수납할 수 있도록 한 스마트폰 케이스가 출시 되었으나, 좀 더 단순하고 미려한 외관과 카드 수납의 안전성 및 내구성을 동시에 추구하는 요구를 충분히 충족 시키지 못하고 있다. 또한, 슬라이드 커버를 갖는 휴대기기 케이스도 선행특허문헌으로 개시된 바 있으나, 사용 자에게 필요한 편의성과 내구성, 그리고 미려한 외관을 동시에 제공할 수 있는 구성은 아직까지 제시되지 않고 있다.

[0006]

선행기술문헌

특허문헌

[0007]   (특허문헌 0001) 대한민국 등록특허공보 10-1297532

고안의 내용

해결하려는 과제

[0008]   전술한 요구에 부응하여, 본 고안은 스마트폰 등의 모바일기기를 보호할 수 있고, 신용카드 등의 카드를 안정적 으로 수납할 수 있으면서, 사용 편의성과 미려한 외관을 동시에 제공할 수 있는 구성의, 슬라이드 커버를 갖는 카드 수납형 모바일기기 케이스를 제공하는 데에 그 목적이 있다.

과제의 해결 수단

[0009]   전술한 과제의 해결을 위하여, 본 고안의 한 측면에 따른 모바일기기 케이스는, 일측에 모바일기기를 수용하는 기기 수용부를 가지는 케이스 몸체; 상기 케이스 몸체의 상기 기기 수용부의 반대편에 슬라이드 방식으로 개폐 가능하게 결합되는 슬라이드 커버; 및 상기 케이스 몸체 및 상기 슬라이드 커버의 서로 마주보는 두 면중 적어 도 하나에 오목하게 형성된 카드 수납부를 포함한다.

[0010]   상기 카드 수납부는 상기 케이스 몸체에 오목한 홈의 형태로 형성된 것일 수 있다.

EXHIBIT B
- 70 -

[0011]    상기 카드 수납부의 양 측벽 외측에는 언더 컷(under cut) 형태로 형성된 슬라이드 레일이 구비될 수 있다.

[0012]    상기 카드 수납부의 하단 측벽에는 상기 오목한 홈으로 연결되는 빗면부가 형성될 수 있다.

[0013]    본 고안의 다른 한 측면에 따른 모바일기기 케이스는, 일측에 모바일기기를 수용하는 기기 수용부를 가지는 제1몸체부; 상기 수용부 몸체의 기기 수용부 반대편에 고정 결합되고, 오목하게 형성된 카드 수납부를 갖는 제2몸체부; 및 상기 제1몸체부에 상기 카드 수납부를 개폐할 수 있도록 슬라이드 방식으로 결합되는 슬라이드 커버를 포함한다.

[0014]    상기 제2몸체부는 상기 제1몸체부보다 상대적으로 경도가 높은 합성수지로 형성된 것일 수 있다.

[0015]    상기 제2몸체부에서 상기 카드 수납부의 양 측벽 외측에는 언더 컷(under cut) 형태로 형성된 슬라이드 레일이 구비될 수 있다.

[0016]    상기 제2몸체부와 상기 슬라이드 커버는 동일한 합성수지로 형성될 수 있다.

[0017]    한편, 상기 제1몸체부는 폴리우레탄 또는 실리콘러버로 형성되고, 상기 제2몸체부는 폴리카보네이트 또는 ABS수지로 형성된 것일 수 있다.

[0018]    상기 제2몸체부에서 상기 카드 수납부의 하단 측벽에는 상기 오목한 홈으로 연결되는 빗면부가 형성될 수 있다.

*고안의 효과*

[0019]    본 고안에 따르면, 스마트폰 등의 모바일기기를 보호할 수 있고, 신용카드 등의 카드를 안정적으로 수납할 수 있으면서, 사용 편의성과 미려한 외관을 동시에 제공할 수 있는 구성의, 슬라이드 커버를 갖는 카드 수납형 모바일기기 케이스를 제공하는 효과가 있다.

*도면의 간단한 설명*

[0020]    도 1은 본 고안의 한 실시예에 따른 모바일기기 케이스의 슬라이드 커버가 개방된 상태를 보이는 사시도이다.

도 2는 상기 도 1의 실시예에서 슬라이드 커버가 분리된 상태를 보이는 분해사시도이다.

도 3은 상기 도 2의 Ⅲ-Ⅲ' 단면을 보이는 단면도이다.

도 4는 상기 도 1의 실시예에 따른 모바일기기 케이스를 기기 수용부 측에서 본 사시도이다.

도 5는 상기 도 1의 실시예를 슬라이드 커버의 우측에서 본 측면도이다.

*고안을 실시하기 위한 구체적인 내용*

[0021]    이하에서는 첨부된 도면을 참조하여 본 고안의 실시예를 설명한다. 다음에서 설명되는 실시예는 여러 가지 다양한 형태로 변형할 수 있으며, 본 고안의 범위가 아래의 실시예나 언급된 변형 예에 한정되는 것은 아니다. 본 발명의 실시예는 해당 분야에서 통상의 지식을 가진 자에게 발명의 기술적 사상을 명확히 전달하기 위하여 제공된다.

[0022]    도 1은 본 고안의 한 실시예에 따른 모바일기기 케이스의 슬라이드 커버가 개방된 상태를 보이는 사시도이다. 본 고안에 따른 모바일기기 케이스는 모바일기기가 수용되는 케이스 몸체(100)와 상기 케이스 몸체(100)에 슬라이드 방식으로 개폐 가능하게 결합된 슬라이드 커버(130), 그리고 상기 케이스 몸체(100)와 상기 슬라이드 커버(130) 사이에 신용카드 등의 카드가 적어도 한 장 이상 수납될 수 있도록 형성된 카드 수납부(110)를 갖는다.

[0023]    본 실시예에서 상기 카드 수납부(110)는 상기 케이스 몸체(100)의 일면에, 좀 더 구체적으로는 모바일기기가 수용되는 기기 수용부의 반대쪽 면에 수납하고자 하는 카드의 형상에 맞는 오목한 홈의 형태로 형성될 수 있다. 이와 달리, 상기 슬라이드 커버(130)가 충분한 두께를 갖는 경우에는, 상기 슬라이드 커버(130)의 내측에 오목한 홈의 형태로 형성될 수도 있다.

[0024]    본 실시예에 따른 모바일기기 케이스에서 상기 카드 수납부(110)의 양 옆과 하단부에는 상기 카드 수납부(110)의 바닥면보다 상기 슬라이드 커버(130)를 향해 돌출된 측벽들이 형성된다. 본 도면에 상세히 표현되지는 않았으나, 양 측벽(112)에는 상기 슬라이드 커버(130)의 슬라이드 동작을 가이드하는 슬라이드 레일이 형성될 수 있다. 상기 카드 수납부(110) 하단 측의 하단부 측벽에는, 수납된 카드를 꺼낼 때 사용자의 손가락(주로 손톱 부분)이 용이하게 카드의 측면에 닿을 수 있도록 빗면부(113)가 형성될 수 있다. 상기 카드 수용부(110)의 바닥면

EXHIBIT B
- 71 -

에 상기 빗면부(113)에 가까운 부분에는 바닥부(114)이 더 형성될 수 있다. 상기 바닥부(114)은 사용자의 손톱 등이 수납된 카드의 아랫면으로 진입할 수 있는 공간을 제공하여, 카드를 꺼낼 때 사용자가 카드를 들어올려 용이하게 꺼낼 수 있도록 돕는다.

[0025]  한편, 상기 슬라이드 커버(130) 및 상기 케이스 몸체(100)의 곳곳에는 수용된 모바일기기의 활용에 지장이 없도록 홀(hole) 또는 버튼부가 제공된다. 예컨대, 상기 슬라이드 커버(130)의 상부에는 모바일기기 카메라 및 플래쉬를 외부로 노출시켜주는 카메라 홀(136)이, 상기 케이스 몸체(100)의 측면에는 모바일기기의 버튼에 대응되어 유연하게 움직이는 버튼부(118) 및 전원 또는 외부 기기와의 연결을 위한인터페이스 홀(117) 등이 마련된다. 이러한 구멍 또는 버튼부의 위치나 형태 등은 수용하고자하는 모바일기기의 종류에 따라 달라진다.

[0026]  도 2는 상기 도 1의 실시예에서 슬라이드 커버가 분리된 상태를 보이는 분해사시도이다. 본 도면은 상기 케이스 몸체(100)의 상기 슬라이드 케이스(130) 내측 면의 구조를 보인다. 상기 케이스 몸체(100)에도 상기 카메라 홀(136)에 대응되는 카메라 홀(116)이 제공된다. 상기 케이스 몸체(100)는 서로 다른 재질의 두 부분으로 이루어질 수 있다. 즉, 본 도면의 배면측에 모바일기기를 수용하는 기기 수용부를 갖는 제1몸체부(101)와 상기 슬라이드 커버(130)와 마주보는 쪽의 제2몸체부(102)로 이루어질 수 있다. 이들은 각각 성형되어 부착되거나, 인서트 사출 등의 방법을 통해 일체로 형성될 수도 있다.

[0027]  전술한 오목한 홈 형태의 카드 수납부(110) 및 양 측벽(112) 등은 제2몸체부(102)에 마련될 수 있다. 본 실시예와 달리, 상기 카드 수납부(110)의 깊이를 더 깊게 하기 위해서는 상기 제2몸체부(102)에서 상기 카드 수납부(110)에 해당하는 부분을 뚫어서 노출된 제1몸체부(101)의 일면이 상기 카드 수납부(110)의 바닥면을 이루도록 할 수도 있다.

[0028]  재질 측면에서, 상기 제1몸체부(101)는 낙하 등에 의한 외부 충격으로부터 수용된 모바일기기를 보호할 수 있도록 완충 효과가 있는 소재로, 예컨대 폴리우레탄(polyurethane) 또는 실리콘러버(silicone rubber) 등의 합성수지로 형성될 수 있다. 상기 제2몸체부(102)는 상기 제1몸체부(101)보다 상대적으로 경도가 높은 소재로 이루어질 수 있으며, 상기 슬라이드 커버(130)와 동일한 소재로 이루어질 수 있다. 적합한 소재의 예로는 폴리카보네이트(polycaronate) 수지 또는 ABS(Acrylonitrile-Butadiene-Styrene) 수지 등의 합성수지를 들 수 있다. 본 고안에 따른 모바일기기 케이스의 사용시에 상기 슬라이드 커버(130)의 개폐동작에 의해 상기 제2몸체부(102)와 상기 슬라이드 커버(130)에는 많은 마찰과 큰 하중이 가해지므로 이에 견딜 수 있는 충분한 경도를 가진 소재의 채택이 필요하기 때문이다. 다만, 이러한 필요에 부합하는 소재라면 다른 소재의 채택도 가능하다.

[0029]  한편, 상기 제2몸체부(102)의 상기 슬라이드 커버(130)와 마주보는 면에서 카드 수납부(110) 외의 부분에는 상기 슬라이드 커버(130) 측으로 돌출된 가이드 돌기(115)가 마련될 수 있다. 도시되지는 않았으나, 상기 가이드 돌기(115)는 상기 슬라이드 커버(130)의 내측에 적어도 슬라이드 구간의 길이만큼 상기 가이드 돌기(115)에 대응되게 마련된 가이드 홈(미도시)과 함께 상기 슬라이드 커버(130)의 동작을 안내할 수 있다. 이러한 구조는, 상기 슬라이드 커버(130)에 슬라이드 방향에 수직인 성분의 횡 하중이 인가될 때 이를 분산시켜 상기 카드 수납부(110)의 양 측벽(112)이 파손되는 것을 방지할 수 있다.

[0030]  도 3은 상기 도 2의 Ⅲ-Ⅲ' 단면을 보이는 단면도이다. 전술한 바와 같이, 상기 케이스 몸체(100)가 기기 수용부(103)를 갖는 제1몸체부(101)와 제2몸체부(102)로 구성된 모습을 보인다. 상기 제2몸체부(102)는 카드 수납부를 구성하고 그 외측에 언더 컷(under cut)된 형태의 슬라이드 레일(1121)이 형성된 양 측벽(112)을 갖는다. 슬라이드 커버(130)에는 상기 슬라이드 레일(1121)과 맞물려 슬라이드 방향으로 이동하는 슬라이드 돌기(131)를 갖는다.

[0031]  도 4는 상기 도 1의 실시예에 따른 모바일기기 케이스를 기기 수용부 측에서 본 사시도이다. 제1몸체부(101)의 상기 기기 수용부(103) 내에 스마트폰과 같은 모바일기기가 수용되는데, 상기 제1몸체부(101)의 재질이 갖는 탄성력에 의해 모바일기기가 이탈되지 않도록 지지할 수 있다.

[0032]  도 5는 상기 도 1의 실시예를 슬라이드 커버의 우측에서 본 측면도이다. 슬라이드 커버(130)가 닫힌 상태에서 본 측면의 모습은 상기 슬라이드 커버(130)와 제2몸체부(102)의 측면 및 제1몸체부(101)의 측면이 세 개의 층을 이루는 모습을 보인다. 다만, 본 실시예와 달리, 상기 슬라이드 커버(130)의 측면부분이 상기 제2몸체부(102)의 측면을 덮는 형태를 보일 수도 있고, 상기 제1몸체부(101)와 상기 제2몸체부(102)가 동일한 소재의 한 몸으로 형성된 경우에는, 슬라이드 커버(130)와 한 몸의 케이스 몸체(100)의 두 개 층으로 보일 수도 있다.

부호의 설명

EXHIBIT B
- 72 -

[0033]     100: 케이스 몸체

101: 제1몸체부              102: 제2몸체부

110: 카드 수납부                    112: 측벽

1121: 슬라이드 레일          113: 빗면부

114: 바닥홈                       130: 슬라이드 커버

도면

도면1



EXHIBIT B
- 73 -

도면2



도면3



EXHIBIT B
- 74 -

등록실용신안 20-0472435

도면4



도면5



EXHIBIT B
- 75 -

Heedong Chae (SBN 263237)
Email: hdchae@ewpat.com
**East West Law Group PC**
3600 Wilshire Blvd., Suite 702
Telephone: (213) 387-3630
Facsimile: (213) 788-3365

*Attorneys for Plaintiff,*
*Spigen Korea Co., LTD.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIGEN KOREA CO., LTD., a Republic of Korea corporation,<br><br>Plaintiff,<br><br>v.<br><br>ISPEAK CO., LTD., a Republic of Korea corporation; VERUS U.S.A., LLC, a California limited liability company; DOES 1 though 10, inclusive,<br><br>Defendants.<br><br>VERUS U.S.A., LLC, a California limited liability company,<br><br>Counter-Plaintiff,<br><br>v.<br><br>SPIGEN KOREA CO., LTD., a Republic of Korea corporation,<br><br>Counter-Defendant. | Case No.: 8:15-cv-01050 DOC (DFMx)<br>Assigned to Hon. David O. Carter<br><br>**DECLARATION OF DAE-YOUNG KIM IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS**<br><br>**Hearing:**<br>Date:      December 7, 2015<br>Time:      9:30 a.m.<br>Dept:      9D<br>Location:  411 West Fourth Street, Santa Ana, CA 92701<br><br>*[The following documents filed concurrently: Plaintiff Spigen's Opposition to Motion for Sanctions]* |

I, Dae-Young Kim, declare as follows:

DECLARATION OF DAE-YOUNG KIM IN SUPPORT OF PLAINTIFF SPIGEN KOREA CO., LTD'S
OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS

1. I am the Chief Executive Officer of Plaintiff and Counter-Defendant Spigen Korea Co., LTD (hereinafter, "Plaintiff" or "Spigen") in this action and the inventor of the patent in suit, U.S. Patent No. 9,049,283 (the "'283 Patent"). I have personal knowledge of the facts set forth herein, and if called upon, I could and would testify competently to those facts.

2. On March 24, 2015, the patentee of Korean Utility Model No. 20-0472435 ("KUM '435") filed a lawsuit in Korea against Spigen alleging that Spigen's product practicing the '283 Patent infringed on KUM '435.

3. I have become aware of KUM '435. I reviewed and analyzed KUM '435 and compared it to Spigen's accused product. Then, I concluded that the complaint by the patentee of KUM '435 is frivolous and baseless because the case of KUM '435 is significantly different from Plaintiff's product and Plaintiff's product does not infringe on KUM '435. I also concluded that KUM '435 is not materially relevant to the patentability of the '283 Patent.

4. However, the patentee of KUM '435 did not dismiss the lawsuit in Korea and the lawsuit in Korea has further proceeded. In about late May of 2015, I forwarded KUM '435 to Plaintiff's counsel, Heedong Chae, for further review.

5. Shortly thereafter, Heedong Chae notified me that KUM '435 discloses an invention significantly different from Spigen's product or the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECLARATION OF DAE-YOUNG KIM IN SUPPORT OF PLAINTIFF SPIGEN KOREA CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS

/ / /

'283 Patent and that KUM '435 is not material to the patentability of the '283 Patent.

I declare under penalty of perjury according to the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this Monday, November 16, 2015 in Irvine, California

By: _____
       DAE-YOUNG KIM

DECLARATION OF DAE-YOUNG KIM IN SUPPORT OF PLAINTIFF SPIGEN KOREA CO., LTD'S OPPOSITION TO DEFENDANT VERUS USA, LLC'S MOTION FOR SANCTIONS