Jack Jmaev (SBN: 216,416)
jack@puritanlaw.com
PURITAN LAW GROUP
500 N. STATE COLLEGE BLVD.,
SUITE 1100
ORANGE, CA 92868
Phone: 909-437-8390

Attorneys for Defendants
ULTRAPROOF, INC. a Cal. Corporation;
ULTRAPROOF, INC. a Nev. Corporation; and
ENDLESS TECHNOLOGY, INC., a California
      corporation

Edward L. Bishop (admitted *pro hac vice*)
ebishop@bdl-iplaw.com
Nicholas S. Lee  (admitted *pro hac vice*)
nlee@bdl-iplaw.com
BISHOP, DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
Phone: (847) 969-9123
Facsimile: (847) 969-9124

## IN THE UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

SPIGEN KOREA CO., LTD, a Republic of
Korea corporation,

v.

ULTRAPROOF, INC., a California
corporation; ULTRAPROOF, INC., a
Nevada corporation; ENDLISS
TECHNOLOGY, INC., a California
corporation; DOES 1 through 10, inclusive,
                              Defendants.

Case Nos.
2:16-CV-09185 DOC (DFM); 2:17-CV-01161 DOC (DFM) (Consolidated)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY THE PANEL MEDIATOR'S FIRM FROM REPRESENTING PLAINTIFF**

**DATE:**       August 13, 2018
**TIME:**        8:30 A.M.
**LOCATION:**  Courtroom 9d
                      Ronald Reagan Courthouse
                      411 West Fourth Street
                      Santa Ana CA 92701

//

//

//

//

//

//

# **TABLE OF CONTENTS**

I.      BACKGROUND ...........................................................................1

II.     LEGAL STANDARD ...................................................................3

III.    ARGUMENT .................................................................................6

IV.     TERMINATING SANCTIONS ARE APPROPRIATE...............10

V.      CONCLUSION............................................................................11

# **TABLE OF AUTHORITIES**

**Federal Statutes**

28 U.S.C. § 455..............................................................................3, 4, 6

**Central District of California General Orders**

General Order 11-10 ..................................................... 1, 3, 8-9

**California Rules of Professional Conduct**

Rule 1.12 (effective November 1, 2018) ........................................5, 8, 10

Rule 1-710..............................................................................5, 10

**California Rules of Judicial Conduct**

Canon 6D ...............................................................................5, 10

**ABA Model Rules of Professional Conduct**

Rule 1.12 ...................................................................... 4-5, 7, 8, 9

Plaintiff has retained new counsel from the same firm as the panel mediator assigned to this case.  The assigned panel mediator has allowed his firm to accept the retention and presumably will receive some financial benefit for the relationship (whether through an origination fee, billed legal fees, or as a percentage of the work he has generated).  Because of the obvious conflict, Defendants respectfully move to disqualify Mr. Brian Arnold as counsel for Plaintiff.  To the extent he has not formally withdrawn, Defendants also respectfully move to disqualify Mr. Thomas S. Kiddé as appointed Panel Mediator and all other attorneys from the law firm Lewis Brisbois Bisgaard & Smith, LLP ("LBBS") from any further involvement in this case.  Additionally, terminating sanctions are appropriate because Plaintiff has intentionally created a conflict in order to disqualify the agreed mediator, who was originally suggested by Defendants.  Moreover, this is the second counsel Plaintiff has retained with full knowledge of a direct conflict in an effort to gain a tactical advantage in this case. In short, Defendants have now had to move to disqualify two law firms that never should have been retained.

## I.   BACKGROUND

Pursuant to this Court's ADR Procedures and General Order 11-10, the parties conferred to select an independent panel mediator to conduct a mediation among the parties.  Plaintiff's previous counsel proposed three potential mediators and Defendants' counsel proposed three potential mediators.  Eventually, the parties agreed to ask Thomas Kiddé, a partner at the law firm of LBBS, to serve as mediator.  Mr. Kiddé was one of the three potential mediators suggested by Defendants.  *See* Exhibit 1.  Mr. Kiddé then performed a conflict check, confirmed his firm had no conflicts and agreed to serve as mediator.  *See* Exhibit 2.  The parties' stipulation was accepted by the ADR Program Director and Mr. Kiddé was appointed as Panel Mediator on November 20, 2017.  *See*  Dkt. No. 63; Exhibit 3.

On June 4, 2018, Plaintiff's previous lead counsel, Heedong Chae, was disqualified and relieved as counsel. Dkt. No. 123. On June 25, 2018, the Court extended the previous Order to all members of Mr. Chae's law firm (Lucem PC). Dkt. No. 141. At the time, Plaintiff was still represented by Richard Kim of the Law Offices of Richard Kim.

Following the disqualification, Defendants' counsel contacted Lucem PC to ensure that the firm was abiding by the protective order and had destroyed all Protected Material the firm had received before being disqualified. *See* Exhibit 4, June 26, 2018 letter to Lucem PC. Meanwhile, two days after Lucem PC was disqualified, the parties received a letter from Mr. Kiddé stating that he could no longer serve as mediator in this case. Mr. Kiddé gave no reason for his attempted withdrawal beyond stating that the parties had not yet responded to an earlier letter seeking to schedule the mediation. *See* Exhibit 5, June 27 letter from Mr. Kiddé. Thinking that the delay in scheduling the mediation was the cause for Mr. Kiddé's withdrawal and believing that a mediation would still be helpful, Defendants' counsel reached out to Mr. Kim to try to salvage the mediation. *See* Exhibit 6, June 29, 2018 email to Mr Kim.

Meanwhile, on June 29, Lucem responded to Defendants' request that it confirm that all Protected Material in its possession had been destroyed. Rather than confirming destruction, however, Lucem stated that they needed additional time to transfer the files to Plaintiff's new counsel. *See* Exhibit 7, June 29 email from Ms. Kim. When Defendants' counsel asked that Ms. Kim confirm that she meant the documents were being transferred to Mr. Kim, who remained as Plaintiff's counsel, Defendants' received no response. Only then, three days after Defendant asked Lucem to confirm destruction of Protected Material and two days after Mr. Kiddé asserted he was no longer capable of mediating this case, did Defendants learn the full scope of Plaintiff's machinations – that it had surreptitiously retained counsel from the panel mediator's firm as proffered

substitution counsel.  *See* Exhibit 8, June 29, 2018 email from Mr. Kim identifying Brian Arnold from LBBS as replacement counsel.  Defendants' counsel responded to note the obvious ethical issues and conflicts stemming from the proposed retention.  *See* Exhibit 9, July 2, 2018 email to Mr. Kim and Mr. Arnold.

However, Plaintiff's counsel ignored Defendants' concerns and filed the request to replace Mr. Kim with Mr. Arnold.  Dkt. No. 142.  Plaintiff's Request for Substitution was granted and Mr. Arnold has taken over as lead counsel along with Jean Kim and Josephine Brosas, all from the same LBBS office in Los Angeles.  Dkt. Nos. 143, 144, and 145.

All three of Plaintiff's new counsel work in the same LBBS office as Mr. Kiddé in Los Angeles, CA.  *See* Exhibit 10 (LBBS Bios).  Plaintiff's selection of LBBS as its new counsel (and the specific selection of attorneys from the same office as the Panel Mediator) is highly inappropriate.  As an appointed mediator, Mr. Kiddé is now directly conflicted from representing either party in this case.  By operation of the applicable rules and standards, all other lawyers at Mr. Kiddé's firm are also conflicted from representing either party.  In other words, Plaintiff has intentionally created a conflict in order to disqualify Mr. Kiddé as Panel Mediator.  That conflict, however, goes both ways and should disqualify all attorneys at LBBS from representing Plaintiff in this case.

## II.   LEGAL STANDARD

As quasi-judicial neutrals, panel mediators are held to the same immunities, requirements and oaths applicable to federal judges.  *See* General Order 11-10; ¶3.6, 3.10, and 3.11.  A panel mediator may be disqualified for any violation of the standards set forth in 28 U.S.C. § 455, *any* applicable standards of professional responsibility or rules of professional conduct (*e.g.*, the California Rules of Professional Conduct, California Code of Judicial Ethics, and the ABA Model Rules), or any other grounds adopted by the Court concerning disqualification of

neutrals. *Id* at ¶3.11(a). A neutral who discovers grounds for disqualification must immediately notify the parties and the ADR Program Director in writing. *Id.* at ¶ 3.11(b). If the grounds for disqualification concern matters set forth in 28 U.S.C. §455(b), the disqualification cannot be waived by the parties. *Id.*

The first category of grounds for disqualification of a mediator is the same as disqualification for a judge. As applicable here, those grounds dictate that Mr. Kiddé must disqualify himself if:

- He previously served as a lawyer in the matter in controversy, or a lawyer with whom he practiced law serves as a lawyer in the matter, or either served as a witness;

- He is currently acting as a lawyer in the proceeding or he knows he has an interest that could be substantially affected by the outcome of the proceeding.

*See* 28 U.S.C. §455(b)(2) and (5).

The second category of grounds for disqualification applies *any* applicable standard of professional responsibility or rule of professional conduct. As relevant here, the ABA Model Rules and the forthcoming California Rules of Professional Conduct provide that:

(a) . . . a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as . . . an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

* * *

(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1) the disqualified lawyer is timely screened from any

participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule.

ABA Model Rule 1.12.

(a) . . . a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as . . . an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.

* * *

(c) If a lawyer is disqualified by paragraph (a), other lawyers in a firm with which the lawyer is associated may knowingly undertake or continue representation in the matter only if:

(1) the prohibition does not arise from the lawyer's service as a mediator or settlement judge;

(2) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(3) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule.

California Rules of Professional Conduct (effective November 1, 2018), Rule 1.12

Further, California Rule of Professional Conduct 1-710 incorporates Canon 6D of the Code of Judicial Ethics when any attorney serves as a temporary judge, referee, or court-appointed arbitrator. As the comments to Rule 1-710 clarify, the Rule is intended apply the Code of Judicial Ethics whenever an attorney is acting

in a judicial capacity pursuant to an order or appointment by a court.  Canon 6D of the Code of Judicial Ethics requires *inter alia*:

> (11) A lawyer who has been a temporary judge,* referee, or court-appointed arbitrator in a matter shall not accept any representation relating to the matter without the informed written consent of all parties.

California Code of Judicial Ethics 6D(11).

## III.   ARGUMENT

Here, Mr. Arnold must be disqualified as counsel, and Mr. Kiddé must be disqualified as panel mediator because Plaintiff's choice to retain counsel from Mr. Kiddé's firm creates a non-waivable conflict of interest.  *See* 28 U.S.C. §455(b).  As a result of Plaintiff's actions, LBBS has been given access to all of the confidential and highly confidential documents exchanged by the parties in this case (documents that would not ordinarily be accessible by a mediator).  In fact, Plaintiff's disqualified counsel has stated that the access had already been granted before Plaintiff even moved to substitute counsel:

> We are in the process of transferring files to Spigen's new counsel, but as the case file size is quite large, it is taking longer than expected.  We can give you confirmation that the Protected Material has been disposed of by Monday morning.

*See* Exhibit 7.

In the June 29 email, Plaintiff's former counsel did not identify the new counsel.  Defendant's counsel was, frankly, confused; it seemed strange that Lucem would need to transfer files to Mr. Kim's independent firm, who was Plaintiff's only counsel of record at that time.  *See* Exhibit 11 ("I am assuming that 'Spigen's new counsel' is Richard Kim. Correct?").  After all, it would be a direct violation of the Protective Order to be transferring the Protected Material to any other law firm prior to the firm appearing as counsel of record.  *See* Dkt. No.

82, ¶2.11 (defining "Outside Counsel of Record" to include only retained attorneys who have actually appeared in this action).   Rather than transferring files to anyone else, prior counsel should have immediately destroyed all Protected Material and let Mr. Kim handle any transfer to any new or replacement counsel after they made their appearance.

As it turns out, Plaintiff's former counsel actually was transferring documents to the new law firm despite the firm not having appeared in this case and despite Plaintiff still having actual counsel of record via Mr. Kim.  This is not the first time that Defendants have had to raise concerns about Plaintiff's disregard of the proper handling of Protected Material, nor the first time Plaintiff has violated the Protective Order.  *See* Dkt. No. 93 (requesting sanctions) and Dkt. No. 98 (noting that Defendant's request was held in abeyance).

As Defendants only discovered later, the new firm is the appointed panel mediator's firm, LBBS.  Apparently, not only did Plaintiff's prior counsel attempt to hide the inappropriate retention of LBBS, but Mr. Kiddé himself attempted to hide the conflict by asserting that he needed to withdraw as mediator because "[his] own case load now prevents [him] from undertaking the assignment."  *See* Exhibit 12, July 2, 2018 email from Mr. Kiddé.  To the extent Mr. Kiddé's efforts to withdraw as panel mediator on account of his "own case load" are ineffective, he must be disqualified because of his direct conflict created by Plaintiff's retention of LBBS.  Mr. Kiddé cannot act as appointed panel mediator while his firm represents Plaintiff.  Accordingly, removal of Mr. Kiddé as appointed panel mediator is necessary.

However, removal of Mr. Kiddé is not sufficient to remove the conflict.  As noted by ABA Model Rule 1.12(c), if a lawyer is disqualified from representation because of his or her prior role as a mediator, the disqualification is imputed to the entire firm unless 1) the former mediator is timely screened from any participation in the matter and is appointed no part of the fee therefrom;

and 2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of the rule. *See* ABA Model Rule 1.12(c). Mr. Kiddé and the LBBS firm have failed to provide the notice or establish that Mr. Kiddé has been properly screened from participation in this case. To the contrary, Mr. Kiddé's own self-serving affidavit and his misleading explanation for withdrawing as panel mediator imply that he has no intention of complying with this provision.

In support of its Motion to Substitute, Plaintiff submitted a declaration from Mr. Kiddé. That declaration is dated July 2, 2018 and states in part: "[o]n and before June 27, 2018, I had not received any confidential or non-public documents or information regarding these cases, and I had not had any substantive discussion with anyone regarding these cases." Dkt. 142-1, ¶ 5. Mr. Kiddé fails to state the he has not received confidential or non-public documents since June 27 or that he will refrain from participating in this case if LBBS is permitted to continue its representation. The only reasonable inference is that Mr. Kiddé *will* participate in this case and *will* have access to confidential documents. In fact, given the date of his declaration and the language of the statement it is reasonable to infer that Mr. Kiddé has been receiving and accessing confidential documents since June 28.

Moreover, Mr. Kiddé's self-serving declaration misstates the obligations of the parties and his role as mediator. In particular, he asserts that he never received communications from the parties following his initial December 6, 2017 letter inviting the parties to provide mutually agreeable dates for the mediation. However, as the parties had previously informed Mr. Kiddé, the parties had not yet discussed dates because of the protracted schedule of the case. *See* Exhibit 2. The clear implication was that the parties would reach out when they were ready to schedule the mediation. In any event, it is the mediator's responsibility to schedule a mediation as quickly as possible, not the parties' obligation. *See*

General Order 11-10, ¶8.1, 8.2.

Nor can Mr. Kiddé assert that he has not been personally and substantially involved in this case as the appointed panel mediator. As the comments to both the ABA Model Rules and the California Rules note, the requirement that the disqualified neutral have been personally and substantially involved in the dispute is directed toward multimember courts to prevent a judge who had only ancillary (if any) involvement in a case from being disqualified after rejoining a practice. *See* Comment 1 to ABA Model Rule 1.12 and Comment 1 to California Rule 1.12. While no mediation has been conducted in this case, there is no disputing that Mr. Kiddé was personally assigned as the appointed panel mediator for this case; a substantial, not ancillary, role. The fact that Mr. Kiddé ineffectively performed his duties as panel mediator and has not scheduled a mediation between the parties or prepared himself for the mediation does not grant him leave to now completely disavow that role for his and his firm's monetary benefit.

Additionally, neither Plaintiff's Motion for Substitution nor Mr. Kiddé's declaration establish that Mr. Kiddé will not receive any part of the fees paid to LBBS if the firm is permitted to continue to represent Plaintiff. To the contrary, given the fact that all of his assurances regarding a lack of access to confidential information are provided in the past tense and the common practice of paying attorneys origination fees for bringing in new clients, it is reasonable to infer that Mr. Kiddé will receive, or perhaps already has received, part of the fees paid by Plaintiff to LBBS.

Likewise, the California Rules of Professional Conduct also necessitate disqualifying LBBS from any involvement as counsel or mediator in this case. As an initial matter, the California Rules have recently been amended and are set to be effective on November 1, 2018. One of the amendments to those Rules is the new Rule 1.12 cited above. That Rule is even more restrictive than the ABA

Model Rule 1.12.   Both versions of the rule apply to "undertak[ing] or continu[ing] representation," so even if the Rule is not effective until November 1, 2018, its application will subsume prior events.   Further, under the California version of Rule 1.12, other lawyers at LBBS are specifically prohibited from continuing the representation because the prohibition against Mr. Kiddé stems from his role as a mediator (as opposed to the other roles set forth in Rule 1.12(a)).   *See* Cal. R. Prof. Resp. 1.12(c)(1).   Accordingly, even with proper screening and notice, the entire LBBS firm must be prohibited from representing any party in this case.

Finally, even without consideration of the forthcoming amended California Rules, current Rule 1-710 incorporates Canon 6D of the California Code of Judicial Ethics whenever an attorney acts as a court appointed neutral.   That Canon includes an express prohibition from accepting any representation relating to the matter without the informed written consent of *all* parties.   *See* Canon 6D(11).   The requirement for disqualification in this matter does not depend upon whether LBBS ever received any confidential information from the parties.   *Compare* Canon 6D(11) *to* Canon 6D(12).   Defendants have not consented to LBBS representing Plaintiff and therefor they must be disqualified.

## IV.   TERMINATING SANCTIONS ARE APPROPRIATE

Plaintiff has now twice retained counsel that it knows, or should have known, has a direct conflict preventing representation in this case.   Plaintiff's first efforts came after knowing that Mr. Chae could not simultaneously act as an advocate and a witness in the same case.   Plaintiff had already been informed of that clear conflict when this Court declared a mistrial in another case as a result of the same conflict.   Now, Plaintiff has retained the very same firm that had already been retained as a third-party neutral in this case.   Plaintiff knows or should know that this is highly improper and that LBBS has a direct conflict preventing it from representing either party in this case.   As a result of Plaintiff's blatant disregard

for evaluating conflicts, Defendants have incurred unnecessary legal expenses, including this second motion to disqualify, and this case has been and continues to be considerably delayed.  Plaintiff's failure to obtain proper representation is tantamount to a failure to prosecute and warrants terminating sanctions.

Additionally, or in the alternative, Defendants request that Plaintiff and/or LBBS be sanctioned in an amount to reimburse Defendant for the fees and costs incurred in negotiating the selection of Mr. Kiddé as mediator as well as the fees and costs incurred for having to bring this motion and other expenses associated the motion.   Those negotiations are now worthless because Plaintiff has completely disregarded the professional and ethical obligations by directly causing Mr. Kiddé to be conflicted out of his role as panel mediator.

# V.   CONCLUSION

Plaintiff's original lead counsel was disqualified because of the direct conflict created by his attempted dual role as witness and advocate.  Plaintiff's substitution of that first conflict with a new conflict – the attempted dual role as neutral mediator and advocate – is even stronger grounds for disqualification.  As a result, Defendants respectfully request that the Court disqualify Mr. Arnold, Mr. Kiddé, and all other attorneys from the law firm of Lewis Brisbois Bisgaard & Smith, LLP from representing Plaintiff, serving as panel mediator, or otherwise participating in this case.  Because Plaintiff's actions have caused considerable harm and expense to Defendants and have implicated severe impropriety adverse to the just and unbiased resolution of disputes, Defendants also respectfully request that the Court order sanctions against Plaintiff terminating its claims or in such other form that the Court deems just.

Dated: July 10, 2018

PURITAN LAW GROUP

/s/ Jack Ivan Jmaev

_____

JACK IVAN JMAEV, SBN 216,416
*Attorney for Defendants*
*Ultraproof, a California*
*Corporation;*
*Ultraproof, a Nevada Corporation;*
*and*
*Endliss Technology, Inc., a*
*California Corporation*