Jack Jmaev (SBN: 216,416)
jack@puritanlaw.com
PURITAN LAW GROUP
500 N. STATE COLLEGE BLVD., SUITE 1100
ORANGE, CA 92868 / Phone: 909-437-8390

Attorneys for Defendants
ULTRAPROOF, INC. a Cal. Corporation;
ULTRAPROOF, INC. a Nev. Corporation; and
ENDLESS TECHNOLOGY, INC., a
    California corporation

Edward L. Bishop (admitted *pro hac vice*)
ebishop@bdl-iplaw.com
Nicholas S. Lee  (admitted *pro hac vice*)
nlee@bdl-iplaw.com
Benjamin A. Campbell (admitted *pro hac vice*)
bcampbell@bdl-iplaw.com
BISHOP, DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
Phone: (847) 969-9123
Facsimile: (847) 969-9124

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>v.<br><br>ULTRAPROOF, INC., a California corporation; ULTRAPROOF, INC., a Nevada corporation; ENDLISS TECHNOLOGY, INC., a California corporation; DOES 1 through 10, inclusive,<br><br>            Defendants. | Case Nos.<br>2:16-CV-09185 DOC (DFM); 2:17-CV-01161 DOC (DFM)<br>(Consolidated)<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br>Date:      NOVEMBER 26, 2018<br>Time:     8:30 AM<br>Location:  COURTROOM 9D<br>           Ronald Reagan Ct. Hse.<br>           411 West Fourth Street<br>           Santa Ana, CA 92701 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................v-vii

    Cases .................................................................................... v-vi

    Federal Statutes and Regulations.............................................. vii

    Federal Rules .......................................................................... vii

I.    PROCEDURAL HISTORY .................................................. 1

II.    PENDING CLAIMS AND COUNTERCLAIMS..................... 1

III.    LEGAL STANDARDS ...................................................... 2-4

    A.    Summary Judgment..................................................... 2

    B.    Utility Patent Infringement.......................................... 3

    C.    Design Patent Infringement.......................................... 3

    D.    Obviousness........................................................... 3-4

IV.    ALL OF THE ASSERTED CLAIMS OF U.S. PATENT NO. 9,049,283 ARE INVALID ................................................................ 4-7

    A.    Construction of Terms in the '283 Patent ................... 4-5

    B.    Claims 1-6, 8, 10, 13-20, and 22 Have Already Been Held Invalid........................................................... 5

    C.    Claims 12 and 11 are Invalid for the Same Reasons Set Forth in the *iSpeaker* Case ..................................... 5-7

        i.    Claim 12 is Invalid as Obvious Over the Incipio Stowaway as Modified with Regard to Claim 1 ..................................... 5-6

        ii.    Claim 11 is Also Invalid as Obvious Over the Incipio Stowaway as Modified With Regard to Claim 1 .............. 6-7

V.    THE ACCUSED WALLETIUM CASES DO NOT INFRINGE ANY OF THE ASSERTED CLAIMS OF THE '283 PATENT .............................. 7

VI.    EACH OF THE ASSERTED DESIGN PATENS IS INVALID.............. 7

    A.    The '607, '620, and '648 Patents are Invalid in View of Spigen's Admitted Public Disclosure More Than

One Year Before Filing ............................................................. 8-10

B.   The '099 Patent is Invalid as Functional in View of Spigen's Concomitant Utility Patent ...................................................... 10-12

C.   Each of the Asserted Design Patents is Also Invalid as Obvious ........................................................ 12-19

    i.   Construction and Scope of Protection Under the Asserted Design Patents in View of the Prior Art ....................... 12-17

    ii.   At Least One Hypothetical Design Renders the Asserted Design Patents Invalid as Obvious ............................... 17-19

VII.   SPIGEN CANNOT SHOW INFRINGEMENT OF THE ASSERTED DESIGN PATENTS BY THE ACCUSED PRODUCTS ...................... 19-

A.   The Protanium Cases Provide a Visual Impression That is Substantially Different From the Claimed Designs, Each of Which Include the Same External Dimensions of a "Protective Frame"....................................... 19-21

B.   The Duranium Cases for the iPhone 7 and 7 Plus Are Also Substantially Different From the Claimed Designs, Each of Which Include the Same External Dimensions of a "Protective Frame"....................................... 21-22

C.   None of the Accused Products Infringe the Asserted Design Patents From the Viewpoint of An Ordinary Observer Familiar With the Prior Art ......................................................................... 22

VIII.   EVEN IF ONE OR MORE PATENTS ARE HELD VALID AND INFRINGED, PLAINTIFF IS PRECLUDED FROM PURSUING DAMAGES .......................................................................... 22-23

A.   Plaintiff Cannot Pursue a Damages Remedy Because Its Only Proffered Expert Has Formed No Opinions ............................ 23-25

IX.   SPIGEN CANNOT PROVE OWNERSHIP OF

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - iii**

PROTECTABLE TRADE DRESS ........................................................ 25

X.      CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby,
    477 U.S. 242 (1986).................................................................. 2, 3

Apple, Inc. v. Samsung Elecs., Co., No. 11-cv-01846-LHK,
    2017 U.S. Dist. LEXIS 177199 (N.D. Cal. Oct. 22, 2017)...... 23-24

Berry Sterling Corp. v. Prescor Plastics, Inc.,
    122 F.3d 1452 (Fed. Cir. 1997) ............................................... 11

Carmen v. S.F. Unified Sch. Dist.,
    237 F.3d 1026 (9th Cir. 2001) ................................................. 3

Celotex *Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................. 2

Egyptian Goddess, Inc. v. Swisa, Inc.,
    543 F.3d 665 (Fed. Cir. 2008) ................................................. 3

Encompass Ins. Co. v. Berger, No. CV-128294-MWF
    2013 WL 12124281 (C.D. Cal. Dec. 10, 2013)................................ 24-25

ERBE Elektromedizin GmbH v. Canady Tech. LLC,
    629 F.3d 1278 (Fed. Cir. 2010) ............................................... 25

Gorham Co. v. White,
    81 U.S. 511 (1871).................................................................. 3

Graham v. John Deere Co,
    383 U.S. 1 (1966)................................................................... 4

Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,
    488 F.3d 982 (Fed. Cir. 2007) ................................................. 3

Info-Hold, Inc. v. Muzak, LLC,
    783 F.3d 1365 (Fed. Cir. 2015) ............................................... 23

Intercont'l Great Brands LLC v. Kellogg N. Am. Co.,
    869 F.3d 1336, 1344 (Fed. Cir. 2017) ..................................... 4

KSR Int'l Co. v. Teleflex, Inc.,
      550 U.S. 398 (2007).......................................................................... 3, 4, 7

Liberty Ammunition, Inc. v. United States,
      835 F.3d 1388 (Fed. Cir. 2016) ................................................... 3

Limelight Networks, Inc. v. XO Commc'ns, LLC, No. 3:15-CV-720
      2018 U.S. Dist. LEXIS 49816 (E.D. Va. Mar. 23, 2018)...................... 24

Markman v. Westview Inst., Inc.,
      517 U.S. 370 (1996)....................................................................... 4

Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc., No. CV 16-0084,
      2017 U.S. Dist. LEXIS 168133 (C.D. Cal. May 9, 2017)...................... 24

MRC Innov. Inc. v. Hunter Mfg.
      747 F.3d 1326 (Fed. Cir. 2014) ............................................... 17

Musick v. Burke,
      913 F.2d 1390 (9th Cir. 1990) ......................................................... 2, 20

OddzOn Prods. v. Just Toys,
      122 F.3d 1396 (Fed. Cir. 1997) ............................................... 19

Read Corp. v. Portec, Inc.,
      970 F.2d 816 (Fed. Cir. 1992) ..................................................... 19

S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,
      690 F.2d 1235 (9th Cir. 1982) ..................................................... 2

Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd.,
      Case No. 16-cv-8559-DOC-DFM .................................................... 4, 5, 6

Titan Tire Corp. v. Case New Holland, Inc.,
      566 F.3d 1372 (Fed. Cir. 2009) ............................................... 17

TrafFix Devices, Inc. v. Mktg. Displays, Inc.,
      532 U.S. 23 (2001)........................................................................... 11

Venetian Stone Works, LLC v, Marmo Meccanica, S.p.A., No. C09-1497
      2011 U.S. Dist. LEXIS 7348 (W.D. Wash. Jan. 26, 2011) ................... 24

**Federal Statutes and Regulations**

35 U.S.C. § 102 ................................................................. 8, 9, 10, 16

35 U.S.C. § 103 ................................................................. 3

35 U.S.C. § 289 ................................................................. 23, 24

**Federal Rules**

Fed. R. Civ. P. 56 ............................................................. 2, 3

Defendants Ultraproof, Inc. and Endliss Technology, Inc. move for summary judgment regarding invalidity of U.S. Patent No. 9,049,283 (the '283 Patent); non-infringement of the '283 Patent; invalidity of U.S. Design Patents D771,607 (the '607 Patent), D753,099 (the '099 Patent); D775,620 (the '620 Patent), and D776,648 (the '648 Patent); non-infringement of the '607, '620, '648 are '099 Patents (collectively, the Asserted Design Patents); and an inability for Plaintiff to demonstrate damages or ownership of protectable trade dress.

## I.    PROCEDURAL HISTORY

This is a consolidated case of two suits brought by Spigen Korea Co., Ltd. (Spigen) against Defendants.  In the first action (Case No. 16-cv-9185), Spigen alleges that Defendants infringe the '283 Patent.  In the second action (Case No. 17-cv-1161), Spigen alleges that Defendants infringe the Asserted Design Patents. Through consolidation and amendments, the operative claims are presented in Spigen's Fourth Amended Complaint (Dkt. No. 100 (Utility Complaint)) and Third Amended Complaint (Dkt No. 101 (Design Complaint)).

Spigen has also pursued at least one other case in which it asserts the '283 Patent.  In that case, this Court construed various terms from the '283 Patent and ultimately held that Claims 1-6, 8, 10, 13-20, and 22 of the '283 Patent are invalid as obvious.  *See* Dkt. No. 157 in Case No. Case No. 16-cv-8559.

## II.    PENDING CLAIMS AND COUNTERCLAIMS

Regarding the '283 Patent, Spigen brings a claim for infringement (*see* Utility Complaint) and Defendants bring counterclaims for invalidity as anticipated, obvious, and/or indefinite and for invalidity under the doctrine of inequitable conduct.  *See* Answer (Dkt. No. 137).  Regarding the Asserted Design Patents, Spigen brings a single claim for design patent infringement (*see* Design Complaint) and Defendants bring counterclaims for invalidity of each of the Asserted Design Patents over the prior art; and for invalidity of the each of the Asserted Design Patents under the doctrine of inequitable conduct.  *See* Answer

(Dkt. No. 138 at counterclaims I-IV and VI-IX).   Defendants also seek a declaratory judgment of noninfringment of trade dress.  *Id.* at Counterclaim V.

In the Utility Complaint, Spigen accuses Defendant's Walletium cell phone cases for the iPhone 7 Plus of infringement.  *See* Concurrently filed Statement of Facts (SOF) at ¶1.  The Design Complaint accuses Defendants' Protak cell phone cases for the iPhone 6/6S; Protanium cases for the iPhone 6/6S, 7, and 7 Plus; and Duranium cases for the iPhone 6/6S, 7, and 7 Plus of infringement.  *Id.* at ¶2.

## III.   LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242,  248–49 (1986). A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id*. at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc*., 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id*. The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of

the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**B. Utility Patent Infringement**

To establish infringement, Plaintiff must prove that each limitation is present either literally or under the doctrine of equivalents. *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1398-99 (Fed. Cir. 2016). Literal infringement and infringement by equivalents are generally presented by expert testimony. *See, e.g., Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 994 (Fed. Cir. 2007).

**C. Design Patent Infringement**

The test for design patent infringement is whether the patented design and the accused product would appear to the ordinary observer to be substantially similar. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer . . ." *Id* at 678 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). Additionally, the Court only considers the ornamental aspects of the design patent because design patents cannot cover purely functional aspects of a product. *See Id.* at 681.

**D. Obviousness**

The leading case on obviousness under 35 U.S.C. § 103 is *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), which requires an objective obviousness test:

[T]he scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 3**

ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. [S]econdary considerations . . . might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*Id*. at 406 (quoting *Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1966)).  These subsidiary issues are factual, however, "'[t]he ultimate judgment of obviousness is a legal determination' for the court." *Intercont'l Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1344 (Fed. Cir. 2017) (citing *KSR*, 550 U.S. at 427).

## IV.   ALL OF THE ASSERTED CLAIMS OF U.S. PATENT NO. 9,049,283 ARE INVALID

Plaintiff asserts that Defendants' Walletium cases infringe claims 1-5, 6, 8, 10-22, and 22 of the '283 Patent.  *See.* Dkt. No. 100 ¶15-16.  Spigen maintains that each of these claims is valid and infringed.  SOF at ¶3.  However, for at least the reasons outlined below, each of these asserted claims are invalid.

### A. Construction of Terms in the '283 Patent

Before determining validity or infringement, the Court must construe disputed terms in the '283 Patent because courts, not juries, must declare the meaning of a patent claim.  *See generally Markman v. Westview Inst. Inc.*, 517 U.S. 370 (1996).  The '283 Patent has already been construed once by this Court.  As relevant to the issues discussed in this motion, this Court has construed "**configured to removably mount**" to mean "separable without causing damage such that the reasonable use or appearance is detrimentally affected."  *See Spigen v. iSpeaker*, Case No. 16-cv-8559-DOC-DFM (the *iSpeaker* Case), July 16, 2018 Order, Dkt. No. 157, at p. 15-18.

Spigen has never proposed any particular construction of any claim terms in this case.  Further, in response to a contention interrogatory, Spigen specifically adopted the position that no terms in the '283 Patent require construction beyond

their "plain and ordinary meaning."   SOF at ¶4.   For the reasons set forth by the Court in the *iSpeaker* Case, Defendants assert that the above-outlined construction is proper and should be applied in this case.

### B. Claims 1-6, 8, 10, 13-20, and 22 Have Already Been Held Invalid

In the *iSpeaker* Case, the Court granted defendants motion for summary judgment regarding invalidity of claims 1, 2-6, 8, 10, 13, 15-20, and 22. *See* July 16, 2018 Order in the *iSpeaker* Case, Dkt. No. 157, at p. 68.   Additionally, following supplemental briefing from the parties, the Court further granted the *iSpeaker* defendants' motion for summary judgment regarding invalidity of claim 14.   *See* October 22, 2018 Supplemental Order in the *iSpeaker* Case, Dkt. No. 167, at p. 6.   Spigen has provided no grounds for why the Summary Judgment Order and the Supplemental Summary Judgment Order should not control the ruling regarding invalidity of the same claims in this case.

### C. Claims 12  and 11 are Invalid for the Same Reasons Set Forth in the *iSpeaker* Case

In addition to the claims that were at issue in the *iSpeaker* Case, Spigen has also asserted claims 11and 12 against Defendants in this case.   Those claims, however, are no more valid than the claims presented in *iSpeaker* and each are invalid over the same combinations of prior art addressed in that case. Addressing Claim 12 first, the additional limitations are expressly taught by the prior art already applied to Claim 1.

#### i.   Claim 12 is Invalid as Obvious Over the Incipio Stowaway as Modified with Regard to Claim 1

Claim 12 is a dependent claim that is dependent on Claim 1.   Claim 12 recites the (obvious) case of Claim 1 with one additional limitation:

wherein the hard protective frame further comprises a cavity and the cover further comprises a mating protrusion positioned to mate with the cavity of the hard protective frame.

'283 Patent at 7:53-56.

Claim 1 is obvious over the Incipio Stowaway case ("Stowaway"), as shown for example in the prior art video[1] made by Incipio, in view of U.S. Patent No. 9,241,551 to Lawson et al. ("Lawson").  *See iSpeaker* Case, Dkt. No. 157, at p. 68.  In addition to being the primary reference in the obviousness analysis of Claim 1, the Stowaway teaches the claimed protrusion and cavity of Claim 12. As shown in the following annotated screen capture taken from the 1:25 mark of the video of the Stowaway case, the frame includes a cavity that mates with a protrusion of the cover:



### ii. Claim 11 is Also Invalid as Obvious Over the Incipio Stowaway as Modified with Regard to Claim 1

Claim 11 is another dependent claim that is dependent on Claim 1.  Claim 11 recites the (obvious) case of Claim 1 with one additional limitation:

> wherein the hard protective frame further comprises a locking protrusion and the cover further comprises a locking recess positioned to mate with the corresponding locking protrusion.

'283 Patent at 7:49-52

Claim 11 essentially claims the inverse of Claim 12.  Instead of having a cavity (as in Claim 11), the hard protective frame of Claim 12 includes a protrusion.  Likewise, instead of the mating protrusion of Claim 11, the cover of Claim 12 includes a mating recess.

---

[1] Available for viewing at https://www.youtube.com/watch?v=Qiir_Xu-tZE.  A copy of the video was lodged with the Court in the *iSpeaker* Case.

Swapping a mating set of a protrusion and cavity for a mating recess and protrusion is well within the realm of being "obvious to try" under the obviousness standard set forth in *KSR*. Whether the protrusion is provided on the frame or the cover does not change the operation and a person of ordinary skill in the art would be more than capable of swapping the components.

## V.    THE ACCUSED WALLETIUM CASES DO NOT INFRINGE ANY OF THE ASSERTED CLAIMS OF THE '283 PATENT

Evan assuming, *arguendo*, that one or more claims of the '283 Patent is held valid, there can be no infringement because the accused products do not exhibit several elements of the independent claims.    In particular, the two independent claims of the '283 Patent require, among other things, "a hard protective frame, *configured to removably mount* over the soft protective case . . . " (emphasis added).    SOF at ¶5, 6.    As noted above, the Court has already construed "configured to removably mount" to mean "separable without causing damage such that the reasonable use or appearance is detrimentally affected."    The purported hard protective frame of the accused Walletium cases is not *removably mount[ed]* on the purported soft protective case.    Rather, the two parts are permanently glued together.    SOF at ¶7.

In other words, the only way to remove the "hard protective frame" from the "soft protective case" is to forcibly break the glue interface potentially tearing the surface of the "soft protective case" or breaking or warping the edge of the "hard protective frame."    Accordingly, because the separate components of the accused Walletium cases are permanently glued together, there can be no infringement of independent claims 1 and 16 of the '283 Patent.    Likewise, because the dependent claims include each of the elements of their parent claims, there can be no infringement of any of the dependent claims of the '283 Patent, including the asserted claims 2-6, 8, 10, 13-15, 17-20, and 22.

## VI.    EACH OF THE ASSERTED DESIGN PATENTS IS INVALID

## A. The '607, '620, and '648 Patents are Invalid in View of Spigen's Admitted Public Disclosure More Than One Year Before Filing

Spigen acknowledges that the designs claimed in the '607, '620, and '648 Patents are embodied by its Tough Armor line of products.  SOF at ¶8-10. Likewise, Spigen identified its Tough Armor products as embodiments to avoid prior art rejections.  SOF at ¶12-15.  In particular, during prosecution of the application that resulted in the '607 Patent, the application was rejected under 35 U.S.C. § 102 based on a "Fone-Stuff Apple iPhone Tough Case" that was available on the internet at least as early as March 24, 2014.  SOF at ¶12.  In order to exclude the "Fone-Stuff" case as prior art, Spigen submitted a declaration from Dae-Young Kim (the sole named inventor of each of the Asserted Patents and Spigen's CEO) stating that Spigen had sold its "practicing product" before the date of the "Fone-Stuff" reference and identified the Tough Armor for iPhone 5/5S as that practicing product[2].  SOF at ¶14.  This same statement was specifically relied upon by the Examiner during prosecution of the patent applications that resulted in the '620 and '648 Patents.  SOF at ¶16.

The iPhone 5, iPhone 5S and iPhone SE all have the same dimensions. SOF at ¶17.  Consequently, as different models of the iPhone were released, Spigen has variously referred to the same product as a Tough Armor for iPhone 5; Tough Armor for iPhone 5S; Tough Armor for iPhone 5/5S; Tough Armor for iPhone 5/5S/SE; etc.  SOF at ¶18.  For example, the "Metal Slate" colored Tough Armor Case identified in Mr. Kim's declaration is designed by SKU SGP10490 and has been referred to as usable with the iPhone 5; iPhone 5/5S; iPhone SE/5s/5; etc. SOF at ¶19.  Likewise, because the dimensions of the iPhone 5S had been leaked before the product was release, Spigen began calling its Tough Armor case

---

[2] Pursuant to 35 U.S.C. § 102(b)(1)(B), references dated less than one year before the effective filing date that might otherwise prevent a patent are excluded as prior art if the inventor or joint inventor disclosed the same subject matter earlier than the applied reference.

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 8**

the Tough Armor for iPhone 5/5S before the phone was actually released.  SOF at ¶20.

Late in the evening on October 22, 2018, just a week before the deadline to file this Motion, Spigen supplemented its document production and identified for the first time that it had registered copyrights related to the embodying products. SOF at ¶21. One of the disclosed registrations is Registration No. VA0001915830 (the '5830 Copyright), which was filed on January 13, 2014.  SOF at ¶22.  At the time of filing, the '5830 Copyright was given the title "Spigen iPhone 5S Tough Armor Case." and identified as a photograph of that product.  SOF at ¶23.  The product was identified as being for an iPhone 5S, presumably, because that was the most recent version of the iPhone available at filing.  However, as noted above, the product is the same as the Tough Armor for the iPhone 5 and, as currently known, the Tough Armor for iPhone SE/5S/5.  While not disclosed by Spigen, another copyright registration was discovered following Spigen's late disclosure.  SOF at ¶25.  That registration is Registration No. VA0001915831 (the '5831 Copyright); it was also filed on January 12, 2014 and is a photograph of the "Spigen iPhone 5S Tough Armor Package."  SOF at ¶26.  The packaging for Spigen's Tough Armor products has always included a picture of the product. SOF at ¶25.

Spigen's own copyright registrations admit that photographs of the embodying product and its packaging were first published on June 24, 2013, three days before the critical date of June 27, 2013.  SOF at ¶24, 27.  Because they are design patents, the publication of a photograph of the product completely describes the subject matter of the '607, '620, and '648 Patents.

35 U.S.C. § 102(a) states that a person is not entitled to a patent if "the claimed invention was . . . described in a printed publication . . .  or otherwise available to the public before the effective filing date of the claimed invention." Section 102(b) excludes certain types of disclosures made within one year of the

effective filing date, but because Spigen's own copyright registrations admit that the photographs were first published more than a year before the filing date, they are not excluded under Section 102(b).  Consequently, the '607, '620, and '648 Patents are each invalid under 35 U.S.C. § 102(a) based on Spigen's own admission that the subject matter claimed had been disclosed to the public more than a year before each patents' effective filing date.

### B. The '099 Patent is Invalid as Functional in View of Spigen's Concomitant Utility Patent

The '099 Patent claims additional elements not shown in the other asserted patents.  As such, the '099 Patent is embodied in the Tough Armor FX products, which is a Tough Armor case with the addition of a protective film over the front of the case to protect a screen of an underlying phone.  SOF at ¶26.  Additionally, the '099 Patent shows exploded views of the claimed case as well as views wherein various components have been removed.  SOF at ¶27.  With the exception of the protective screen, each of the elements of the claimed case are embodied in the prior Tough Armor cases discussed above which Spigen admits have been on sale at least as early as July of 2013 (SOF at ¶29) and were publically disclosed (as evidenced by the copyright registrations discussed *supra*) at least as early as June 24, 2013.  The '099 Patent has a filing date of December 15, 2014.  SOF at ¶28.  Accordingly, the Tough Armor cases and the copyright registrations are each prior art over the '099 Patent.

Adding a screen protector to the previously existing Tough Armor cases is not novel.  In fact, Spigen and its distributors have for a long time bundled screen protectors with its cases that do not include built in screen protectors.  For example, at least as early as September of 2013, the Tough Armor cases were being sold in a bundle with an included screen protector.  SOF at ¶30.  Additionally, adding a transparent screen protector over the front of a phone is also not ornamental.  There is no visual difference between a case that includes a

transparent screen protector and one that does not. Any additional structural differences between the (invalid) design shown in the '607, '620, and '648 Patents and the design claimed in the '099 Patent are functional, not ornamental.

The functionality of the additional structures of the '099 Patent not present in the earlier patents is confirmed by Spigen's own utility patent. U.S. Patent No. 9,628,133 (the '133 Utility Patent), is assigned to Spigen and discloses the same case claimed in the '099 Patent. SOF at ¶31, 32. Spigen did not disclose or produce the '133 Utility Patent during this case. SOF at ¶33. The existence of this utility patent claiming features of the '099 patent is strong evidence that those features are functional. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30 (2001) (discussing functionality in the context of trade dress and noting that "[a] utility patent is strong evidence that the features therein claimed are functional."); *see also Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997) (listing concomitant utility patents among the appropriate considerations for evaluating functionality of a design patent).

Moreover, the '133 Utility Patent does not merely have a similar disclosure; it actually claims aspects of the '099 Patent (and even aspects of the '607, 620, and '648 Patents) indicating that those features are functional rather than ornamental. For example, Claim 1 of the '133 Utility Patent claims:

A case having a protective film for an electronic device, comprising:

a protective shell for protecting the electronic device installed therein, covering a back portion and a side portion of the electronic device and without covering a front portion of the electronic device wherein the protective shell comprises a bottom covering the back portion of the electronic device, and a side wall extending from the bottom and covering the side portion of the electronic device; and

a protective frame configured to removably mount over the side wall of the protective shell;

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 11**

wherein the protective film for covers the front portion of the electronic device,

wherein the protective shell further comprises an inverted "L" -shaped recess for receiving edges of the protective film, wherein the protective shell further comprises grooves formed on the inverted "L" -shaped recess and the protective film comprises mating protrusions wherein the mating protrusions mate with the grooves,

wherein the grooves are formed on a vertical side of the inverted "L"-shaped recess and in contact with inner edges of the inverted "L" -shaped recess, wherein the protective film is attached to the front portion of the electronic device.

SOF at ¶34.  U.S. Patent No. 9,268,133 at 7:5-28.

Many of the elements that are claimed in Claim 1 of the '133 Utility Patent (and are thus presumably functional) appear in the Asserted Design Patents:

- a protective shell that covers a back portion and a side portion of an electronic device (claimed in the '607, '620 and '099 Patents);
- a protective frame mounted over the protective shell (shown and claimed in each of the Asserted Design Patents);
- a protective film covering the front portion of the underlying device (shown and claimed in the '099 Patent);
- an inverted "L"-shaped recess in the protective shell that receives the protective film (shown and claimed in the '099 Patent); and
- mating grooves and protrusions of the "L"-shaped recess and film, respectively (shown and claimed in the '099 Patent).

Thus, the features of the '099 Patent that differ from the other Patents are specifically called out for their utilitarian function in the '133 Utility Patent.

**C. Each of the Asserted Design Patents is Also Invalid As Obvious**

**i.   Construction and Scope of Protection Under the Asserted Design**

**Patents in View of the Prior Art**

As noted, the Asserted Design Patents share substantially the same disclosure.  Each of the '607, '620, and '648 Patents have the same figures with different elements shown in solid or dashed lines to indicate what elements from the figures are claimed in the respective patent.  SOF at ¶35.  The '099 Patent similarly includes each of those same figures with the addition of eight additional views to show individual components, exploded views, and sectional views of the claimed case.  *Compare* SOF Ex. M to Exs. N-P.

As demonstrated by the various solid and dashed lines presented in each patent, each of the Asserted Design Patent claims different portions of the disclosed case while showing the unclaimed portions to indicate environment.  *See e.g.*, the '620 Patent, SOF Ex. O, at p. 2 ("The broken lines depict of unclaimed environment and form no party of the claimed design.").  For example, Figure 2 of the '099 Patent and Figures 3 of the '607, '620, and '648 Patents each show a rear perspective view of the claimed case as shown below:

| | | | |
|---|---|---|---|
|  | Figure 3 of D771,607 (Exhibit A to the Third Amended Complaint) |  | Figure 2 of D753,099 (Exhibit B to the Third Amended Complaint) |
|  | Figure 3 of D775,620 (Exhibit C to the Third Amended Complaint) |  | Figure 3 of D776,648 (Exhibit D to the Third Amended Complaint) |

Many of the features shown and variously claimed in the Asserted Design Patents are dictated entirely by function.  For example, the designs show a generally rectangular case with rounded corners.  SOF at ¶36.  This is because the

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 13**

underlying phone to be used with the case is generally rectangular with rounded corners.  In order to be usable, the case must fit the underlying phone.  Likewise, the location and size of the various cutouts and buttons is also dictated by the location and size of corresponding features of the underlying phone such as buttons, switches, and logos.  Not surprisingly, many of these features are also shown in the prior art.

For example, Spigen's own prior product from at least 2012 (SOF at ¶37), the Slim Armor, has largely the same structure as shown in the following side-by-side comparison of Fig. 3 of the '607 Patent and a photo of the Slim Armor from Spigen's own expert report:

                     SOF at ¶38.

As shown, the Slim Armor is also a generally rectangular-shaped case with rounded corners and includes cutouts and buttons for the corresponding features of the underlying phone.   The differences between the Slim Armor and the Asserted Design Patents are minimal.  For example, while the Slim Armor shares a chamfered edge with the Asserted Design Patents, the claimed designs show a more prominent chamfer.  Additionally, the button shape of the claimed designs is trapezoidal, necessitating a cutout in the "protective frame[3]" of the claimed design.   These features were also well known in the art at the time of the purported invention of the claimed designs.  For example, U.S. Design Patent No.

_____

[3] This term is drawn from the '099 Patent specification which names various components of the claimed case to indicate when fewer than all components are shown in a figure.  The use of the moniker is not intended to constitute a construction of the Asserted Design Patents or an admission that the names impart other limitations to the claimed designs.

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 14**

D729,218 shows a generally rectangular case with rounded corners, prominently chamfered edges, and trapezoidal buttons as shown in Figs. 3-5 copied below:



In fact, the subject matter of the '218 Patent was likely part of the inspiration for these design elements. The '218 Patent is assigned to Wimo Labs, LLC (SOF at ¶39) who markets an embodying product under the brand name Lunatik. SOF at ¶40. Spigen's own conception drawing specifically references the Lunatik case. SOF at ¶41. While the drawing only refers to the Lunatik case for dimensions, the express reference to this prior art product in the initial design drawing demonstrates that the inventor had the subject matter of the prior art design in mind when drawing the design.

The Amazon.com product listing for the Lunatik case was cited by Spigen during prosecution of the '607 Patent, but it was never applied or described by the Examiner. SOF at ¶42. The following photographs appear on that product listing:



                                    SOF at ¶43.

As shown, the Lunatik case teaches the use of a prominent chamfered edge.

Likewise, the Lunatik case teaches use of buttons built into the rubberized case with a square side profile and angled grooves delineating the buttons.

Another prior art reference of import is U.S. Design Patent No. D772,209 (the '209 Patent) which was filed on June 17, 2014 and names both Mr. Kim as well as Young Kwang Hyun as inventors.  SOF at ¶44-45.  According to the U.S.P.T.O. records, no assignment of Mr. Hyun's rights to the '209 Patent has ever been recorded.  SOF at ¶46.  Because the '209 Patent was effectively filed before each of the Asserted Design Patents (which have an earliest effective filling date of December 15, 2014 for the '099 Patent and June 27, 2014 for the others) and names another inventor, it qualifies as prior art under 35 U.S.C. § 102(a)(2).  Further, Spigen has produced no evidence to demonstrate that Mr. Hyun assigned his rights to Spigen (such that the '209 Patent would be commonly owned with the designs in the Asserted Design Patents) or that he was under an obligation to so assign.  In fact, when Defendants attempted to depose Mr. Hyun, Spigen refused to make him available. SOF at ¶47.  Accordingly, Spigen should be precluded from relying upon any unproduced evidence, including unproduced testimony from Mr. Hyun or an unproduced assignment, to establish that the '209 Patent and the designs claimed in the Asserted Design Patents were commonly owned or under an obligation of assignment at the time of filing.  Consequently, the '209 Patent is not excludable as prior art under 35 U.S.C. §102(b)(2)(c).

The '209 Patent discloses and claims a design very similar to that in the Asserted Design Patents as shown in the following image from the '209 Patent:



SOF at ¶48, Figures 1-9, respectively, of the '209 Patent.

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 16**

The '209 Patent shows the same generally rectangular case with rounded corners and horizontal parting lines that traverse the back of the case and wrap around the side edges.  The '209 Patent also claims the same circular cutout and raised rim shown and variously claimed in the Asserted Design Patents.  The only apparent differences between the '209 Patent and the design shown and variously claimed in the Asserted Design Patents is chamfered edges (as opposed to the rounded side walls of the '209 Patent) and the squared off buttons – both of which are shown and taught by the Lunatik product and '218 Patent above.

### ii. At Least One Hypothetical Design Renders the Asserted Design Patents Invalid As Obvious

As instructed by governing case law Defendants' expert Paul Hatch created hypothetical combinations of the prior art by first selecting a primary reference "the design characteristics of which are basically the same as the claimed design" and then applying other references to "modify it to create a design that has the same overall visual appearance as the claimed design."  *MRC Innov. Inc. v. Hunter Mfg.,* LLP, 747 F.3d 1326, 1331 (Fed. Cir. 2014) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed. Cir. 2009). While many hypothetical combinations are possible due to the crowded nature of the field and the universally required functional aspects (such as being operable with the intended phone), one such hypothetical design created by Mr. Hatch combines the teachings of the '218 Patent and the '209 Patent.

Looking at the figures of the Asserted Design Patents alongside the figures of the '218 Patent, it is clear that the '218 Patent is an appropriate primary reference that has design characteristics that are "basically the same" as the claimed designs of the Asserted Design Patent:



SOF at ¶¶49-53; Fig. 1 of the '218 Patent; and Fig. 1 of the '607, '099, '620 and '648 Patents, respectively.



*Id.*; Fig. 5 of the '218 Patent; Fig. 6 of the '607 Patent; Fig. 5 of the '099 Patent; and Fig. 6 of the '620 and '648 Patents, respectively.

While not identical (thereby anticipating), the overall design of the '218 Patent is substantially the same as the design in the Asserted Design Patents. Each case includes the same generally rectangular appearance with rounded corners. Each case also includes the same prominent rear chamfer and front chamfer. And each case shows squared elongated buttons corresponding to the location of the buttons of the underlying phone. The only perceivable difference between the design shown in the '218 Patent and the Asserted Design Patents is the circular cutout in the upper third of the back surface[4] and the horizontal parting lines on the back and side surfaces of the case to delineate where the "protective frame" meets the "protective shell." Accordingly, Mr.



---

[4] This element is shown but not claimed in the '099 Patent.

**DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT - 18**

Hatch combined the '209 Patent with the '218 Patent to develop the hypothetical design to the right.  SOF at ¶54.

Mr. Hatch first took the teachings of the 218 Patent and applied the teachings of the '208 Patent, obviously the reverse is also a suitable combination that would result in the same hypothetical design.  Likewise, other prior art references, including the above-outlined Slim Armor can be combined in suitable combinations to demonstrate the obviousness of the claimed designs.  In sum, in this crowded field, there is nothing to set the Asserted Design Patents apart.

## VII.   SPIGEN CANNOT SHOW INFRINGEMENT OF THE ASSERTED DESIGN PATENTS BY THE ACCUSED PRODUCTS

Many of the claimed elements of the Asserted Design Patents are dictated largely, if not entirely, by functional concerns.  Because the claimed designs include both functional and ornamental features, Spigen bears the burden of showing that any alleged similarity between the claimed designs and the accused products stems from the ornamental features and not from the functional ones. *See OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("If . . . a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design. The patentee 'must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental.'" quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825, (Fed. Cir. 1992)).

### A. The Protanium Cases Provide a Visual Impression That is Substantially Different From the Claimed Designs, Each of Which Include the Same External Dimensions of a "Protective Frame"

The Asserted Design Patents claim and disclaim various aspects of the same design of a case for a cell phone.  However, each of the Asserted Design Patents claims the same external dimensions of the "protective frame."  Meanwhile, the accused Protanium cases each include a backplate that distinguishes their design

from the Asserted Design Patents. Because Spigen bears the burden of showing infringement demonstrating that it cannot meet this element entitles Defendants to summary judgment in their favor. *See Musick*, 913 F.2d at 1394.

Each of the Asserted Design Patents claims the same external dimensions of the "protective frame" as shown in, for example, in the annotated version of Figs. 3 and 5 of the '648 Patent to the right (SOF at ¶56-57):



The accused Protanium cases are shown, for example, in Spigen's expert report:



*See* September 19, 2018 Expert Report of Joel Delman at p. 32.

The Protanium cases provide a visual impression that substantially differs from the Asserted Design Patents. Most prominently, the silver element of the Protanium cases does not have a linear top edge, but rather an edge with a substantial and noticeable "dip." This "dip" breaks the top edge and disrupts the view point calling attention toward the disruption.

This feature is distinctive enough that Spigen has obtained different patents (naming an additional inventor) for the same designs as the Asserted Design Patents but for the inclusion of the curve. U.S. Patent Nos. D819,013 (the '013 Patent) and D820,245 (the '245 Patent), neither of which Spigen disclosed or produced in this case, are assigned to Spigen and list Soo Ha Jung as a co-inventor with Mr. Kim (the sole named inventor of the Asserted Design Patents). SOF at ¶58-60. Figs. 2 and 4 of the '013 and '245 Patents are copied below:



Fig. 2 of the '013 Patent (left) and '245 Patent (right) and Figs. 4 of same.

These patents post-date each of the Asserted Design Patents, but the fact that they were allowed over the Asserted Design Patents and even name a different co-inventor indicates that the scope of the Asserted Design Patents cannot be broad enough to encompass the distinguishing back plate of the accused Protanium cases.  To the extent the Protanium cases shown above share any other design aspects with the Asserted Design Patents, those aspects are dictated purely by function.  For example, the cases have a generally rectangular shape with straight surfaces and curved corners because the underlying phones have straight surfaces and curved corners.

**B. The Duranium Cases for the iPhone 7 and 7 Plus Are Also Substantially Different From the Claimed Designs, Each of Which Include the Same External Dimensions of a "Protective Frame"**

The Duranium cases for the iPhone 7 and 7 Plus are shown, for example, in Mr. Delman's report at p. 33 and reproduced below:



SOF at ¶61; Duranium for iPhone 7 and 7 Plus, respectively.

As with the Protanium cases discussed above, the Duranium cases for iPhone 7 and iPhone 7 Plus create a visual impression that substantially differs from the design claimed in each of the Asserted Design Patents.  Again, the

Duranium case for iPhone 7 and 7 Plus have the same broken top edge for the colored element discussed above with regard to the Protanium cases.

Again, any design similarities between the Duranium cases and the Asserted Design Patents are dictated by function and form no part of the analysis.

### C. None of the Accused Products Infringe the Asserted Design Patents From the Viewpoint of An Ordinary Observer Familiar With the Prior Art

In view of page limitations and the clear invalidity of the Asserted Design Patents outlined above, the following distinguishing design elements are addressed in abbreviated form.  Should this case proceed, clear and extensive evidence of non-infringement will be presented at trial.

While an infringement analysis always requires a consideration of the entire design (as opposed to focusing on individual elements under, for example, the defunct "points of novelty" test), certain design elements are noted because the combination of all of those elements shows that the Accused Products have a substantially different appearance from the Asserted Design Patents.  For example, none of the Accused Products include a raised rim around the circular cut-out on the upper third of the back surface of the case as claimed in the '607, '620, and '099 Patents.  SOF at ¶62.  Likewise, the Protak case has sharp angled features and corners.  *Id.* at ¶63.  Meanwhile, all of the Duranium cases feature a double-chamfered edge more akin to the rounded edges of the prior art than the single chamfer of the Asserted Design Patents.  *Id.* at ¶64.  Further, the Duranium cases each exhibit a three-piece structure with an internal frame that includes a built in screen protector and significantly alters the front service of the design.  *Id.* at ¶65.  An ordinary observer, being familiar with the prior art in a crowded field would be drawn to these distinctions.

### VIII. EVEN IF ONE OR MORE PATENTS ARE HELD VALID AND INFRINGED, PLAINTIFF IS PRECLUDED FROM PURSUING

## DAMAGES

As set forth above, each of the Asserted Design Patents and the '283 Patent is invalid and/or not infringed and Defendants are entitled to judgment as a matter of law in its favor on the pending claims and counterclaims.  However, even assuming, *arguendo*, that one or more claims of the '283 Patent or one or more of the Asserted Design Patents is held to be valid and infringed, Spigen cannot pursue damages because it has failed to identify a damages theory and its only damages expert has specifically stated that he has no opinions to offer.  Further, Spigen cannot pursue pre-suit damages because it has failed to mark its products

### A. Plaintiff Cannot Pursue A Damages Remedy Because Its Only Proffered Expert Has Formed No Opinions

Based on the records, Spigen has insufficient evidence to present any damages theory to a jury.  In other words, no reasonable jury could award Spigen any damages based on the admissible evidence available.  As an initial matter, Spigen has presented no evidence related to the calculation of a reasonable royalty.  Rather, Spigen's only proffered damages expert, Mr. Blake Inglish, was asked to assist only in the quantification of total profits.   SOF at ¶66.  Accordingly, Spigen has no admissible evidence directed toward a reasonable royalty measure of damages.  In the absence of admissible evidence regarding a reasonable royalty, the Court may determine that no more than nominal damages are available as the statutorily mandated reasonable royalty.  *See Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015).

Moreover, Mr. Inglish failed to actually offer an opinion regarding total profits.  35 U.S.C. §289 provides that a patent owner can additionally recover an infringer's "total profits" gained from infringing a design patent. As the patent owner, Spigen bears the burden of persuasion and production on identifying the relevant article of manufacture and proving Defendants' total profits on that article.  *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2017 U.S.

Dist. LEXIS 177199, at *98-99 (N.D. Cal. Oct. 22, 2017).  Setting aside the factual dispute regarding the appropriate article of manufacture, the evidence of record is insufficient for Spigen to meet its further burden of proving the total profits allegedly gained through infringement.

In particular, Mr. Inglish specifically acknowledged that in determining total profits, Spigen needs to prove Defendants' gross revenue from the infringing articles of manufacture by a preponderance of the evidence.  SOF at ¶64.  After recognizing this burden, Mr. Inglish goes on to state that ". . . I offer no expert opinions regarding the gross revenues from the articles of manufacture and will rely on counsel's representations that Spigen will prove this amount at trial after obtaining the information sought from Defendants."  However, Spigen has not sought any further information from Defendants since Mr. Inglish submitted his report and there are thus no grounds to permit Mr. Inglish to supplement or amend his report to provide a calculation of alleged gross revenues from an infringing article of manufacture.  Accordingly, Spigen has not presented any evidence to meet its initial burden of proving gross revenue and is therefore entitled to no more than the $250 statutory minimum.  *See* 35 U.S.C. §289.

In the alternative, Defendants request that the Court follow the procedure adopted in *Venetian Stone Works, LLC v. Marmo Meccanica, S.p.A.*, No. C09-1497, 2011 U.S. Dist. LEXIS 7348 (W.D. Wash. Jan. 26, 2011), by ordering Plaintiff to provide an offer of proof identifying the evidence currently of record upon which a jury could grant a reasonable royalty. *See also Limelight Networks, Inc. v. XO Commc'ns, LLC*, No. 3:15-CV-720, 2018 U.S. Dist. LEXIS 49816, at *8 (E.D. Va. Mar. 23, 2018). This procedure would avoid the possibility of "trial by ambush," which is "[o]ne of the principal goals of the discovery rules." *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV 16-0084, 2017 U.S. Dist. LEXIS 168133, at *3 (C.D. Cal. May 9, 2017) (quoting *Brandon v. Mare-Bear, Inc.*, 225 F.3d 661 (9th Cir. 2000)); *Encompass Ins. Co. v. Berger*, No.

CV128294, 2013 WL 12124281, at *6 (C.D. Cal. Dec. 10, 2013).

## X.  SPIGEN CANNOT SHOW OWNERSHIP OF PROTECTABLE TRADE DRESS

In response to a contention interrogatory regarding what, if any, trade dress rights Spigen contends are infringed by Defendants, Spigen identified three U.S. Trademark Registrations; namely, U.S. Trademark Reg. No. 5,015,482; 5,061,199; and 5,000,281.  SOF at ¶69.  Each of these registrations is owned by Spigen, Inc., not Spigen Korea Co., Ltd, the plaintiff in this case.  SOF at ¶70. Moreover, the marks are each registered on the supplemental register; consequently, Spigen cannot meet the minimal threshold of proving ownership of a protectable mark.  *See e.g., ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1288 (Fed. Cir. 2010) (rejecting "the proposition that the Supplemental Register carries the same clout as the Principal Register").

## XI.  CONCLUSION

The undisputed facts demonstrate that each of the patents being asserted by Spigen is invalid.  The continued maintenance of this suit in the face of these clearly invalidating references renders this case exceptional as will be presented in post-judgment briefing.  Likewise, facts demonstrating inequitable conduct and faulty inventorship that are too convoluted for the purposes of this motion also demonstrate the exceptional nature of Spigen's claims.  At the present, in view of at least the admission of a prior public disclosure, the admission of functional elements, clearly distinguishing ornamental characteristics, and the teachings of the prior art, Defendants respectfully move for summary judgment of invalidity and non-infringement of each of the asserted patents.  In the alternative, in view of Spigen's failure to mark and failure to present admissible expert evidence regarding damages, Defendants respectfully move for summary judgment regarding Spigen's inability to collect anything more than nominal damages or the statutory minimum of $250 per design patent.

1  DATED: October 29, 2018          Submitted by,

2                                                      /s/ JACK IVAN JMAEV

3                                                      _____

4                                                      JACK IVAN JMAEV, SBN 216,416

5                                                      Attorney for Defendants

6                                                      ULTRAPROOF, INC., a California
                                                       corporation and

7                                                      ULTRAPROOF, INC., a Nevada
8                                                      Corporation

9                                                      ENDLISS TECHNOLOGY, INC.
                                                       a California corporation
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2018 I electronically filed the foregoing documents with the United States Court of District Court for the Central District of California by using the CM/ECF system. I certify that, to the best of my knowledge, the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: Brian Arnold. I further certify that, to the best of my knowledge, neither of these individuals has filed a request for exemption from electronic filings and notice of service.

Dated: October 29, 2018

PURITAN LAW GROUP

/s/ Jack Ivan Jmaev

_____

JACK IVAN JMAEV, SBN 216,416

Attorney for Defendants

ULTRAPROOF, INC., a California corporation ;
ULTRAPROOF, INC., a Nevada Corporation; and
ENDLESS TECHNOLOGY, INC. a California corporation.