JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SPIGEN KOREA CO. LTD, | Case No.: SA CV 16-9185-DOC (DFMx) |
|     Plaintiff, | |
| | |
|     vs. | **ORDER GRANTING DEFENDANTS'** |
| | **MOTION FOR SUMMARY** |
| | **JUDGMENT [175]; DENYING** |
| LIJUN LIU ET AL, | **PLAINTIFF'S MOTION FOR** |
|     Defendants. | **SUMMARY JUDGMENT [167]; AND** |
| | **DENYING PLAINTIFF'S MOTION** |
| | **FOR LEAVE TO FILE A FOURTH** |
| | **AMENDED COMPLAINT [172].** |

This patent action involves U.S. Patent No. 9,049,283 (the "283 Patent" or "Utility Patent") (Dkt. 100), a patent for "Case Having a Storage Compartment for Electronic Devices," which addresses cases for electronic devices (such as smartphones) that have a storage compartment for personal items such as credit cards. *See generally* Fourth Amended Complaint for Patent Infringement ("FAC" or "Utility Patent Complaint") (Dkt. 100) Ex. A (283 Patent). This patent action also involves U.S. Design Patents No. D771,607 ("607 Patent"), D753,099 ("099 Patent"), D775,620 ("620 Patent"), and D776,648 ("648 Patent") ("Design Patents"), patents related to Plaintiff's smart phone design covers. *See generally* Third Amended Complaint for Design Patent Infringement ("TAC" or "Design Patents Complaint") (Dkt. 101) Ex. A–E.

Plaintiff Spigen Korea Co. Ltd ("Plaintiff" or "Spigen") brings one claim for patent infringement of the 283 Patent and one claim for patent infringement of the four Design Patents against Defendants Ultraproof, Inc., a California corporation ("Ultraproof CA"), Ultraproof, Inc., a Nevada corporation ("Ultraproof NV"), and Endless Technology, Inc. ("Endliss") (collectively, "Defendants"). *See generally* Utility Patent Complaint, Design Patent Complaint. Plaintiff alleges that Defendants have directly infringed claims 1–5, 6, 8, 10–20, and 22 of the 283 Patent by making, using, offering to sell or selling in the United States, or importing into the United States products covered by the patent including the Trianium Walletim Series for iPhone 7Plus ("Utility Patent Accused Products"). Utility Patent Complaint ¶ 15. Plaintiff alleges that Defendants have directly infringed the Spigen Design Patents by making, using, selling, offering to sell, and/or importing products covered by the Design Patents, including the Trianium Protak Series for iPhone 6/6S, the Trianium Duranium Series Series for iPhone 6/6S and iPhone 7 Plus, and the Trianium Protanium Series for iPhone 6/6s, iPhone 7, and iPhone 7 Plus ("Design Patent Accused Products"). Design Patent Complaint ¶¶ 15–17.

Regarding the Utility Complaint, Defendants bring counterclaims for invalidity of the 283 Patent as anticipated, obvious, and/or indefinite, and for invalidity under the doctrine of inequitable conduct. Utility Patent Answer and Counterclaims (Dkt. 137) at 9–13. Regarding the Design Complaint, Defendants bring counterclaims for invalidity of each Design Patent

over the prior art and under the doctrine of inequitable conduct. Design Patent Answer and Counterclaims (Dkt. 138) at 7–21.

Before the Court are: (1) Plaintiff's Motion for Leave to Filed a Fourth Amended Complaint (Dkt. 172) ("Mot. to Amend"); (2) Defendants' Motion for Summary Judgment as to All Claims of Operative Complaints (Dkt. 175) ("D. Mot."); (3) Plaintiff's Motion for Summary Judgment as to Inequitable Conduct Counterclaims (Dkt. 167) ("Pl. Mot."). The Court heard oral argument on December 12, 2018.

The Court will first address the 283 Patent. As to the Design Patents, the Court will begin with facts pertaining to the contents of the Design Patents, and will construct the claims. Then, the Court will turn to the summary judgment, setting forth undisputed material facts[1] pertinent to the questions involved in the summary judgment inquiry. Finally, the Court will determine whether summary judgment is appropriate.

## I. UTILITY PATENT (283 Patent)

### A. Facts

Spigen was the owner of all right, title and interest in the 283 Patent, which was filed on December 5, 2014, with a claim of priority date of June 16, 2014, and issue date of June 2, 2015. *See* Utility Compl. ¶ 14. The 283 Patent's specification includes the following description of the background for the claimed invention:

> Portable electronic devices, such as mobile phones, smart phones, tablet computers and the like, have become popular and widely used for communication, entertainment purposes and other purposes. These electronic devices are intended to be carried or moved about and as such, these devices are more likely to be accidentally dropped, hit, or scratched. To protect the portable electronic devices, protective cases have been

---

[1] Unless indicated otherwise, to the extent any facts in the Facts or Obviousness sections are disputed, the Court concludes they are not material to the disposition of the Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

introduced and become popular in connection with the electronic devices such as cell phones, smart phones, tablet computers and the like.

There has been a trend towards combining several functions into the protective cases, for example, a case having a pocket or purse clutter integrated therein. Among many types of cases, flip/folio-style cases have become popular to have a storage space to store credit/debit cards. A cover flip opens and closes over an electronic device such as a mobile phone or a smart phone. Such cover usually has a securing mechanism such as a snap, a magnet, or hook and loop fasteners. Credit cards are usually stored inside the front cover of the case. In order to use the electronic device, the cover must be opened, thereby exposing the front of the device and the credit cards together. Thus, whenever a user uses the electronic device, the credit cards are exposed as well.

Besides, the sizes and shapes of modern cell phones have become much more compact than those in the past, and accordingly, the cases have become compact as well. Thus, adding a storage space for personal items such as a credit card tends to make the cases unnecessarily bulkier and heavier.

Therefore, to solve the above problems and facilitate convenient carrying of personal items such as credit/debit cards, there is a need for a case for an electronic device having a compact, stylish and integrated structure for a storage compartment to store personal items such as a credit/debit card(s). This invention is directed to solve these problems and satisfy the long-felt need.

Utility Compl. Ex. A at 1:23–57.

The Patent summarizes the invention as follows:

The present invention contrives to solve the disadvantages of the prior art. The present invention provides a case, having a storage compartment, for

an electronic device and, more particularly, to a mobile phone case having three main members of a soft protective case, a hard protective frame and a cover. The cover is configured to slidably open and close the storage compartment which stores a credit card.

The object of the invention is to provide a case, having a storage compartment, for an electronic device which includes a soft protective case, a hard protective frame, and a cover. The cover slides forward and backward with respect to the hard protective frame to open and close the storage compartment formed by the soft protective case and the cover.

Another object of the invention is to provide a case, having a storage compartment, for an electronic device which includes a soft protective case, a hard protective frame, and a cover. A raised wall is formed on a bottom surface of the soft protective case to form a storage compartment and the hard protective frame has an aperture to surround the raised wall. The hard protective frame and the cover respectively have grooves and rails and the rails slide forward and backward with respect to the grooves to open and close the cover.

Still another object of the invention is to provide a case, having a storage compartment, for an electronic device which includes a soft protective case, a hard protective frame, and a cover. The hard protective frame is provided with an indentation structure and the cover is constructed to form a complementary structure to be received in the indentation structure of the hard protective case. In addition, the hard protective frame has a protuberance on an opposite side of the indentation structure of the hard protective frame to structurally support and reinforce the indentation structure of the hard protective frame. The soft protective case has a complementary structure of an indentation to receive the protuberance of the hard protective frame.

The advantages of the present invention are: (1) the case having a storage compartment of the present invention well protects an item such as a credit card stored in the storage compartment; (2) the case of the present invention has one compact, stylish, and integrated structure; and (3) the credit card is not easily visible to others . . . .

*Id.* at 1:61–2:35.

Plaintiff alleges that Defendants infringe claims 1–5, 6, 8, 10–20, and 22 of the 283 Patent. Utility Compl. ¶ 15. The Asserted Claims are as follows:

Claim 1

1. A case, having a storage compartment, for an electronic device, comprising:

a soft protective case which comprises a back panel to cover a back portion of the electronic device, a raised wall formed on a bottom surface of the back panel to form the storage compartment, and a side wall extending from a top surface of the back panel along edges of the back panel for significantly covering a side portion of the electronic device;

a hard protective frame, configured to removably mount over the soft protective case wherein the hard protective frame comprises grooves; and

a cover which includes rails adapted to mate with and to be slidably mounted on the grooves so that the cover slides along the grooves to open and close the storage compartment,

wherein the soft protective case significantly covers a back portion of the electronic device with the top surface of the back panel and a side portion of the electronic device with the side wall of the soft protective case,

wherein the soft protective case is sufficiently flexible to accept insertion of the electronic device therein and sufficiently rigid to securely retain the inserted electronic device.

283 Patent at 6:56–7:12 ("Claim 1").

Claim 1 Dependent Claims

2. The case of claim 1, wherein the hard protective frame further comprises an aperture snugly fitting with an outer side of the raised wall of the soft protective case.

3. The case of claim 1, wherein the soft protective case is provided with a plurality of indentations formed on the side wall of the soft protective case and the hard protective frame has complementary structures to be received in the indentations.

4. The case of claim 1, wherein the hard protective frame is provided with an indentation structure and the cover is constructed to form a complementary structure to be received in the indentation structure of the hard protective case.

8. The case of claim 1, wherein width and length of the storage compartment is respectively slightly greater than those of a credit card.

10. The case of claim 1, wherein the bottom surface of the soft protective case further comprises a depression for easy access to a credit card stored in the storage compartment.

11. The case of claim 1, wherein the hard protective frame further comprises a locking protrusion and the cover further comprises a locking recess positioned to mate with the corresponding locking protrusion.

12. The case of claim 1, wherein the hard protective frame further comprises a cavity and the cover further comprises a mating protrusion positioned to mate with the cavity of the hard protective frame.

13. The case of claim 1, wherein the soft protective cover is made of thermoplastic polyurethane and the hard protective frame and the cover are made of polycarbonate.

14. The case of claim 1, wherein a longitudinal recess is formed on the bottom surface of the soft protective case along the outer side of the raised wall of the soft protective case, wherein a longitudinal protrusion is formed on the hard protective frame along a boundary of the aperture, and wherein the longitudinal protrusion of

the hard protective frame snugly fits into and is received by the longitudinal recess of the soft protective case.

15. The case of claim 1, wherein the soft protective case comprises a long recess and the hard protective frame comprises a long protrusion such that the long recess of the soft protective case receives the long protrusion of the hard protective frame therein.

*Id.* at 7:13–24, 40–42, 46–48, 57–63, 8:1–10.

Claim 16

16. A case, having a storage compartment, for an electronic device, comprising:

a soft protective case which comprises a back panel to cover a back portion of the electronic device, and a side wall extending from a top surface of the back panel along edges of the back panel;

a hard protective frame, configured to removably mount over the soft protective case, wherein the hard protective frame comprises an aperture to form the storage compartment;

a cover to slide forward and backward with respect to the hard protective frame for opening and closing the storage compartment formed on a bottom surface of the soft protective case; and

a sliding means for sliding the cover forward and backward with respect to the hard protective frame.

*Id.* at 8:11–27 ("Claim 16").

Claim 16 Dependent Claims

17. The case of claim 16, wherein the sliding means comprises a pair of grooves formed on the hard protective frame and a pair of rails formed on the cover wherein the rails are configured to mate with and to be slidably mounted on the grooves.

18. The case of claim 16, wherein a raised wall is formed on a bottom surface of the soft protective case to form the storage compartment and the aperture of the hard protective frame surrounds the raised wall of the soft protective case.

19. The case of claim 16, wherein the soft protective case is provided with a plurality of indentations and the hard protective frame has complementary structures to be received in the indentations.

22. The case of claim 16, wherein the soft protective case comprises a long recess and the hard protective frame comprises a long protrusion such that the long recess of the soft protective case receives the long protrusion of the hard protective frame therein.

*Id.* at 8:28–41, 57–61.

**B. Procedural History**

Plaintiff filed its Complaint (Dkt. 1) on December 12, 2016. Plaintiff filed its First Amended Complaint (Dkt. 12) on January 11, 2017. Plaintiff filed its Second Amended Complaint (Dkt. 33) on March 28, 2017. Plaintiff filed its Third Amended Complaint (Dkt. 54) on September 25, 2017. Plaintiff filed its Fourth Amended Complaint (Dkt. 100) on March 28, 2018. Defendants filed their Answer and Counterclaims (Dkt. 137) on June 18, 2018. Defendants filed their Motion to Summary Judgment ("D Mot.") (Dkt. 177) on October 30, 2018. Plaintiff filed its Opposition ("Opp'n to D. Mot") (Dkt. 187) on November 21, 2018. Defendants filed their Reply (Dkt. 194) on November 28, 2018. The Court heard oral argument of the parties on December 12, 2018.

The 283 Patent was the subject of prior litigation before this Court in *Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd. et al*, 2:16-cv-8559-DOC (DFMx). In that case, Plaintiff Spigen Korea ("Spigen") brought a claim for patent infringement of the same 283 Patent that is a subject of this action against Defendants. *See* 2:16-cv-8559-DOC (DFMx) (Dkt. 33). This Court entered an Order and Supplemental Order granting summary judgment in favor of Defendants iSpeaker Co., Ltd. and VRS Design Inc. on July 16, 2018 and October 22, 2018, and entered judgment in favor of Defendants on November 7, 2018. *See* 2:16-cv-8559-DOC (DFMx) (Dkt. 157) (Dkt. 167) (Dkt.171). The Court construed the disputed claims in question, and the Court's Order and Supplemental Order found that claims 1–6, 8, 10, 13–20, and 22 were invalid as obvious. *See id.*

**C. Legal Standard**

**1. Claim Construction**

Claim construction fulfills the mandate of the Supreme Court in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) that courts, not juries, declare the meaning of a patent claim. *See* Manzo, Patent Claim Construction in the Federal Circuit § 2:1 (2018 ed.). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005) (citation omitted).

"[T]he claim construction task requires [the] court to discern the meaning of [a] term in the context of [the] invention and field of art." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006). "Claim construction is a fact-dependent, invention-oriented exercise in logic and law." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1322 (Fed. Cir. 2006). "[C]ourts cannot 'rewrite' claims. However, in clarifying the meaning of claim terms, courts are free to use words that do not appear in the claim so long as 'the resulting claim interpretation . . . accord[s] with the words chosen by the patentee to stake out the boundary of the claimed property.'" *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1333 (Fed. Cir. 2005) (citation omitted).

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction begins with the claim language. *Id.* Claim terms are generally given "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art." *Id.* at 1312–13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, the terms must be read in the context of the entire patent. *Phillips*, 415 F.3d at 1314. In interpreting the claim, the court focuses primarily on the intrinsic evidence of record, including the claims themselves, the specification, and if in evidence, the prosecution history. *Id.* at 1312–17; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005).

Among the intrinsic evidence, the specification is always highly relevant to the claim construction analysis—it is the single best guide to the meaning of a disputed term, and is usually dispositive. *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985)). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. In addition to the specification, the court will also consider the prosecution history, consisting of "the complete record" of the patent. *Id.* If, within the prosecution history, a patentee clearly and unmistakably disavowed a claim construction, then it disclaimed that construction. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). However, because the prosecution history often lacks the clarity of the specification, it is less useful for claim interpretation purposes. *Phillips*, 415 F.3d at 1317.

While the court may also consider extrinsic evidence, including expert testimony, dictionaries, and learned treatises, as the Federal Circuit has recently made clear, such evidence is generally viewed as less reliable than intrinsic evidence. *Phillips,* 415 F.3d at 1317–18. Therefore, the Court must use its discretion in admitting and weighing extrinsic evidence, keeping in mind its inherent flaws. *Id.* at 1319.

There is also "a presumption that each claim in a patent has a different scope." *Comark*, 156 F.3d at 1187; *see also Phillips*, 415 F.3d at 1315. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Leibel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). "To determine the validity of a patented invention, the meaning and scope of the claims are first determined." *MPHJ Tech. Investments, LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1364 (Fed. Cir. 2017). "However, a district court need not 'construe undisputed claim terms prior to issuing a summary judgment of invalidity.'" *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332 (Fed. Cir. 2009) (citation omitted).

### 2. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**D. Discussion**

   **1. Claim Construction**

   In *Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd. et al*, the Court construed disputed terms in the 283 Patent as follows:

- The term "configured to removably mount" means: "separable without causing damage such that the reasonable use or appearance is detrimentally affected."

- The term "groove" means: "any long and narrow channel, hollow, cut, or indentation in a surface."

- The ordinary and plain meaning of the word "grooves" in the context of "the hard protective frame comprises grooves" is manifest as being plural and needs no construction.

- The term "sliding means for sliding the cover forward and backward" means "two vertical grooves in the hard protective frame and two vertical rails on the cover shaped to fit into the grooves to provide constrained forward and backward sliding movement."

2:16-cv-8559-DOC (DFMx) (Dkt. 157). The Court thus adopts the claim construction as indicated above.

   **2. Claims 1–5, 6, 8, 10, 13–20, 22**

   Defendants argue that this Court's Order and Supplemental Order in *Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd. et al* control this action. 2:16-cv-8559-DOC (DFMx) (Dkt.157, 167). The Court's Order and Supplemental Order granted Defendant's Motion for Summary Judgment and denied Plaintiff's Motion for Summary Judgment, on the grounds of patent invalidity for obviousness as to claims 1–5, 6, 8, 10, 13–20, and 22 of Patent 283, and the Court entered judgment in favor of iSpeaker et al on November 7, 2018. *See id* (Dkt. 157, 167, 171). Plaintiff acknowledges the Court's judgment in the aforementioned case, and Plaintiff consent to entry of an adverse final judgment as to claims 1–5, 6, 8, 10, 13–20, and 22. Opp'n at 2; Declaration of Dae-Young Kim ("Kim Decl.") ¶ 6.

Given the Court's Orders in *Spigen Korea Co., Ltd. v. iSpeaker Co., Ltd. et al*, the Court GRANTS summary judgment in favor of Defendants as to claims 1–5, 6, 8, 10, 13–20 and 22 of Patent 283.

### 3. Claims 11 and 12

#### a. Jurisdiction

Plaintiff argues that its covenant not to sue regarding the 283 Patent divests this Court of subject matter jurisdiction over the 283 Patent because it eliminates the case and controversy. Opp'n at 1–3. Defendants argue that Plaintiff's covenant does not divest the Court of jurisdiction regarding 1–5, 6, 8, 10, 13–20, and as such, the covenant in question cannot divest the Court of jurisdiction over the entire 283 Patent because it does not remove the justiciable controversy regarding all asserted claims. Opp'n at 3. Plaintiff cites to the Declaration of Dae-Young Kim ("Kim Decl."), the CEO of Plaintiff, which states in relevant part:

" 7. Regarding claims 7, 9, 11, 12, and 21 of the '283 Patent (hereinafter, "the Remaining Claims"), Spigen, on behalf of itself and its successors-in-interest, hereby *irrevocably and unconditionally covenants not to sue Defendants*, their suppliers, their customers, and any other person or entity under the direct control of Defendants *for any past, present, or future infringement* of the Remaining Claims (i.e., claims 7, 9, 11, 12, and 21) of the '283 Patent as of the date of this declaration based on their manufacture, importation, use, sale, and/or offer for sale of any previously or currently existing products. The covenant in this paragraph (a) applies solely and exclusively to the Remaining Claims and it shall not be construed to apply to or impact any other patent or patent claim; (b) does not apply to or impact, and shall not be construed to apply to or impact, the Invalidated Claims; (c) does not apply to or impact, and shall not be construed to apply to or impact, any other patent or patent claim now owned, issued in the future, or acquired in the future by Spigen; (d) shall be deemed null and void, as if it had never been given, if at any time, it is construed to apply to or impact any patent or patent claim, except for solely the Remaining Claims that have now been fully withdrawn against Defendants; (e) does not apply to any product manufactured,

-14-

imported, used, sold, and/or offered for sale for the first time after the date of this declaration, including modified or altered versions of any past or current products released for the first time in the future; and (f) does not apply to any person or entity not specifically named or identified in the covenant.

8. It is Spigen's understanding and intention that the foregoing acts will fully and completely withdraw the '283 Patent from the Utility Patent case, unless and until the Federal Circuit reverses this Court's decision concerning the Invalidated Claims, and that if, and only if, that occurs, Spigen will be able to revive its assertion of only the Invalidated Claims (or some subset of them) against Defendants. *Spigen understands and intends that it shall never be able to revive its assertion of the Remaining Claims against Defendants*."

Kim. Decl. ¶¶ 6–8 (emphasis added).

A covenant not to sue for patent infringement can, in some circumstances, divest "the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010). However, "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). "the court must apply the principles and purpose of the declaratory action, to determine whether there is a sufficient actual controversy to warrant judicial resolution." *Id.* at 1298. To demonstrate a court's lack of subject matter jurisdiction due to a patentee's grant of a covenant not to sue, the patentee "bears the formidable burden of showing that it could not reasonably be expected to resume its enforcement efforts against the covenanted, accused infringer." *ArcelorMittal v. AK Steel Corporation*, 856 F.2d 1365, 1370 (Fed. Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Here, Plaintiff unconditionally covenants not to sue Defendants for any past, current, or future infringement of claims 7, 9, 11, 12, and 21 of the 283 Patent, and states that it will never be able to revive assertion of those claims. Kim Decl. ¶ 7. As Plaintiff acknowledges adverse

judgment with respect to claims 1–5, 6, 8, 10, 13–20, Plaintiff's covenant not to sue covers all of the claims that remain in the action as to Patent 283 (i.e. claims 11 and 2). The covenant is unconditional, prohibiting Plaintiff from making any claim against Defendants as to claims 11 and 12 of the 283 Patent, and any claims cannot be revived. *See id.* ¶ 8; *Already, LLC v. Nike*, 568 U.S. 85 (2013) (holding a covenant not to sue as sufficient to moot the case where the covenant is irrevocable and unconditional). Accordingly, the covenant not to sue deprives this Court of subject matter jurisdiction as to claims 11 and 12 of Patent 283. However, the Court retains future jurisdiction to determine disputes regarding attorney's fees in connection with claims 11 and 12 of Patent 283. *See Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008) (holding that a covenant not to sue "does not deprive the district court of jurisdiction to determine the disposition of. . . the request for attorney fees under 35 U.S.C. § 285" (internal citation and quotation omitted)).

## II. DESIGN PATENTS

### A. Facts

Spigen is the owner of all right, title and interest in the Design Patents, which are the 99, 607, 620, and 648 Patents. Design Patent Comp. ¶ 14.

The 99, 607, 620, and 648 Patents' specifications describe each respective claim as "[t]he ornamental design for a case for electronic device, as shown and described." 607 Patent at 1; 99 Patent at 1; 620 Patent at 1; 648 Patent at 1. The Design Patents include the following drawings and brief descriptions, among others:[2]



"FIG. 1 is a front perspective view of a case for electronic device showing. . . new design"

Patent 607

---

[2] The complete drawings and descriptions for the Design Patents are available on the docket (Dkt. 101, Ex. A–D).

| | |
|---|---|
|  | "FIG. 1 is a front perspective view of a case for electronic device showing. . . new design" Patent 99 |
|  | "FIG. 1 is a front perspective view of a case for electronic device showing. . . new design" Patent 620 |
|  | "FIG. 1 is a front perspective view of a case for electronic device showing. . . new design" Patent 648 |

Dkt. 101, Ex. A–D.

The 99 Patent has an issue date of April 5, 2016 (Dkt. 101, Ex. B.). The 607 Patent has an issue date of November 15, 2016 (Dkt. 101, Ex. A). The 620 Patent has an issue date of January 3, 2017 (Dkt. 101, Ex. C). The 648 Patent has an issue date of January 17, 2017 (Dkt. 101, Ex. D).

Plaintiff alleges that Defendants infringe the Design Patent claims by making, using, offering to sell or selling in the United States, or importing into the United States, products that are covered by the claims of the Spigen Design Patents, including the Trianium Protak Series for iPhone 6/6S, the Trianium Duranium Series Series for iPhone 6/6S and iPhone 7 Plus, and the Trianium Protanium Series for iPhone 6/6s, iPhone 7, and iPhone 7 Plus. Design Patent Compl. ¶¶ 15–17.

**B. Procedural History**

Plaintiff filed its initial Complaint regarding the Design Patents in a separate action before this Court on February 13, 2017. *See Spigen Korea Co., Ltd. v. Ultraproof, Inc., et al*, 2:17-cv-1161- DOC (DFM) (Dkt. 1). On April 21, 2017, Plaintiff filed its First Amended

Complaint (17-1161, Dkt. 20). Defendants filed their Motion to Dismiss (17-1161, Dkt. 27) on May 28, 2017. The Court granted Defendants' Motion to Dismiss without prejudice (17-1161, Dkt. 44). Defendants filed a Motion to Consolidate Cases (17-1161, Dkt. 48) on September 8, 2017. Plaintiffs filed a Second Amended Complaint (17-1161, Dkt. 59) on October 2, 2017.

The Court granted Defendants' Motion to Consolidate (17-1161, Dkt. 65) on October 20, 217. The Design Patent case was accordingly consolidated with the Utility Patent case, in the instant action.

Plaintiff filed its Third Amended Complaint in the instant action (16-9185, Dkt. 101) with regard to the Design Patents on March 28, 2018, bringing one claim for patent infringement and seeking the following relief: judgment of infringement; compensatory damages together with interest and costs; attorney's fees, expenses, and costs; and a permanent injunction. Design Patent Compl. at 10. Defendants filed their Answer and Counterclaims on June 16, 2018 (Dkt. 138), bringing counterclaims for declaratory judgment of invalidity of the Design Patents, noninfringement of trader dress, and invalidity of the Design Patents for inequitable conduct. Plaintiff filed its motion for Summary Judgment as to Counterclaims (Dkt. 167) on October 29, 2018 ("Pl. Mot."). Defendants filed their Motion for Summary Judgment as to all claims (Dkt. 175) on October 29, 2018 ("D. Mot."). Plaintiff filed its Opposition (Dkt. 187) on November 21, 2018. Defendants filed their Reply (Dkt. 194) on November 28, 2018.[3] The Court heard oral argument from the parties on December 12, 2018.

## C. Legal Standard

### 1. Claim Construction

Analysis of a design patent "first involves a claim construction." *Daimler AG v. A-Z Wheels LLC*, —F. Supp. 3d—, 2018 WL 3832798 at *8 (S.D. Cal., Aug. 13, 2018). "A design patent's claim is [] often better represented by illustrations than a written claim construction." *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316 (Fed. Cir. 2016) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc)). "Even so, a district

---

[3] For further discussion of the legal standard, see Section I.C of the Court's Order.

court may use claim construction to help guide the fact finder through issues that bear on claim scope." *Id.*

A design claim will not be held as invalid "as long as the design is not primarily functional. . . 'even if certain elements have functional purposes.'" *Daimler AG*, 2018 WL 3832798 at *8 (quoting *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)). However, "a design patent cannot claim a purely functional design—a design patent is invalid if its overall appearance is dictated by its function." *Sport Dimension*, 820 F.3d at 1320 (internal citation omitted).

### 2. Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific,

admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**D. Discussion**

### 1. Claim Construction

Neither party offers a clearly articulable construction for the Design Patents. Defendants argue that many of the features claimed in the Design Patents are "dictated entirely by function," while Plaintiff argues that the Design Patents are valid and non-obvious. D. Mot. at 13–14; Pl. Mot. at 14. Accordingly, the Court finds the plain language meaning of the Design Patents and the images therein sufficient to determine the instant motions, and constructs the claims therein as follows in the summary judgment determination below. *See Egyptian Goddess*, 543 F.3d at 679 (finding that trial courts are not required to provide a detailed verbal description of a claimed design and can instead rely on illustrations).

### 2. Summary Judgment

Defendants move for summary judgment on the grounds of invalidity in view of prior public disclosure and/or obviousness in view of the prior art, non-non-infringement, lack of rights in identified trade dress, and inability to establish entitlement to a remedy. D. Notice of Mot. at 2. Plaintiff moves for summary judgment as to Defendants' Counterclaims on the grounds that inequitable conduct cannot be shown. Pl. Mot at 1.

#### a. Jurisdiction

Plaintiff argues that its covenant not to sue regarding the 99 Patent divests this Court of subject matter jurisdiction over the 99 Patent because it eliminates the case and controversy. Opp'n at 1–3. Defendants argue that the aforementioned covenant is void because the 607, 620, and 648 Patents each claim a different subset of the design claim in the 99 Patent. Reply at 5.

Defendants thus argue that Plaintiff is granting a covenant not to sue regarding one patent but maintaining enforcement of others as to the same accused product; accordingly, the covenant limits the enforcement of the 607, 620, and 648 Patents, and is void by its own terms. *Id.*

Plaintiff cites to the Kim Declaration, which states in relevant part:

"9. Spigen, on behalf of itself and its successors-in-interest, hereby irrevocably and unconditionally covenants not to sue Defendants, their suppliers, their customers, and any other person or entity under the direct control of Defendants for any past, present, or future infringement of the '099 Patent as of the date of this declaration based on their manufacture, importation, use, sale, and/or offer for sale of any previously or currently existing products. The covenant in this paragraph (a) applies solely and exclusively to the '099 Patent and it shall not be construed to apply to or impact any other patent or patent claim; (b) does not apply to or impact, and shall not be construed to apply to or impact, the '607, '620, or '648 Patent; (c) does not apply to or impact, and shall not be construed to apply to or impact, any other patent or patent claim now owned, issued in the future, or acquired in the future by Spigen; (d) *shall be deemed null and void*, as if it had never been given, *if at any time, it is construed to apply to or impact any patent or patent claim, except for solely the '099 Patent that has now been fully withdrawn against Defendants*; (e) does not apply to any product manufactured, imported, used, sold, and/or offered for sale for the first time after the date of this declaration, including modified or altered versions of any past or current products released for the first time in the future; and (f) does not apply to any person or entity not specifically named or identified in the covenant.

10. It is Spigen's understanding and intention that the foregoing acts will fully and completely withdraw the '099 Patent from the Design Patent case, but Spigen does not intend for this withdrawal to apply to or have any impact on the '607, '620, or '648 Patent. Spigen understands and intends that it shall never be able to revive its assertion of the '099 Patent against Defendants."

Kim Decl. ¶¶ 9–10 (emphasis added).

The Federal Circuit has held that, where a later-issued patent is broader than, and necessary to, practice an earlier patent that was subject to a license or covenant not to sue, the later patent is affected by the license and the patentee cannot derogate from the right granted. *TransCore, LP v. Elect. Transaction Consultants Corp.*, 563 F.3d 1271, 1279–80 (Fed. Cir. 2009). Further, a covenant not to sue for some claims does not automatically divest a court of jurisdiction if a case or controversy remains. *See, e.g., Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 2015 WL 7874323 at *4 (Dec. 3, 2015) (finding that a covenant to sue did not moot claims for declaratory relief of noninfringement where the defendant continued to pursue its overall causes of action that the plaintiff infringed its patents).

Here, the covenant regarding the 99 Patent states that it will be void if it is construed to affect any patent except the 99 Patent.[4] Kim Decl. ¶ 9. The 99 Patent was issued prior to the 607, 620, and 648 Patents (Dkt. 101, Ex. A–D), and the 607, 620, and 648 Patents are broader than the 99 Patent as they each contain the design claim of the 99 Patent in addition to other elements. *See* Dkt. 101 Ex. A–D. Plaintiff no longer seeks enforcement of any claims of the Utility Patent or other patents on which it depends, and thus Plaintiff's covenant not to sue as to claims 11 and 12 remains valid. In contrast, Plaintiff continues to bring an enforcement action against Defendants with respect to the 607, 620, and 648 Patents. Accordingly, the covenant not to sue with respect to the 99 Patent is void, and the Court retains jurisdiction with regard to all Design Patent claims.

### b. Functionality

A patent is presumed valid, and a patent may be proven invalid "only through facts supported by clear and convincing evidence." *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d

---

[4] During oral argument, Plaintiff also argued that a covenant not to sue is not required to divest the Court of jurisdiction and that Plaintiff's August 2018 email to Defendants unequivocally promising not to assert the 99 Patent should suffice, citing *RealTime Data LLC v. Echostar, LLC*, 6:17-CV-00084-JDL, 2018 WL 6267332 (E.D. Tex. Nov. 29, 2018). This argument is immaterial here because Plaintiff's later-asserted covenant not to sue expressly states that it will be void if it affects any other patent. Plaintiff also argued that a licensor can rescind a license based on language in a covenant not to sue and Spigen correctly drafted the covenant not to sue solely to apply to the 99 Patent, citing discussion of *TransCore* in *General Protecht Group, Inc. v. Leviton Mfg. Co., Inc.*, 651 F.3d 1355 (Fed. Cir. 2011). Again, nevertheless, the Court finds that the instant covenant not to sue is void and will affect the other Design Pants based on the above language.

1351, 1357 (Fed. Cir. 2006). Defendants argue that the 99 Patent is functional, and the 607, 620, and 648 Patents are invalid as obvious.[5]

Defendants argue that the 99 Patent is invalid as functional. Defendants argue that the additional elements of the 99 Patent not asserted in the 607, 620, and 648 Patents are embodied in the prior art of Spigen's Tough Armor cases, that the addition of screen protector is functional, and that the additional structures of the 99 Patent are functional as shown by Plaintiff's concomitant U.S. Design Patent No. 9,628,133 Utility Patent ("133 Patent"). D. Mot. at 10–11. Plaintiff argues that the 99 Patent is not purely functional, that the 133 Patent does not recite functional benefits of the specific design elements claimed in the 99 Patent, such as the design with a film screen protector that presents a rugged overall visual impression for a smartphone case. In their Reply, Defendants argue that the 133 Patent claims all of the design elements claimed in the 99 Patent that differ from the prior art of the Tough Armor cases.

If a "patented design is primarily functional rather than ornamental, the patent is invalid." *Richardson v. Stanley Works, Inc.*, 597 F.2d 1288, 1293–94 (Fed. Cir. 2010). To determine whether a design feature is purely functional, courts look to any concomitant utility patents, as well as whether there are alternative ways to design the article that could perform the function at issue. *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) ("A utility patent is strong evidence that the features therein claimed are functional"); *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360 (Fed. Cir. 1999).

With regard to the 99 Patent, the Court concludes that the claimed design is functional. Plaintiff's own documents make clear the elements of the 99 Patent except for the protective screen are embodied in the prior Tough Armor cases, which have been on sale since July 2013. *See* P. Statement of Facts ¶ 26–29. Further, the 133 Patent shares many aspects with the 99 Patent; claim 1 of the 133 Patent is:

"a case having a protective film for an electronic device, comprising:

---

[5] Defendants also argue that the 607, 620, and 648 are invalid due to prior public disclosure. However, there is a factual dispute between the parties regarding the publication date of Plaintiff's copyright registration certificates, and as such, Defendants have not shown that there was a prior public disclosure by clear and convincing evidence.

> a protective shell for protecting the electronic device install therein, covering a back portion and a side portion of the electronic device and without covering a front portion of the electronic device wherein the protective shell comprises a bottom covering the back portion of the electronic device, and a side wall extending from the bottom and covering the side portion of the electronic device; and
>
> a protective frame configured to removably mount over the side wall of the protective shell;
>
> wherein the protective film for covers the front portion of the electronic device, wherein the protective shell further comprises an inverted "L" - shaped recess for receiving edges of the protective film, wherein the protective shell further comprises grooves formed on the inverted "L" -shaped recess and the protective film comprises mating protrusions wherein the mating protrusions mate with the grooves,
>
> wherein the grooves are formed on a vertical side of the inverted "L"-shaped recess and in contact with inner edges of the inverted "L" -shaped recess, wherein the protective film is attached to the front portion of the electronic device."

133 Patent at 7. *See also* 133 Patent at Sheet 10, 17, 21–23; 99 Patent at Sheet 9 (illustrating the protective film and protective shell of each).

The functional aspects of the protective screen articulated in the 133 Patent appear in the 99 Patent,[6] and thus the aspects of the 99 Patent that do not appear in the prior art of the Tough Armor are functional as illustrated in the concomitant utility patent. Plaintiff claims that the 133 Patent does not recite functional benefits of the specific design. Pl. Opp'n at 8. However, the only features that do not appear in the Tough Armor cases are the functional aspects of the 133 Patent, which the Court finds are not distinguishable from the 99 Patent. Accordingly, the Court finds that the 99 Patent is functional and thus invalid as a design patent. The Court GRANTS Defendants' motion to dismiss as to the 99 Patent.

---

[6] *See* 99 Patent at Sheet 9–17 (illustrating the protective film and protective shell).

### c. Obviousness

By federal statute, a patent is presumed valid. 35 U.S.C. § 282. "Because a patent issued by the U.S. Patent and Trademark Office is presumed to be valid . . . the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence." *Transclean Corp. v. Bridgewood Serv., Inc.,* 290 F.3d 1364, 1370 (Fed. Cir. 2002) *(citing WMS Gaming, Inc. v. Int'l Game Techs.,* 184 F.3d 1339, 1355 (Fed. Cir. 1999)). The test for validity encompasses three distinct tests of patentability: novelty, utility, and non-obviousness. The presumption of validity therefore entails a presumption of novelty, a presumption of utility, and a presumption of non-obviousness. *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707 (Fed. Cir. 1984); *see also Raytheon Co. v. Roper Corp.,* 724 F.2d 951 (Fed. Cir. 1983).

The federal patent power stems from a specific constitutional provision which authorizes the Congress "To promote the Progress of . . . useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." *Graham v. John Deere Co.*, 383 U.S. 1, 5-6 (1966)) (quoting Art. I, § 8, cl. 8). "This qualified authority, unlike the power often exercised in the sixteenth and seventeenth centuries by the English Crown, is limited to the promotion of advances in the 'useful arts'" and it "was written against the backdrop of the practices—eventually curtailed by the Statute of Monopolies—of the Crown in granting monopolies to court favorites in goods or businesses which had long before been enjoyed by the public." *Id.* (citation omitted). "Congress may not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available." *Id.* "Innovation, advancement, and things which add to the sum of useful knowledge are inherent requisites in a patent system which by constitutional command must "promote the Progress of . . . useful Arts." Thus, "patent validity 'requires reference to a standard written into the Constitution.'" *Id.* (citation omitted).

"[F]ederal patent law has long required that an innovation not be anticipated by the prior art in the field." *Bonita Boats, Inc. v. Thunder Craft Boats , Inc.*, 489 U.S. 141, 149–150 (1989). "Even if a particular combination of elements is 'novel' in the literal sense of the term, it will not qualify for federal patent protection if its contours are so traced by the existing

technology in the field that the 'improvement is the work of the skillful mechanic, not that of the inventor.'" *Id.* (quoting *Hotchkiss v. Greenwood*, 11 How. 248, 267 (1851)). "In 1952, Congress codified this judicially developed requirement in 35 U.S.C. § 103, which refuses protection to new developments" that are obvious, i.e. (as currently worded), where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Id.*; 35 U.S.C. § 103(a). "The nonobviousness requirement extends the field of unpatentable material beyond that which is known to the public under § 102, to include that which could readily be deduced from publicly available material by a person of ordinary skill in the pertinent field of endeavor." *Bonita Boats*, 489 U.S. at 149–150 (citing *Graham v. John Deere Co.*, 383 U. S. at 15). "Taken together, the novelty and nonobviousness requirements express a congressional determination that the purposes behind the Patent Clause are best served by free competition and exploitation of either that which is already available to the public or that which may be readily discerned from publicly available material" *Id.* (citing *Aronson v. Quick Point Pencil Co.*, 440 U. S. 257, 262 (1979) ("[T]he stringent requirements for patent protection seek to ensure that ideas in the public domain remain there for the use of the public.").

The obviousness of a design patent must be "assessed from the viewpoint of an ordinary designer." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013). There are two steps to finding a design patent invalid for obviousness; (1) the Court must find a primary reference, "a something in existence, the design characteristics of which are basically the same as the claimed design," and (2) "[o]nce this primary reference is found, other reference may be used to modify it to create a design that has the *same overall visual appearance* as the claimed design." *High Point*, 730 F.3d at 1311 (internal references omitted) (emphasis added). *See also Apple, Inc. v. Samsung Elecs., Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012). The asserted design patent can have slight differences from the primary reference and modified design without "defeat[ing] a claim of obviousness; if the designs were identical, no obviousness analysis would be required." *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d

1326, 1333 (Fed. Cir. 2014). *See also Jore Corp. v. Kouvato, Inc.*, 117 Fed. Appx. 761, 763 (Fed. Cir. 2005).

### i. Primary Reference

Defendants argue that the Design Patents are invalid as obvious in light of prior art of U.S. Design Patent No. D729,218 ("218 Patent) and U.S. Design Patent No. D772,209 ("209 Patent"). Defendants argue that the 218 Patent is the primary reference because it has design characteristics that are "basically the same" as those of the 607, 620, and 648 Patents. D. Mot. at 17–18.

The Court finds the 218 Patent is an appropriate primary reference for the 607, 620, and 648 Patents. The 218 Patent claim reads "[t]he ornamental design for a portable electronic device case, as shown and described." 218 Patent (Dkt. 175, Ex. S). The illustrations in the 218 Patent depict a rectangular cell phone case with rounded corners, as do the illustrations in the 607, 620, and 648 Patents. *See* 218 Patent at Sheet 6, Sheet 7; 607 Patent at Sheet 3, Sheet 4; 620 Patent at Sheet 3, Sheet 4; 648 Patent at Sheet 3, Sheet 5. The 607, 620, and 648 Patents and the 218 also share a small border around the edges of each case, as well as indentations for devices to plug into the cell phone contained in the case at the top of each case. *Id.* There are slight differences between the 218 Patent and the 607, 620, and 648 Patents; for instance, indentations for plug-in devices appear slightly different in shape and placement, and the 607, 620, and 648 Patents have a circular cut-out shape in the body of the case where the 218 Patent does not. *Id.* Still, taking into account the designs' shared overall shape and visual appearance, the design characteristics of the 218 Patent match those in the illustrations of the cases in the 607, 620, and 648 such that 218 Patent can serve as a primary reference. *See MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1332 – 33 (Fed. Cir. 2014) (holding that the district court did not err in finding that the design characteristics of the primary reference created "basically the same" overall visual impression as the patent in question after considering similarities and slight differences).

### ii. Modified Hypothetical Design

Defendants cite their expert Paul Hatch, arguing that Hatch's hypothetical combination of the 218 Patent and the 209 Patent (Dkt. 175, Ex. U) creates a design that is substantially the same as the Design Patents. Mot. at 17–18. Plaintiff argues that fact disputes remain about the appearance of a hypothetical combination of the 209 and 218 Patents, about whether the Hatch design is similar enough to the Design Patents, and about whether secondary considerations may rebut a prima facia case of obviousness if one were proven. Pl. Opp'n at 17–19.

The Court finds that Defendants' hypothetical design does meet the criteria for obviousness of a design patent. For another reference to be combined with the primary reference, the designs must be "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *MRC Innovations*, 747 F.3d at 1334. The 209 Patent that Defendants propose shares several ornamental features with the 218 Patent.[7] The 209 Patent and 218 Patent look substantially similar, and also share a rectangular design with rounded edges, narrow border and plug-in indentations. *See* 209 Patent; 218 Patent. Further, the 209 Patent shares other similarities with the 607, 620, and 648 Patents, including a circular cut-out in the middle of the case and nearly identical plug-in indentations at one end of the case. The 209 Patent thus meets the criteria for a secondary reference.

Further, the hypothetical design creates the "same overall visual impression" as the 607, 620, and 648 Patents. As the image depicts, the hypothetical design shares the following features with the 607, 620, and 648 Patents: a rectangular appearance with rounded corners, a prominent rear chamfer and front chamfer, squared elongated buttons corresponding to the location of buttons on the corresponding cell phone, and a circular shape in the middle of the cell phone case body. *See* D. Mot. at 18. The hypothetical design appears so close to that of the 607, 620, and 648 Patents such that it demonstrates the 607, 620, and 648 Patents are invalid for obviousness.

---

[7] Plaintiff argues that the 209 Patent is not prior art because it meets the criteria of 35 U.S.C. § 102(b)(2)(C), citing Spigen's statements as sufficient for common ownership of the 209 Patent and the 607, 620, and 648 Patents. Opp'n at 10. However, as explained in Defendants' Reply, under the relevant underlying South Korean law the employee who acquired the 209 Patent retains the right to assign it; thus, Spigen does not have an enforceable right to require employee Mr. Hyun to assign the 209 Patent to Spigen, and Spigen cannot establish common ownership. *See* Reply at 15–17.

Plaintiff's argument that the hypothetical design makes overly major modifications to the 218 Patent is unavailing, as the obviousness standard for a design patent specifically allows for a modified design as construction by Defendants. *See MRC Innovations*, 747 F.3d at 1334. Plaintiff also contends that a factual dispute remains about whether secondary considerations such as commercial success, teaching away, and copying rebut a prima facie case of obviousness. However, as the patentee, Plaintiff bears "the burden of production to demonstrate a nexus between the claimed design and the secondary considerations." *MRC Innovations*, 747 F. 3d at 1136. Plaintiff cites their expert rebuttal report of Joel Delman, which argues that the hybrid design is not substantially similar to the claimed designs and that the prior art relied upon in the hybrid teaches away from the claimed design. Dkt. 187, Ex. 2. Nevertheless, the report cursorily alleges teaching away without adequate support, and does not present sufficient evidence to demonstrate a nexus between the Design Patents and secondary considerations. As such, secondary considerations do not alter a finding of obviousness.

Accordingly, the court GRANTS Defendants' Motion for Summary Judgment of patent invalidity for obviousness as to the 607, 620, and 648 Patents.

## III. COUNTERCLAIMS AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Seeing as the Court GRANTS Defendants' Motion for Summary Judgment of patent invalidity for obviousness as to the 607, 620, and 648 Patents, the Defendants' Counterclaims are mooted and the Court DENIES Plaintiff's Motion for Summary Judgment as to Inequitable Conduct Counterclaims Regarding Patents 607, 620, and 648 (Dkt. 167) ("Pl. Mot.") as moot. As the Court is divested of jurisdiction to determine the validity of Claims 11 and 12 of the 283 Patent and the Court GRANTS Summary Judgment as to the remaining claims and patents, no claims remain unresolved. Accordingly, the Court DENIES Plaintiff's Motion for Leave to Filed a Fourth Amended Complaint (Dkt. 172).

**IV. DISPOSITION**

The Court GRANTS Defendants' Motion for Summary Judgment of patent invalidity for obviousness as to Claims 1–6, 8, 10, 13–20, and 22 of the 283 Patent. The Court further GRANTS Defendants' Motion for Summary Judgment of patent invalidity for functionality as to the 99 Patent, and GRANTS Defendants' Motion for Summary Judgment of patent invalidity for obviousness as to the 607, 620, and 648 Patents. Further, the Court DENIES Plaintiff's Motion for Summary Judgment as to Inequitable Counterclaims, and DENIES Plaintiff's Motion for Leave to file a Fourth Amended Complaint as to the Design Patents.

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated: December 12, 2018